UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JR CAPITAL, LLC,<br><br>Defendant. | Case No. 2:25-cv-01419-GAM |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant, JR Capital, LLC ("JR Capital"), offers financing for business equipment, including commercial trucks. Plaintiff, Jourey Newell ("Newell"), registered a trucking-carrier business—Newell Contracting LLC—with the United States Department of Transportation. Newell alleges that JR Capital sent text messages to the phone number listed for Newell Contracting; those text messages stated that new and used business equipment and trucks were available for purchase. In response to the text messages, Newell filed this lawsuit, alleging violations of the Telephone Consumer Protection Act ("TCPA") restrictions on contacting residential phone numbers.

Admittedly, as this Court recently ruled in another TCPA case, determining whether a given phone number qualifies as "residential" can require a fact-intensive, "case-by-case evaluation" unsuitable for a motion to dismiss. *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *3 n. 3 (E.D. Pa. Mar. 14, 2025) (McHugh, J.). Here, then, JR Capital does not move to dismiss Newell's entire amended complaint. But JR Capital does seek

to narrow the issues. Therefore, JR Capital moves to dismiss Newell's "Caller ID" claim (*i.e.*, Count II of Newell's three-count amended complaint).

This claim fails on the pleadings for two reasons.

First, this claim is insufficiently pled on multiple levels. For starters, although Newell challenges text messages, Newell relies on a regulation that generally does not apply to wireless communications like the challenged text messages. Moreover, although Newell alleges that JR Capital violated the Caller ID regulation by failing to transmit its name, the challenged text messages include a website link with JR Capital's name in it.

Second, even if Newell had sufficiently pled a Caller ID claim, the claim still would be subject to dismissal. Courts have repeatedly found that there is no private right of action for this claim. Indeed, this conclusion is nearly unanimous.

In short, to narrow the dispute, and to limit the time and resources that the parties and the Court must dedicate to this case, JR Capital moves to dismiss Count II of Newell's amended complaint with prejudice.

## Background

JR Capital knows that this Court is well familiar with the TCPA. Nevertheless, to put Newell's claims in context, JR Capital highlights some relevant TCPA background, statutory provisions, and regulatory enactments. After discussing this legal landscape, JR Capital turns to the specifics of this case.[1]

---

[1] Because this motion is brought under Rule 12(b)(6), JR Capital limits this background discussion to the complaint and matters of which the court may take judicial notice. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016).

### A. Congress passes the TCPA and the FCC issues regulations.

"In enacting the TCPA, Congress found that '[u]nrestricted telemarketing' can be 'an intrusive invasion of privacy.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (*quoting* TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). For example, Congress found that "automated or prerecorded telephone calls made to private residences were rightly regarded by recipients as an invasion of privacy." *Id*. (internal quotation marks and citations omitted). Congress passed the TCPA to protect against such intrusions. *See id*.

Unfortunately, as the former Chairman of FCC has observed, "the TCPA has strayed far from its original purpose." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (Pai, dissenting) (*overruled in part by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)). The TCPA has "become the poster child for lawsuit abuse." *Id*.

Regardless, in passing the TCPA, Congress authorized the FCC to implement certain regulations. For example, Congress directed the FCC to **"initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."** 47 U.S.C. § 227(c)(1). Congress stated that such regulations "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). In addition, Congress created a private right of action to enforce section 227(c). Specifically, Congress stated that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of

3

the regulations prescribed under this subsection" may bring "an action based on [the] violation of the regulation prescribed under this subsection." 47 U.S.C. § 227(c)(5).

Pursuant to Congress's instruction, the FCC created the national Do Not Call registry. To implement the national Do Not Call registry, the FCC issued a regulation providing that "[n]o person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR § 64.1200(c).

Turning back to the statute itself, the TCPA also contains a provision titled "[t]echnical and procedural standards." 47 U.S.C. § 227(d). This provision states that "[i]t shall be unlawful" to "make any telephone call using any automatic telephone dialing system[] that does not comply with the technical and procedural standards prescribed under this subsection." 47 U.S.C. § 227(d). In addition, this provision states that the FCC "shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." 47 U.S.C. § 227(d)(3). Unlike the provision instructing the FCC to undertake rulemaking to protect residential subscribers' privacy (which led to the creation of the Do Not Call registry), the "technical and procedural standards" provision does not provide a private right of action. 47 U.S.C. §§ (c)(5), 227(d).

Still, the FCC has recognized that Caller ID can "improve the ability of consumers to identify and enforce do-not-call rights"—*i.e.*, rights arising under a TCPA provision that does provide a private right of action for calls to residential phone numbers. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR

44144-01 ¶ 65; 47 U.S.C. § 227(c)(5).  In regulations separate from the regulation implementing the Do Not Call Registry, the FCC has issued regulations on Caller ID.

One of those regulations is 47 CFR § 64.1601.

It is, to put it mildly, highly technical.  Section 64.1601 provides that "telecommunications carriers and providers of interconnected Voice over Internet Protocol (VoIP) services, in originating interstate or intrastate traffic on the public switched telephone network (PSTN) or originating interstate or intrastate traffic that is destined for the PSTN (collectively 'PSTN Traffic'), are required to transmit for all PSTN Traffic the telephone number received from or assigned to or otherwise associated with the calling party to the next provider in the path from the originating provider to the terminating provider."  47 CFR § 64.1601(a).  Additionally, section 64.1601 states that telemarketers "must transmit caller identification information."  47 CFR § 64.1601(e).  Under section 64.1601(e), "caller identification information must include either CPN [the calling party number] or ANI [the calling party's billing number from the local exchange carrier], and, when available by the telemarketer's carrier, the name of the telemarketer."  47 CFR §§ 64.1600, 1601(e)(1).  Section 64.1601(e) further states that "[t]he telephone number so provided must permit any individual to make a do-not-call request during regular business hours."  *Id*.

As indicated, section 64.1601 relates to calls placed through on the public switched telephone network.  47 CFR § 64.1601(e)(1).  And the FCC has recognized that "the public switched network itself is not one that generally supports text messaging."  *In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, FCC 18-178, Docket No. 08-7 ¶ 33 n. 109 (December 13, 2018).  The public switched telephone network traditionally connects voice calls between landlines.  *See id*.

5

## B. Newell seeks recovery under the above statutory and regulatory provisions for text messages sent to Newell Contracting.

As noted at the outset, Newell challenges text messages that he says violate TCPA restrictions on communications to residential phone numbers. Newell seeks to pursue these claims on a class-wide basis. And, to support that effort, Newell tells this Court that the phone number on which he allegedly received the text messages "is a residential, non-commercial number." Plaintiff's First Amended Class Action Complaint and Demand for Jury Trial ("Pl.'s Am. Compl."), ECF No. 10, ¶ 18.

As noted at the outset, however, the federal government lists that number for a business (namely, Newell Contracting).[2] *See* https://safer.fmcsa.dot.gov/query.asp?query_type=queryCarrierSnapshot&query_param=USDOT&query_string=4193978 (last visited Apr. 17, 2025). To be sure, after Newell filed this lawsuit, someone apparently took down Newell Contracting's federal registration. *See id.* (identifying an out-of-service date of March 16, 2025). But Newell Contracting is still listed as an active company with the Pennsylvania Secretary of State. *See* https://file.dos.pa.gov/search/business (last visited Apr. 17, 2025). And, in any event, Newell challenges text messages sent *before* someone took down Newell Contracting's federal registration. *See* Pl.'s Am. Compl., ¶ 24; *cf. Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *5 (E.D. Pa. Mar. 14, 2025) (McHugh, J.) (denying motion to dismiss, but noting that, "[i]f Plaintiff took down the number from his business website and then

---

[2] In considering a motion to dismiss courts "take judicial notice of information that is publicly available on government websites." *Wright-Gottshall v. New Jersey*, No. 23-1990, 2024 WL 1826421, at *1 (3d Cir. Apr. 26, 2024).

6

immediately sued [the defendant] or another marketer, I would be strongly inclined to find estoppel").

Notably, in his *pro se* original complaint, Newell included the full phone number. That allows a reader to match the phone number to Newell Contracting's phone number. *See* ECF No. 1-1. But Newell's counsel redacted that number from the amended complaint.³ Pl.'s Am. Compl., ¶ 18.

Redactions aside, in Count III of Newell's amended complaint, he alleges a violation of the Caller ID requirements in 47 CFR § 64.1601(e).⁴ *Id*., ¶¶ 14, 24-26, 51. In his Caller ID claim, Newell alleges that (a) JR Capital's telephone carrier allows customers to transmit their names, in addition to their location information, along the phone network through a Caller ID function and (b) JR Capital did not elect this functionality. *See id*., ¶¶ 24-26. As a result, Newell alleges that JR Capital violated section 64.1601(e). Newell seeks to represent a class of individuals who received "telemarketing calls or text messages." *Id*., ¶ 37.

In making this claim, Newell does not allege that he received any phone calls. Nor does Newell allege that he received the challenged text messages on the public switched telephone network. Nor does he allege that the text messages he received lacked identifying information or

---

³ This case is one of several putative class-action lawsuits that Newell and his counsel have recently filed in this District. In those cases, like this one, Newell raises TCPA claims and asserts that the phone number is a residential, non-commercial number. *See Newell v. RiseUp Financial Group, LLC*, No. 25-cv-01402, ECF. No. 1 ¶ 17; *Newell v. LendVia LLC*, No. 25-cv-01018, ECF No. 1 ¶ 28.

⁴ In Count I of his amended complaint, Newell alleges that the phone number on which he allegedly received the challenged text messages is listed on the Do Not Call Registry and therefore JR Capital violated the TCPA in sending text messages to that number. Pl.'s Am. Compl., ¶¶ 45-46. Skipping ahead, in Count III, Newell alleges that he received text messages in violation of the TCPA's company-specific Do Not Call requirements, because he received text messages after he requested that the messages stop. *Id*., ¶ 57. On this point, we note that the text messages explained to recipients that they could respond "stop to stop" future text messages. *Id*., ¶ 26. Yet Newell does not allege he did this. Instead, he alleges that he sent an email to a general mailbox at JR Capital, addressed to JR Capital's Chief Executive Officer. Newell does not explain why he did not simply text a response to the text message.

7

contact number for JR Capital.  On the contrary, Newell specifically includes snapshots showing that the text messages contained that information.  *Id*., ¶ 26.

JR Capital moves to dismiss Newell's Caller ID claim.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. Proc. 12(b)(6).  "In determining whether a [plaintiff's]…complaint states a claim under Rule 12(b)(6), we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018).  But "we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."  *Id*.

## Argument

Newell's Caller ID claim fails on the pleadings for two reasons.  First, Newell has failed to sufficiently allege—and cannot plausibly allege—a violation of 47 CFR § 64.1601.  That section does not apply to wireless communications like the text messages Newell challenges, and, even if it did, the text messages Newell challenges contained the very information Newell complains JR Capital failed to provide.  Second, as federal courts have repeatedly found, there is no private right of action for violation of 47 CFR § 64.1601.  For either or both reasons, Newell's Caller ID claim should be dismissed with prejudice.

### A.     **Newell fails to allege a plausible claim for violation of 47 CFR § 64.1601.**

Newell's Caller ID claim is insufficiently pled for at least two important reasons.

First, 47 CFR § 64.1601 does not apply to wireless communications like the text messages challenged here. As the Third Circuit has long stressed, "[t]he basic tenets of statutory construction hold true for the interpretation of a regulation." *Burns v. Barnhart*, 312 F.3d 113, 125 (3d Cir. 2002). Therefore, in interpreting regulations, courts look to "the plain wording of the regulation." *Id*.

In this case, section 64.1601 imposes requirements for communications over "the public switched telephone network (PSTN)." 47 CFR § 64.1601(a). Yet Newell does not allege he received the challenged text messages over the public switched telephone network. Nor could he. As the FCC has stated, text messages generally do not travel over the public switched telephone network. *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, FCC 18-178, Docket No. 08-7 ¶ 33 n. 109 (December 13, 2018) ("the public switched network itself is not one that generally supports text messaging").

To be sure, Newell alleges that JR Capital's telephone carrier allows customers to transmit their names, in addition to their location information, through a Caller ID function, and that, in violation of section 64.1601(e), JR Capital did not sign up for this functionality. *See id.*, ¶¶ 24-26. Again, though, Newell does not connect these allegations to the text messages *he* allegedly received. Instead, Newell asserts only that his counsel allegedly took the initiating phone number for the text messages, allegedly plugged it into a database, and allegedly determined that, when a call does come from that number through the public switched telephone network, the information transmitted within the public switched telephone network allegedly does not include the caller's name. Pl.'s Am. Compl., ¶¶ 24-25.

That's not enough. Indeed, those allegations do not even reach the level of the infamously insufficient "unadorned, the-defendant-unlawfully-harmed-me accusation." *See*

9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) ("As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'") (*quoting* A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)) (some internal quotation marks omitted). Here, Newell fails to allege that JR Capital's alleged failure to comply with section 64.1601(e) harmed him.

Second, and on a related point, even if section 64.1601(e) could apply to text messages, Newell has not alleged that the text messages he received failed to include the information required under section 64.1601(e). As noted, section 64.1601(e) states that "when available by the telemarketer's carrier," caller identification information must include "the name of the telemarketer." 47 CFR §§ 64.1600, 1601(e)(1). Here, as the screenshots in Newell's complaint show, the challenged text messages included JR Capital's name. Pl.'s Compl., ¶ 26.

In sum, Newell has not sufficiently alleged—and cannot plausibly allege—a violation of 47 CFR § 16.6401(e). For this reason alone, this Court can dismiss Newell's Caller ID claim. As discussed below, however, there is an alternative basis on which to dismiss Newell's Caller ID claim. There is no private right of action for that claim.

   **B.**   **There is no private right of action for a violation of 47 CFR 16.6401.**

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In determining whether Congress has created a private right of action to enforce a statutory provision, "[s]tatutory intent…is determinative." *Id.* "When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement." *Ziglar*

10

*v. Abbasi*, 582 U.S. 120, 133, 0 (2017). "It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action." *Id*.

   In enacting the TCPA, Congress created a private right of action to enforce some provisions and declined to create a private right of action to enforce others. In 47 USC § 227(c), for example, Congress instructed the FCC to issue regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). Congress directed that this proceeding shall "compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific 'do not call' systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). In the end, though, Congress said that the FCC "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Congress created an express private right of action under section 227(c). 47 U.S.C. § 227(c)(5)

   "Pursuant to [the] authority under section 227(c), [the FCC] adopt[ed] a national do-not-call registry." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14034 (2003). The FCC implemented the national Do Not Call registry in 47 CFR § 64.1200(c).

   Back to the statute. In the TCPA, Congress did not create a private right of action to enforce 47 USC § 227(d). That section addresses "[t]echnical and procedural standards." The FCC, in turn, issued the Caller ID requirements found in 47 CFR § 64.1601(e). To be sure, the

FCC did not specify which TCPA provision the FCC relied on in issuing section 64.1601(e).  *See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14034 (2003) (announcing implementation of Caller ID requirements in 47 CFR § 64.1601(e)).  But the FCC did observe that Caller ID would "provide an important resource for the FCC and [Federal Trade Commission] in pursuing enforcement actions against TCPA and [Telemarketing Sales Rule] violators."  *Id*.

Considering this legal and regulatory framework, federal courts have repeatedly found the Caller ID regulation in 47 CFR § 64.1601(e) is not enforceable through a private right of action.  *See, e.g.*, *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016) *aff'd by* 678 F. App'x 165 (4th Cir. 2017).

In finding that 47 CFR § 64.6400(e) does not provide a private right of action, these courts have provided numerous reasons supporting this conclusion.  Consider two of them.

First, courts finding no private right of action have recognized that it is unclear whether the FCC issued 47 CFR § 64.1601(e) under a TCPA provision containing a private right of action.  *See, e.g., Meyer*, 2017 WL 5138316, at *17.  Again, the Supreme Court has said that "Congress will be explicit if it intends to create a private cause of action."  *Ziglar*, 582 U.S. at 137.  And, in conjunction with "the Supreme Court's general guidance," courts have declined to find that section 64.1601(e) is enforceable through a private right of action.

Although it is possible that the FCC issued section 64.1601(e) under 47 USC § 227(c)'s general instruction regarding the enforcement of "privacy rights" (which does contain a private

right of action), it is also possible that the FCC issued section 64.1601(e) under 47 USC § 227(d)'s provision for "[t]echnical and procedural standards" (which does not contain a private right of action). *See, e.g., Worsham*, 2016 WL 4592373, at *4. Indeed, Congress specifically titled 47 USC § 227(d) "[t]echnical and procedural standards." And, as the Third Circuit has made clear, statutory headings are "tools available for the resolution of [ ] doubt" about the meaning of a statute." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 891 (3d Cir. 2020). At a minimum, then, it is possible that the FCC issued section 64.1601(e) under 447 USC § 227(d). Again, there is no private right of action to enforce that section. *See* 47 USC § 227(d).

Second, courts finding no private right of action have recognized that, in promulgating section 64.1601(e), the FCC stated that Caller ID can "improve the ability of consumers to identify and enforce do-not-call rights." *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 ¶ 65. In other words, the FCC did not describe Caller ID requirements as arising under one of the TCPA provisions providing a private right of action. Rather, the FCC described the Caller ID requirements as a tool for enforcing the private right of action available for do-not-call claims under 47 USC § 227(c). *See id*.

Until just recently, "every federal court to consider the issue" had found no private right of action for 64 CFR § 64.1601(e) claims. *See Griffin*, 2024 WL 4333373, at *5. Admittedly, though, one federal court has now reached the opposite conclusion. *See Dobronski v. Selectquote Ins. Servs.,* No. 2:23-CV-12597, 2025 WL 900439, at *5 (E.D. Mich. Mar. 25, 2025). In so doing, that court criticized other federal courts for relying on *Worsham*'s extensive analysis and on the general weight of authority on this issue. *See id*. at *4.

13

Even putting aside the weight of authority, that court's decision is flawed. The court apparently assumed that—if it is unclear whether a statutory provision containing a private right of action covers a regulation—a plaintiff can rely on that provision to enforce that regulation. *See id*., at *2-5. That's backwards. Courts "assume that Congress will be explicit if it intends to create a private cause of action." *See Ziglar v. Abbasi*, 582 U.S. at 133. What's more, after the FCC issued 47 CFR 64.1601(e), *Congress amended the TCPA to specifically address Caller ID in general*. *See* TRUTH IN CALLER ID ACT OF 2009, PL 111-331, December 22, 2010, 124 Stat 3572. And, in doing so, Congress specifically chose not to include a private right of action for Caller ID claims. *See* 47 USC § 227(e).

There is no private right of action to enforce 64 CFR § 64.1601(e).

## Conclusion

Consistent with this Court's recent teaching, it is at least arguably necessary to go beyond the pleadings and the public documents to find that Newell's telephone number is not "residential" and therefore his whole amended class-action complaint should be tossed. But it is not necessary to do so to dispose of Newell's Caller ID claim. That claim is insufficiently pled and lacks a private right of action. Thus, to limit the burden that this case places on the parties and the Court, JR Capital respectfully requests that this Court dismiss the Caller ID claim with prejudice and grant any additional relief that this Court finds appropriate.

Dated:  April 21, 2025  	Respectfully submitted,

 */s/ Scott J. Helfand*
Scott J. Helfand (Pro Hac Vice)
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Scott.Helfand@huschblackwell.com
Tel: 312-341-9876

Fax: 312-655-1501

Laura K. Conroy
PA State Bar No. 206797
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
Laura.Conroy@huschblackwell.com
Tel: 202-378-5388
Fax: 202-378-2319

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by the filing of said document through the Court's electronic filing system on this 21st day of April 2025.

By: */s/ Scott J. Helfand*
      Scott J. Helfand