**IN IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JOUREY NEWELL,** individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

**JR CAPITAL, LLC**

*Defendant.*

Case No.

2:25-cv-01419-GAM

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**Plaintiff's Response in Opposition To Defendant's Partial Motion To Dismiss**

## I. INTRODUCTION

In support of its motion to dismiss the Plaintiff's claims for violations of the Telephone Consumer Protection Act's Caller ID requirements, Defendant advances arguments that run contrary to the statutory text, Congressional intent, and TCPA-specific case law. Defendant's partial motion to dismiss must be rejected, as the growing body of law on such claims counsels.

## II. FACTUAL BACKGROUND

Plaintiff Jourey Newell filed this Amended Class Action Complaint on March 31, 2025, alleging violations of the Telephone Consumer Protection Act (TCPA) by Defendant JR Capital, LLC. (ECF 10). That Complaint alleges three causes of action: one for violations of the TCPA's Do Not Call Registry requirements, one for violations of the TCPA's internal Do Not Call requirements, and a third for violations of the TCPA's Caller ID requirements. Defendant seeks to dismiss only this latter cause of action. This response follows.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## IV. ARGUMENT

### *A. Section 227(c) of the TCPA provides a private right of action for violations of 47 C.F.R. § 64.1601(e). That Regulation was promulgated under Section 227(c), which contains a private right of action.*

Defendant concedes that it is "it is possible that the FCC issued section 64.1601(e) under 47 USC § 227(c)'s general instruction regarding the enforcement of "privacy rights" (which does contain a private right of action)" but that it is "also possible that the FCC issued section 64.1601(e) under 47 USC § 227(d)'s provision for "[t]echnical and procedural standards" (which does not contain a private right of action)." That's simply impossible. Contrary to the Defendant's representations, case law and legislative history confirm that the instant regulation at issue here, 47 C.F.R. § 64.1601(e), was promulgated under Section 227(c) of the TCPA, which contains a private right of action, not Section 227(d) which addresses not "procedural standards" generally, as claimed, but rather *specific procedural standards* with specific respect to *robocalls* and *fax machines*, not telemarketing calls.

Defendant's argument is at odds with case law holding otherwise as well as the very statutory authority advanced by Congress. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The relevant regulation here, 47 C.F.R. § 64.1601(e), provides that "any person or entity that engages in telemarketing, as defined in section 64.1200(f)([13, formerly 10]), must transmit caller identification information." As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ.*

*Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

• § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
• § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
• § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
• § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
• § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Dobronski v. Selectquote Ins. Servs.*, -- F. Supp.3d --, 2025 WL 900439, at *2 (E.D. Mich. Mar. 25, 2025).

As the Court observed in *Dobronski*, all but § 227(c) are quickly eliminated as not even remotely applicable to the statutory provision here. The statutory provision at issue here could not have been promulgated pursuant to Section 227(d)(1), as Defendant here claims, as did the defendant in *Dobronski*, because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general. It would be downright peculiar for the FCC to promulgate regulations "applying to all calls, including those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages" under Section 227(d)(1). *Id.* (citing *Worsham v. LifeStation, Inc.*, No. 661, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021)). Defendant's reading would result in the FCC promulgating rulemaking in excess of its Congressionally granted authority.

A review of the appropriate legislative history confirms that the instant regulation here was promulgated in 2003 under rulemaking Congress explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c). Pursuant to that mandate, the FCC began a

rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID rulemaking, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017.

"[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . .Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024)). The 2003 TCPA Order references Section 227(c) no fewer than 54 times and Section 227(d) only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated. Indeed, the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). It concluded that, pursuant to its authority under Section 227(c) of the TCPA, "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004." *Id.* at 14143. There can be no question, therefore, that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

As the *Dobronski* Court observed in commenting on the history of the TCPA:

> [T]he regulatory history further buttresses its view. In an early rulemaking proceeding under the TCPA, the FCC noted that the TCPA directed it to consider a "number of alternatives for residential telephone subscribers to avoid receiving unwanted telephone solicitations ... includ[ing] a national database, network technologies, special directory markings, time of day restrictions, and industry-based or company-specific do-not-call lists." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8758 (1992). There can be little doubt that that direction came from § 227(c). *See* 47 U.S.C. § 227(c)(1)(A) (directing the FCC to "compare and evaluate alternative methods and procedures [including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternative]"). Then, in evaluating those alternatives, the FCC identified the lack of widespread caller ID as a barrier to cost-effective network technology implementation. *In the Matter of Rules*, 7 F.C.C. Rcd. at 8761.
>
> In 2003, the FCC referred back to the discussion from above, and then it: expressly sought comment on whether "network technologies have been developed over the last decade," specifically asked "whether to require telemarketers to transmit the name and telephone number of the calling party," assessed caller ID's effectiveness and efficiency in supporting consumer privacy rights, and "determined to require all sellers and telemarketers to transmit caller ID information." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14118–21 (2003). It elsewhere concluded that "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 14068. The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers.

*Dobronski*, 2025 WL 900439, at *3.

The Defendant's argument must also fail because, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing with "consumer privacy." *Dobronski*, 2025 WL 900439, at *3. The header of Section 1601 addresses "privacy restrictions." Critically, *the FCC also promulgated Section 1601 in the same Order*, as outlined above. As *Dobronski* counsels, "That places § 64.1601(e) in the heartland of § 227(c), and thus supports the conclusion that the former was prescribed under the latter and

benefits from § 227(c)(5)'s private right of action." Indeed, given that the 2003 TCPA Order at issue here was the *very same Order* that established the National Do Not Call Registry, and the corresponding statutory subsection at 47 C.F.R. § 64.1200(c)(2), under which Defendant concedes "Congress created an express private right of action," it would be incongruous to hold that the *same rulemaking proceeding* which created the Do Not Call Registry and its private right of action at the same time did not create a private right of action for its caller ID requirements. The *very order* that the Defendant cites for authority for the creation of the private right of action for violations of the Do Not Call Registry itself *also* promulgated the regulation here for violations of the Caller ID requirements found in § 64.1601(e).

Congress explicitly passed the 2003 Act with a realization that the TCPA's then-current consumer privacy protections were inadequate. It is clear that, in Congress' directive to align the FTC and FCC's procedures, Congress intended for any subsequent rulemaking, including the FCC's 2003 TCPA Order, to provide a private right of action. Indeed, Congress explicitly stated that, "despite [internal do not call list and other] restrictions, telemarketing complaints continue to rise and there is an increasing need to provide consumers with the ability to opt-out of telemarketing calls." House Report 108–8, 108th Cong., 1st Sess. (2003) at 2-3. Accordingly, the Committee explicitly explained that:

> The FCC's do-not-call rules were created under the TCPA. That statute explicitly gives the FCC the authority to set up a national do-not-call database. In 1992, the FCC undertook a rulemaking, and after reviewing comments, determined that a national do-not-call list was too costly and burdensome at that time. The FCC instead opted to require telemarketers to maintain company-specific do-not-call lists. On September 12, 2002, the FCC issued a notice of proposed rulemaking to *review and possibly revise* its do-not-call rules. The comment period closed on January 31, 2003, and the FCC's Chief of Consumer and Governmental Affairs Bureau announced that the FCC's goal is to avoid regulatory duplication by working closely with the FTC and fashioning rules that benefit consumers and the telemarketing industry. As the FCC undertakes the process of revising its do-not-call regulations, there is the potential for inconsistencies between the FTC and FCC do-not-call rules. To address this issue, H.R. 395 directs the *FCC to complete its*

> *rulemaking within* 180 days of enactment and further requires the FCC to consult and coordinate with the FTC to maximize consistency between the two regulations. However, because the *FCC is bound by the TCPA*, it is impossible for the FCC to adopt rules identical to the FTC's TSR. . . . In order to remedy these types of inconsistencies, either the FTC or FCC must address them administratively, or Congress must address them legislatively. We encourage the FTC and the FCC to take the necessary steps to make their rules as consistent and compatible as possible.

*Id.* at 4 (emphasis added).

The 2003 TCPA Order took that congressional mandate to align the FTC and FCC's rules seriously, including with respect to the *very caller ID provision at issue*, by observing that the "FTC also adopted new rules on the use of predictive dialers and the transmission of caller ID information. . . . Telemarketers will also be required to transmit the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service." 2003 TCPA Order, 18 F.C.C. Rcd. at 14024. Consistent with the Committee's intent, Congress required the FCC to issue the 2003 TCPA Order, a "final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, *under the Telephone Consumer Protection Act* (47 U.S.C. 227 et seq.)." 15 U.S.C. § 6153 (emphasis added). It further directed that, "In issuing such rule, the Federal Communications Commission shall consult and coordinate with the Federal Trade Commission to maximize consistency with the rule promulgated by the Federal Trade Commission." *Id.* As explained above, the FCC explained that part of that alignment included adoption of caller ID rules similar to those promulgated by the FTC in the Telemarketing Sales Rule. The regulation under which Plaintiff sues here flows naturally from Congress' mandate to ensure consistency between FTC and FCC regulations.

And under the 2003 Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1601(e), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA, not just with respect to the Do Not Call Registry, but the other consumer privacy rulemaking Congress

empowered the FCC to promulgate. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act."). The plain text of the 2003 Act, as well as the FCC's resultant 2003 TCPA Order, *supra*, belies the Defendant's contention that those rules were not issued pursuant to authority from Subsection 227(c) the TCPA. Reading the 2003 Act as empowering regulations *under the TCPA's Section 227(c)* fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (explaining genesis of a right of action). And it is the plain meaning evident from the text.

As outlined above, only a handful of subsections of the TCPA allow for the promulgation of regulations, and § 227(c) is the only appropriate one applicable here. The establishment of regulations "under the TCPA" for the transmission of caller ID information has nothing to do with regulations concerning autodialers (§ 227(b)), fax machines and other systems used to transmit prerecorded messages (§ 227(d)), or information sharing with the FCC ((§ 227(i)). It also can have nothing to do with later 2009 regulations surrounding the transmission of misleading or inaccurate caller ID (§ 227(e)), brought about by the Truth in Caller ID Act of 2009. *Dobronski*, 2025 WL 900439, at *2 ("The FCC could not have promulgated a regulation pursuant to authority that it did not yet have."). Those regulations called for under the 2003 Act, including the Caller ID requirement at issue here, however, fit nicely within the ambit of § 227(c), and only that subsection, which explicitly deals with the promulgation of regulations to "protect residential telephone subscribers' privacy rights." And, as explained above, Section 227(c), under which 47 C.F.R. § 64.1601(e) was unquestionably promulgated, contains a private

right of action.

Nor is Section 227(c) of the TCPA limited only to regulations regarding the Do Not Call Registry, but also encompasses other regulations protecting consumer privacy, some of which date back to the TCPA's 1991 enactment, including calling hours restrictions and company-specific do-not-call rules. It is evident that the instant Caller ID regulations further the goals of protecting consumer privacy by, *inter alia*, empowering consumers to lodge do not call requests with specific, identifiable companies. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c) is limited to the Do Not Call Registry, as the Defendant claims.

The FCC acted pursuant to Congress' 1991 mandate and, in so doing, explicitly made clear to Congress that it presumed to leave the door open to future rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752. In considering whether it was feasible to implement some form of Caller ID regulations in 1991, the FCC concluded that such solutions were "not technologically feasible" and "too costly," including because of the development of SS7 technology, which was still in its infancy at the time. *Compare Id.* at 8752 ¶ 16 *with* 2003 TCPA Order, 18 F.C.C. Rcd. at 14121 (rejecting argument that Caller ID requirements remained technologically infeasible). For that matter, the FCC also declined to create a Do Not Call Registry in 1992, concluding that, given the limitations of technology *at the time,* the database would be "costly and difficult to establish and maintain in a reasonably accurate form," *Id.* at

8760.

However, the FCC implemented still other regulations of the same ilk to the Caller ID restriction at issue here in 1991 under its rulemaking authority under Section 227(c), including calling hours restrictions, identification requirements for a call's contents requiring a company name to be disclosed, and internal do not call requirements. 47 C.F.R. § 64.1200(d). In fact, to this end, the FCC explicitly stated that "If our current approach is not successful . . . it may be necessary to initiate a rulemaking proceeding to establish more stringent restrictions, or even to recommend to Congress that it increase penalties or make other statutory changes." *Id.* at 8781-82. A statute is "alterable when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). The Congress and the FCC did just that in 2003 when Congress authorized the FCC to promulgate, and the FCC promulgated, the instant regulation under Section 227(c).

Nor does the case law hold otherwise. Several of the cases cited by Defendants were other Michigan district court cases that were subsequently reversed in *Dobronski*. And neither *Travel Options* nor *Griffin* reached the conclusion that there was no right of action independently; rather, these cases relied on faulty and underdeveloped reasoning in other cases, which themselves did not engage in extensive analysis. As the *Dobronski* Court explained:

> In *Travel Options*, the court determined that § 64.1601(e) was promulgated to enforce § 227(d), which lacks a private right of action, because § 64.1601(e)'s caller ID requirement resembles "technical and procedural standards." In doing so, the court noted that the outcome was "not clear." To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to think that caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on caller ID requirements for all telemarketing calls, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems. . . . By contrast, § 227(c) focuses on privacy rights generally and also spoke in terms of "methods and procedures" as well as "telephone network technologies" as mechanisms to protect subscriber privacy rights. . . . But it does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s "telephone network technologies" language merely because it could also protect subscriber privacy rights in other, non-technological

> ways. . . . And it is not intuitive why the fact that a rule directly supports § 227(c)'s goals by employing a network technology and "will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers" bolsters the notion that § 64.1601(e) was not promulgated under the statute's subsection focused on protecting privacy rights. The Court sees no textual basis to carve from regulations that "protect" privacy rights those that merely "support" consumers' ability to enforce their rights—i.e., privacy rights are protected in part because wrongdoers are prohibited from hiding behind anonymity. At bottom, subsection 227(c) lets the FCC make rules to protect privacy rights and lets consumers sue when telemarketers violate those rules; § 64.1601(e) is a rule that helps protect privacy rights. *Travel Options's* influential inference seems to run uphill. . . . The other cases add little because they largely rely on *Travel Options* or on each other. . . . Those cases provided little analysis beyond that performed in *Travel Options*.

*Dobronski*, 2025 WL 900439, at *4–*5.

In any event, the fact remains that the FCC stated that it promulgated the instant caller ID regulations at 47 C.F.R. § 64.1601(e) pursuant to authority Congress gave it in 15 U.S.C. § 6153, which authorized the FCC to promulgate the instant regulation "under" the TCPA at 227(c). *See Bowen*, 488 U.S. at 208. The *only* authority "under" which the FCC could promulgate regulations "under the [TCPA]" that supports the Congressional mandate is § 227(c), which provides for the instant private right of action to "protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The FCC said so itself, confirming it was doing so pursuant to § 227(c). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2) and explaining that it was created pursuant to regulations promulgated by the FCC under Section 227(c)). There is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the Caller ID regulations it ordered the FCC implement (including to align with the FTC), the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*. There exists a private right of action for violations of 47 C.F.R. § 64.1601(e) (as with 64.1200(c) and (d)), as Congress intended under 47 U.S.C. 227(c)(5).

*B. As a technical matter, as confirmed by the FCC, 47 C.F.R. § 64.1601(e) applies to text messages.*

Defendant also argues that the Plaintiff's case should be dismissed because Section 1601 does not apply to wireless text messages. That argument is easily dispensed with.

First, Defendant argues that, as a prerequisite, the communications must transit over the public switched telephone network (PSTN), and that text messages aren't sent over the PSTN. This argument fails on both prongs. As an initial matter, no part of 47 C.F.R. § 64.1601(e) purports to require that a call transit the PSTN in order to be actionable. The requirements Defendant cites which reference the PSTN appear in 47 C.F.R. § 64.1601(a), which impose "delivery requirements" on "Telecommunications carriers and providers of interconnected Voice over Internet Protocol (VoIP) services" and "intermediate providers" as opposed to "privacy restrictions" contained in 47 C.F.R. § 64.1601(e). Indeed, Defendant curiously *omits the limiting language* found at the outset of 47 C.F.R. § 64.1601(a), which states that, "*except as provided in paragraphs (d) and (e)* of this section," indicating that Section 64.1601(e) is explicitly *omitted* from the PSTN requirements of 47 C.F.R. § 64.1601(a). And, by its plain text, no part of 47 C.F.R. § 64.1601(e) requires that calls or caller ID transit the PSTN, or that the provision of caller ID information be tethered to such a requirement. As the FCC observed when implementing the Caller ID Regulation itself, "The Commission has determined to require all sellers and telemarketers to transmit caller ID information, *regardless of their calling systems*." 2003 TCPA Order, 18 F.C.C. Rcd. at 14121 (emphasis added). In so doing, the FCC explicitly considered technological developments of various phone systems and technologies and arrived at an acceptable compromise: tethering the requirement to the capabilities of the telemarketer's telephone carrier, a requirement reflected in the text of the regulation itself. *Id.*

In any event, Defendant's argument fails as a technical matter. Text messages *are* sent

over the PSTN. The citation that the Defendant cites to the contrary is an FCC order addressing whether certain cellular text messages are "information" or "telecommunications" services under the Communications Act for the purposes of spam text message blocking. The FCC concluded that text messages were "information" services, and in so doing, empowered carriers to create company-specific rules for blocking spam text messages. But this order does not change the plain language of the statute or the technical fact that text messages transit the PSTN. Indeed, the FCC subsequently clarified that the FCC's authority to regulate text messages, including under the TCPA, "is not restricted to voice calls routed via the PSTN" and that the "underlying technology does not change the fact that the numbers in question are portions of the [North American Numbering Plan] that pertain to the United States. *In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247 at *18 (2023).

One need only look at the plain language of the applicable statutory provision, 47 C.F.R. § 20.3, to confirm this fact, as it contains the definition of the "Public Switched Network" ("PSN"), which is "The network that includes any common carrier switched network, whether by wire or radio, including local exchange carriers, interexchange carriers, *and mobile service providers*, that uses the North American Numbering Plan, or public IP addresses, in connection with the provision of switched services." The Plaintiff's phone is a mobile service provider, (Am. Compl. ¶ 21) and his phone number, as well as the number from which he received messages, both evidently use the North American Numbering Plan (Am. Compl. ¶ 18, 26), as 484- is the NANP area code for the Philadelphia suburbs, and 816- is the NANP area code for the Kansas City, MO area. The FCC plainly has authority to regulate text messages in the same manner as voice calls, as it determined in the 2023 Text Message Order.

Regardless, the more important point remains that the statutory provision at issue here

makes *no reference to the PSTN*, nor does it distinguish between voice calls and text messages. To the contrary, the applicable regulation, by its plain text, applies to "any person or entity that engages in telemarketing," 47 C.F.R. § 64.1601(e), and "telemarketing" "means the initiation of a telephone call *or message*." 47 C.F.R. § 64.1200(f)(13). Indeed, "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). District and circuit courts around the country have had no trouble coming to the same inevitable conclusion. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022); *Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *6 (D. Md. June 25, 2024); *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021).

Nowhere in the 2003 TCPA Order or the statutory text does the FCC state that the regulations it promulgated apply *only* or *exclusively* to "voice" calls. That's not in the definition of "telemarketing" either. To the contrary, the statutory definition of "telemarketing" applies to "calls" *or* "messages." As one court noted, "[t]he statute does not specify that it must be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5)." *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024). Defendant's attempts to substitute the rules of good statutory construction and the plain text of the statute should be rejected. *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 n.1 (7th Cir. 2025) (reasoning that a text message was telemarketing but affirming dismissal on other grounds).

Second, Defendant argues that the Plaintiff has not pled enough to demonstrate that the

text messages sent failed to include JR Capital's name and that any such violation is somehow immunized by the fact that JR Capital's website was mentioned in the content of the text messages. That's no matter, and fortunately for the Plaintiff, the FCC's 2003 TCPA order also provides guidance in this regard. First, it is the *Defendant's burden* to prove that, if the information required is not passed through to the consumer "the telemarketer must provide clear and convincing evidence that the caller ID information could not be transmitted." 2003 TCPA Order, 18 F.C.C. Rcd. at 14121. Defendant has not met its burden of showing that it "could not transmit" caller ID information, least of which because, at the pleadings stage, it has shown that it *did* transmit caller ID information, albeit legally deficient and incorrect caller ID information that did not name it and thus violated the statute. And for his part, the Plaintiff has explained a theory as to *why* the Defendant did not transmit such correct information. It did so by transmitting non-compliant information as a result of its own culpable conduct. Plaintiff has demonstrated that Defendant transmitted information which does not meet the text of the appliable regulation, as it only transmits a geographic location, and not the caller's name.

As the FCC has explained, "If the information required is not passed through to the consumer, through no fault of the telemarketer originating the call, then the telemarketer will not be held liable for failure to comply with the rules." *Id.* However, here, the Plaintiff has pled, and demonstrated, the opposite: the telemarketer originating the call did not pass the information required, *through its very own fault*, because it failed to avail itself of properly setting the Caller ID name functionality provided by its telephone carrier. (Am. Compl. ¶ 25, 26). The fact remains that the relevant regulation here is tied to proving what *was* transmitted, not whether the Plaintiff *received* the transmission. And if what the Defendant transmitted was something inaccurate and did not meet the requirements of the regulation, it is *that action* which violates the plain text of

the statute. The statute speaks of what a "person or entity" "transmits," not what the recipient of the call receives, nor does it qualify a violation on whether the recipient receives the information. 47 CFR § 64.1601(e). And a geographic location is plainly not the "name of the telemarketer," which the statute requires to be transmitted. 47 CFR § 64.1200(1). If anything, transmitting a geographic location shows that the functionality to transmit a name *was* available by the telemarketer's carrier, but the telemarketer impermissibly transmitted something else, a geographic location, instead of its name, as required.

With respect to Defendant's second sub-argument, the fact that content of the text messages mentioned JR Capital's website (and not even its name) is also of no import. The *content* of a call is plainly not the same as the caller ID sent *with* a call, and the regulation at issue makes it illegal to fail to send a caller ID name; it says nothing of the content of the call, which is governed by a separate section of the TCPA entirely. 47 CFR § 64.1200(d)(4). Defendant's argument would apply just as equally to a caller who states on a voice call that they are calling from "jrwcap.com." The rise of internet-based and digital threats, coupled with the guidance of the FCC, FTC, FBI, and numerous states, has wisely counseled against clicking unknown links provided over the phone and in text messages. It is basic good computing practice not to click unknown links in text messages, and the link here does not identify the caller.

This further lends credence to the obvious fact that the Caller ID information requirements here were created to buttress the TCPA's own caller-specific identification requirements found at 47 CFR § 64.1200(d)(4) for reasons exactly as this. The mere provision of a website on a call makes it more difficult to identify the caller and puts the called party at risk of malicious activity or other cybersecurity threats. Just because JR Capital (arguably) did not violate the TCPA's requirement that the caller identify themselves on the call does not mean that

JR Capital also did not violate the requirement that it transmit caller ID information with its name. As the FCC observed, "Caller ID allows consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again. Knowing the identity of the caller is also helpful to consumers who feel frightened or threatened by hang-up and "dead air" calls. We disagree with those commenters who argue that caller ID information only benefits those consumers who subscribe to caller ID services. . . . Caller ID also should increase accountability and provide an important resource for the FCC and FTC in pursuing enforcement actions against TCPA and TSR violators." 2003 TCPA Order, 18 F.C.C. Rcd. at 14121. Given that the provision of caller ID name provides an increased accountability and resource, especially here, where the only means whereby Plaintiff can identify the caller is by clicking a link on his phone, it is a separate requirement constituting a separate violation of the TCPA, and for good reason. Caller ID provides a separate, and arguably more reliable means, of connecting the caller to the text message than the content of the text message itself, as websites frequently change or go offline. The TCPA's Caller ID requirement thus counsels against dismissal on the specious basis that the Defendant's website was in the text messages, as the requirement is supplementary to the TCPA's identification requirement.

For the foregoing reasons, the text message at issue did not comply with 47 C.F.R. § 64.1601(e)'s requirements, which apply to text messages.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, it should permit the Plaintiff to amend to correct any deficiencies.

Dated: May 19, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 19, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.