## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

JOUREY NEWELL

      Plaintiff,

      v.

JR CAPITAL, LLC, JONATHAN ROBERT
WASSER,

      Defendants.

Case No. 2:25-cv-01419-GAM

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Let's regroup.  In this lawsuit, Newell seeks to pursue a class action alleging violations of the TCPA's restrictions on communications to residential phone numbers.  Yet as JR Capital pointed out in its opening memorandum, the subject phone number was listed for a trucking-carrier business (Newell Contracting) registered with the federal government.  After Newell filed this lawsuit, someone apparently took down Newell Contracting's federal registration.  *See* https://safer.fmcsa.dot.gov/query.asp?query_type=queryCarrierSnapshot&query_param=USDOT&query_string=4193978 (last visited May 23, 2025).  And, in his amended complaint, Newell tells this Court that the subject phone number "is a residential, non-commercial number."  Pl.'s Am. Compl., ECF No. 10, ¶ 18.

JR Capital knows that, in another recent TCPA case, this Court ruled that determining whether a given phone number qualifies as "residential" can require a fact-intensive, "case-by-case evaluation" unsuitable for a motion to dismiss.  *See Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *3 n. 3 (E.D. Pa. Mar. 14, 2025) (McHugh, J.).  Thus, JR Capital has not moved to dismiss Newell's entire amended complaint.  Rather, in an

effort to narrow the issues, JR Capital moves to dismiss Newell's "Caller ID" claim, that is, Newell's claim for violation of 47 CFR § 64.1601.

Newell's Caller ID claim can be dismissed for either or both of two reasons. First, because the challenged text messages contained the allegedly missing information and section 64.1601 does not apply to text messages in any event, Newell's Caller ID claim is insufficiently pled. Second, as almost every federal court to consider this issue has found, there is no private right of action for violation of section 64.1601.

Newell's response consists largely of efforts to distract from the relevant questions. Thus, Newell's Caller ID claim should be dismissed.

## Argument

### A.    Newell fails to allege a plausible claim for violation of 47 CFR § 64.1601.

#### 1.    *Newell has not alleged the texts he received failed to contain the required information.*

To sufficiently plead a claim under Rule 12(b)(6), a plaintiff must do more than make an "unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Newell falls short of even that insufficient allegation.

As noted in JR Capital's opening memorandum, Newell's allegation of noncompliance with § 64.1601(e) relies solely on his counsel's process of running the initiating number of a text message through a database and concluding that a call from that number via the public switched telephone network would not transmit the caller's name through the network. Pl.'s Am. Compl., ¶¶ 24-25. Nevertheless, in his response, Newell makes three efforts to salvage his Caller ID claim. These efforts should be rejected.

First, Newell argues that the URL for JR Capital's website provided in the challenged texts is insufficient to satisfy the requirements of section 64.1601(e). *See* Plaintiff's Response

2

("Pl.'s Resp."), ECF No. 18, pp. 14-16.  Yet Newell utilized that very information to make a do-not-call request, which, as Newell himself argues, is the purpose of the information required in section 64.1601(e).  Pl.'s Am. Compl., ¶ 27.  Although Newell could have simply texted "stop to stop," he instead identified JR Capital by name via its website URL, located JR Capital's general email address on the website, and sent a do-not-call request to JR Capital, copying its Chief Executive Officer.  *Id.*  Regardless of why Newell went this route, the text messages contained JR Capital's name.

Second, to try to distract from this obvious point, Newell points out that "[t]he rise of internet-based and digital threats, coupled with the guidance of the FCC, FTC, FBI, and numerous states, has wisely counseled against clicking unknown links provided over the phone and in text messages."  Pl.'s Resp., p. 16.  Newell notes that "[i]t is basic good computing practice not to click unknown links in text messages."  *Id*.  JR Capital does not quibble with these points.  But none of this has anything to do with whether the text messages here provided JR Capital's name and allowed Newell to identify JR Capital.  They did.

Third, Newell argues that JR Capital improperly contends that providing this information "immunizes" JR Capital from a violation of section 64.1601.  *Id.*  Newell points out that there is a separate regulation—namely, 64.1200—that requires that messages provide identifying information for the name of the caller.  *See id.*  Of course, Newell does not allege that JR Capital violated that regulation.  And, in any event, Newell misunderstands JR Capital's point.

JR Capital does not contend that including its name in the challenged text messages "immunizes" it from liability.  JR Capital maintains that by, providing this information, along with clear instructions to opt out by replying "stop to stop" to the challenged text messages, JR Capital furnished recipients with sufficient information to identify the message's source and opt

out of future communications, thereby fulfilling the primary purpose of section 64.1601(e).  *See* 47 C.F.R. § 64.1601(e) ("The telephone number so provided must permit any individual to make a do-not-call request during regular business hours."); *see also* Pl's Resp., p. 11 (acknowledging that the "entire purpose" of Caller ID regulations is "to permit consumers to lodge their objections against unsolicited telemarketing calls"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 ¶ 65 (FCC stating that Caller ID can "improve the ability of consumers to identify and enforce do-not-call rights.").

Notably, although JR Capital has not moved to dismiss Newell's Caller ID claim for lack of standing under Rule 12(b)(1), Newell's response raises serious concerns for his and others' ability on the standing front.  As the Third Circuit has observed, "[t]o maintain a suit, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Leyse v. Bank of Am. Nat'l Ass'n*, 856 F. App'x 408, 410 (3d Cir. 2021) (finding that TCPA plaintiff lacked standing where he failed to allege harm beyond a bare procedural violation) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  Here, in his response, Newell essentially concedes that he wasn't even aware of the alleged violation.  And, as noted, Newell apparently had no trouble making a do-not-call request (albeit using a channel not particularly well-designed to advise JR Capital of Newell's request rather than simply texting "stop").

The standing concerns arise even putting aside that (a) a federal-government website identifies the subject phone number as the number for registered business Newell Contracting and (b) after Newell filed suit, someone apparently pulled down that registration.  *Cf. Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *5 (E.D. Pa. Mar. 14, 2025) (McHugh, J.) (denying motion to dismiss, but noting that, "[i]f Plaintiff took down the

4

number from his business website and then immediately sued [the defendant] or another marketer, I would be strongly inclined to find estoppel"); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (Pai, dissenting) ("The TCPA has strayed far from its original purpose," and has "become the poster child for lawsuit abuse.") (*overruled in part on other grounds by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)).  In any event, because Newell has failed to allege that the challenged text messages lacked the required information, Newell has failed to sufficiently plead a violation of the Caller ID requirement in 47 CFR § 64.1601.

As discussed, however, there is still another deficiency in Newell's effort to plead his Caller ID claim.  Section 64.1601 does not apply to wireless communications like the text messages that Newell allegedly received.

### 2. *The challenged texts are not subject to 47 CFR § 64.1601.*

No court has ever held that 47 CFR § 64.1601(e) applies to text messages.  Section 64.1601 imposes requirements for communications over "the public switched telephone network (PSTN)."  47 CFR § 64.1601(a).  And, as the FCC has explained, text messages generally do not travel over the public switched telephone network.  *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, FCC 18-178, Docket No. 08-7 ¶ 33 n. 109 (December 13, 2018) ("the public switched network itself is not one that generally supports text messaging").

In his response, Newell makes three unpersuasive attempts to avoid this problem.

First, Newell argues that the PSTN requirement of section 64.1601(a) does not apply to section 64.1601(e).  Specifically, Newell asserts that, "by its plain text, no part of 47 C.F.R. § 64.1601(e) requires that calls or caller ID transit the PSTN, or that the provision of caller ID

information be tethered to such a requirement." Pl.'s Resp., p. 12. In interpreting section 64.1601(e) this way, Newell violates the "cardinal rule that a statute is to be read as a whole, … since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used....") (internal citations omitted).

To be sure, section 64.1601(e) does not explicitly re-reference reference 64.1601(a) or the PSTN. But Newell seeks to rip section 64.1601(e) from its surroundings. That reading should be rejected.[1] *See King*, 502 U.S. at 221 (stating that, although "subsection (d) is utterly silent about [this] limit on the protection it provides, other subsections of § 2024…expressly limit the" reach of that subsection).

Second, Newell cites a provision of the FCC's 2003 Order stating: "The Commission has determined to require all sellers and telemarketers to transmit caller ID information, *regardless of their calling systems*." *See* Resp., p. 12 (*quoting* 2003 Order, 18 F.C.C. Rcd. at 14121) (emphasis in original). Newell suggests that the "calling systems" referenced here include, but are not limited to, the PSTN. Not so. The "calling systems" referenced in the quoted sentence refer to ***internal*** calling systems like a private branch exchange ("PBX").[2] *See* 18 F.C.C. Rcd. at 1419-21.

---

[1] Newell also notes that § 64.1601(a) states that it applies "except as otherwise provided in paragraphs (d) and (e)." Pl.'s Resp., p. 12. But Newell does not tie the exemption language to the PSTN requirement. This is not surprising, though. Subsections (d) and (e) contain exemptions for certain types of calls, not exemptions from the PSTN requirement. *See* 47 CFR § 64.1601(d), (e).

[2] *See* 47 C.F.R. Part 68, Part 68 Frequently Asked Questions https://www.fcc.gov/sites/default/files/part-68-faqs.pdf (last visited May 23, 2025) (recognizing that a PBX is an internal system that a business can use to connect to the PSTN).

At bottom, no interpretation of the FCC's 2003 Order, section 64.1601, or any other statutory or regulatory text supports Newell's argument that the PSTN requirement does not apply to section 64.1601(e).

Third, perhaps recognizing as much, Newell argues that JR Capital's arguments fail as a technical matter because "text messages *are* sent over the PSTN." Pl.'s Resp., pp. 12-13 (emphasis added). Again, the FCC says otherwise. *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, FCC 18-178, Docket No. 08-7, ¶ 33 n. 109 (Dec. 13, 2018) ("the public switched network itself is not one that generally supports text messaging").

In his response, Newell suggests that this Court should ignore this statement, because the FCC made the statement in an order addressing whether text messages are informational under the Communications Act of 1934. Pl.'s Resp., p. 13. But the TCPA "was passed in 1991 as part of an amendment to the Communications Act of 1934." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 75 (3d Cir. 2011) (*opinion reinstated in part and vacated in part on other grounds by* No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012)). In other words, the TCPA is part of the Communications Act. And Newell does not explain why, this being so, the Court should disregard the FCC's statement.

Having no support for his technical argument that text messages are transmitted over the PSTN, Newell raises a series of red herrings that have no bearing on whether the challenged text messages were transmitted over the PSTN. This is just misdirection.

To begin with, Newell argues that, because the FCC has the authority to regulate text messages and voice calls, text messages must be transmitted over the PSTN. *See* Resp., p. 13. Relatedly, Newell asserts that "[n]owhere in the 2003 TCPA Order or the statutory text does the

FCC state that the regulations it promulgated apply only or exclusively to 'voice' calls." JR Capital does not dispute that the FCC has the authority to regulate both text messages and voice calls. Yet the mere fact of the FCC's regulatory authority has no bearing on whether text messages transit the PSTN.

Next, Newell contends that the FCC's authority to regulate mobile service providers suggests that text messages must be transmitted over the PSTN. *See* Resp., p. 13 (*quoting* 47 C.F.R. § 20.3) (stating that a public switched network is "[t]he network that includes any common carrier switched network, whether by wire or radio, including local exchange carriers, interexchange carriers, and mobile service providers, that uses the North American Numbering Plan, or public IP addresses, in connection with the provision of switched services"). JR Capital does not dispute that the FCC has the authority to regulate mobile service providers. Nor does JR Capital argue that the subject phone is not served by a mobile service provider, or that both that phone number and the number that contacted that phone number use the North American Numbering Plan. None of this, however, tells us whether text messages are transmitted over the PSTN. That is the only issue that matters here.[3]

Finally, Newell cites a series of cases to support the proposition that, in certain instances, text messages to a cellphone may qualify as calls covered by the TCPA. *See* Resp., p. 14. But that's neither here nor there for present purposes. Again, the question here is whether text messages generally, including the challenged text messages, are transmitted over the PSTN. The FCC says that "the public switched network itself is not one that generally supports text messaging." *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless*

---

[3] For similar reasons, Newell falls short with his argument that JR Capital has the "burden" to show that Caller ID information cannot be transmitted under section 64.1601. *See* Pl.'s Resp., p. 15. The question is not whether Caller ID information can be transmitted; it's whether section 64.1601 applies to communications that are not sent over the PSTN. It does not. *See* 47 CFR § 64.1601(a).

*Messaging Service*, FCC 18-178, Docket No. 08-7, ¶ 33 n. 109 (Dec. 13, 2018).  Newell has

failed to offer a basis to disregard this statement.

    To summarize so far, Newell has failed to sufficiently plead a violation of section

64.1601(e).  For this reason alone, Newell's Caller ID claim can be dismissed.

**B.    There is no private right of action for a violation of 47 CFR § 64.1601.**

> ***1.    The weight of authority and Congress's own subsequent actions support
> the conclusion that there is no private right of action for violation of 47
> CFR § 64.1601.***

    Even if Newell had sufficiently alleged a violation, his Caller ID claim would be subject

to dismissal.  As JR Capital discussed in its opening memorandum, it is, at best, unclear under

which provision of the TCPA the FCC issued the Caller ID regulation.  Admittedly, the FCC

might have issued the Caller ID regulation under 47 U.S.C. § 227(c), which contains a private

right of action for enforcing "residential telephone subscribers' privacy rights."  At the same

time, the FCC might have issued the Caller ID regulation under 47 U.S.C. § 227(d), which  does

not contain a private right of action for enforcing "[t]echnical and procedural standards."

    Yet courts "assume that Congress will be explicit if it intends to create a private cause of

action."  *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017).  Additionally, like substantive federal law

itself, private rights of action to enforce federal law must be created by Congress."  *Alexander v.

Sandoval*, 532 U.S. 275, 286 (2001).  With this in mind, federal courts have repeatedly erred on

the side of caution when it comes to whether there is a private right of action to enforce the

Caller ID regulation in 47 CFR § 64.1601(e).  And they have repeatedly found that there is not.

*See, e.g.*, *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL

4333373, at *5 (D. Or. Sept. 27, 2024); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d

784, 790 (E.D. Mich. 2020); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL

5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016) *aff'd by* 678 F. App'x 165 (4th Cir. 2017).

This conclusion seems particularly sound given that, after the FCC promulgated 47 CFR § 64.1601(e), Congress amended the TCPA to specifically address Caller ID. *See* TRUTH IN CALLER ID ACT OF 2009, PL 111-331, December 22, 2010, 124 Stat 3572. And, in doing so, Congress specifically chose not to include a private right of action for Caller ID claims. *See* 47 U.S.C. § 227(e). Thus, consistent with the weight of authority, this Court should find that there is no private right of action for Newell's Caller ID claim.

### 2.    *Newell's efforts to create a private right of action should be rejected.*

In his response to JR Capital's motion to dismiss, Newell makes three arguments to try to conjure a private right of action for violation of 47 CFR § 64.1601(e). These arguments should be rejected.

### a.    The FCC has never said that it promulgated 47 CFR § 64.1601 under 227 U.S.C. § 227(c).

First, Newell tells this Court that the FCC has expressly said that 47 CFR § 64.1601(e) was promulgated under 47 U.S.C. § 227(c). *See* Pl.'s Resp., p. 4 ("It [the FCC] concluded that, pursuant to its authority under Section 227(c) of the TCPA, 'the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004'."); *id.*, p. 11 ("The FCC said so itself, confirming it was doing so pursuant to § 227(c)."). To support this assertion, Newell cites two things. The first thing that Newell cites is a paragraph in the 2003 Order that does not mention § 227(c) at all. *See* Pl.'s Resp., p. 4 (*citing In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14142-43 ¶ 222 (2003)). The second thing that Newell cites is a court decision finding that an entirely different regulation—namely, 47 CFR 64.1200(c)(2)—was adopted under §227(c). *See* Pl.'s Resp., p. 11 (*citing Cordoba v.*

*DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019)).  In other words, Newell tells this Court that the FCC specifically said something it never said.  This argument is unpersuasive at best.

        b.      <u>The FCC has repeatedly linked Caller ID with the technology regulated under 47 U.S.C. § 227(d).</u>

Second, Newell points out that 47 U.S.C. § 227(d) addresses "[t]echnical and procedural standards" associated with, among other things, automatic telephone dialing systems and prerecorded-voice calls.  Pl.'s Resp., p. 8.  Newell then proclaims that the establishment of regulations "for the transmission of caller ID information has nothing to do with regulations concerning" such technology.  *Id*.  Put simply, that is absurd.  As Newell himself notes, in the FCC's 2003 Order, the FCC refers in the same breath to "predictive dialers" (which were then considered a type of automatic telephone dialing system) and Caller ID regulations.[4]  *See* 2003 TCPA Order, 18 F.C.C. Rcd. at 14024 (recognizing the need to align the FCC's rules with the rules issued by the Fair Trade Commission ("FTC"), and stating that the "FTC also adopted new rules on the use of predictive dialers and the transmission of caller ID information").

To try to get around this problem, Newell insists that the Caller ID regulation in 47 CFR § 64.1601(e) applies to all residential calls and not just residential calls placed using automated technology.  Therefore, Newell argues that the regulation could not have been issued under § 47 U.S.C. § 227(d).  *See* Pl.'s Resp., p. 3.

Yet, in enacting the TCPA, Congress specifically expressed concern that "automated or prerecorded telephone calls made to private residences were rightly regarded by recipients as an invasion of privacy."  *Id*. (internal quotation marks and citations omitted).  *Mims v. Arrow Fin.*

---

[4] For a discussion of the history of the FCC's regulation of predictive dialers as automatic telephone dialing systems see *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 702 (D.C. Cir. 2018).  *See also Perrong v. Montgomery Cnty. Democratic Comm.*, No. 23-2415, 2024 WL 1651274, at *1-2 (3d Cir. Apr. 17, 2024) (discussing current meaning of "automatic telephone dialing system").

*Servs., LLC*, 565 U.S. 368, 372 (2012) (*quoting* TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)) (internal quotation marks omitted).  Newell does not explain why, in enacting the Caller ID regulation in 47 CFR § 64.1601(e), the FCC might not have been likewise specifically concerned about "automated or prerecorded telephone calls"— that is, the calls regulated under 47 U.S.C. § 227(d).  Indeed, in its 2003 Order creating 47 CFR § 64.1601(e), the FCC specifically said that, to "address the more prevalent use of predictive dialers, we have determined that a telemarketer may abandon no more than three percent of calls answered by a person and must deliver a prerecorded identification message when abandoning a call," and the "new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14017 (2003).

Moreover, as Newell concedes, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  Newell argues that section 64.1601(e) applies to all telemarketing calls.  Therefore, Newell argues that, if the FCC implemented section 64.1601(e) under 47 U.S.C. § 227(d), the FCC exceeded its authority.  Pl.'s Resp., pp. 2-3.

That would be true if we conclude that section 64.1601(e) applies to all calls.  But we need not so conclude.  As noted, in discussing Caller ID requirements, the FCC was specifically concerned with calls made using automated technology.  *Cf. Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) ("This Court has made clear that a legislature need not strike at all evils at the same time or in the same way, and that a legislature may…adopt[] regulations that only partially ameliorate a perceived evil").  In other words, to reject Newell's interpretation, this

Court need not get into the thorny issue of whether the FCC exceeded its authority in promulgating section 64.1601(e).  *See Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 99 (3d Cir. 2023) (Phipps, J. concurring) (discussing complex issues under the Hobbs Act regarding whether district courts have jurisdiction to review FCC orders).

> c.    The FCC implemented the Caller ID requirement in a different regulation from the regulation in which it implemented the Do Not Call registry under 47 U.S.C. § 227(c).

Third, Newell stresses that the FCC promulgated the Caller ID regulation in the same order—*i.e.,* the FCC's 2003 Order—in which the FCC promulgated regulations relating to the DNC registry.  Pl.'s Resp., pp. 3-5.  And Newell stresses that, pursuant to the deadline imposed in the Do-Not-Call Implementation Act of 2003, the FCC implemented the DNC registry under § 227(c).  *See id.*

Fair enough.  But the FCC implemented the DNC registry in ***a different regulation from the Caller ID regulation***.  *Compare* 47 CFR § 64.1200 (the DNC registry) *with* 47 CFR § 64.1601 (Caller ID).  Newell does not explain why, if the FCC promulgated both regulations under the same paragraph of the TCPA, the FCC put them in different places.

To be sure, as Newell notes, the FCC's 2003 Order repeatedly mentions that the FCC is promulgating the DNC registry under § 227(c).  But the 2003 Order never once says that the FCC is promulgating the Caller ID regulation under § 227(c).  On the other hand, as Newell himself acknowledges, the FCC specifically said that Caller ID can "improve the ability of consumers to identify and enforce do-not-call rights"—*i.e.*, rights arising under a TCPA provision that does provide a private right of action for calls to residential phone numbers.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 ¶ 65; 47 U.S.C. § 227(c)(5).

To try to further muddy the waters, Newell cites two cases addressing claims brought pursuant to 47 CFR § 64.1200.  *See Radvansky v. Kendo Holdings, Inc*., 744 F. Supp. 3d 1314, 1321, 1321 n. 3, n. 4 (N.D. Ga. 2024); *Siringi v. Parkway Family Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023).  These cases, though, tell us nothing about under which paragraph of the TCPA the FCC promulgated the entirely separate 47 CFR § 64.1601 (*i.e.*, the section containing the Caller ID regulation at issue in this case).[5]

On a related point, Newell stresses that, in directing the FCC to implement regulations to protect residential subscribers' privacy rights, 47 U.S.C. § 227(c) allows the FCC to "compare and evaluate alternative methods and procedures," including the use of a nationwide database (that is, the DNC registry and "telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages."  47 U.S.C. § 227(c).  True.  In the end, though, the FCC implemented a national DNC registry and various other requirements under 47 U.S.C. § 227(c) in 47 CFR § 64.1200.  By contrast, the FCC put the Caller ID regulation in section 47 CFR § 64.1601.

For Newell's part, as JR Capital anticipated in its opening memorandum, Newell relies heavily on *Dobronski v. Selectquote Insurance Services,* No. 2:23-CV-12597, 2025 WL 900439, at *5 (E.D. Mich. Mar. 25, 2025).  That is, Newell relies on the only federal court decision—out of half a dozen—to find that there is a private right of action for enforcing the Caller ID regulation in section 64.1601(e).

---

[5] Newell also says that "[t]he header of Section 1601 addresses 'privacy restrictions'" and that this further supports his position.  Pl.'s Resp., p. 5.  Actually, the header of section 1601 is "Delivery requirements and privacy restrictions."  47 CFR § 64.1601.  And the "Privacy" paragraph addresses requirements relating to a callers' ability to block their phone number from call recipients.  47 CFR § 64.1601(b).

Yet, as discussed in JR Capital's opening memorandum, that decision is flawed. To begin with, even putting aside the weight of authority, the court apparently assumed that—if it is unclear whether a statutory provision containing a private right of action covers a regulation—a plaintiff can rely on that provision to enforce that regulation. *See id.*, at *2-5. Again, just the opposite is true. Courts "assume that Congress will be explicit if it intends to create a private cause of action." *See Ziglar*, 582 U.S. at 133. Additionally, as noted, after the FCC issued 47 CFR 64.1601(e), Congress amended the TCPA to specifically address Caller ID in general and did not include a private right of action for Caller ID claims. *See* 47 U.S.C. § 227(e).

Newell argues that this Court should ignore § 227(e), because the Caller ID regulation in 47 CFR § 64.1601 pre-dates § 227(e). *See* Pl.'s Resp., p. 8. In making this argument, though, Newell does not explain why this Court should ignore Congress's express decision not to include a private right of action for Caller ID claims. By contrast, the Supreme Court has long observed that, "[a]lthough postenactment developments cannot be accorded the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions concerning the scope and purpose of" a statute. *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 (1982) (internal quotation marks omitted).

On the other hand, citing no less an authority than *Marbury v. Madison*, 5 U.S. 137 (1803), Newell engages in a lengthy discussion about (a) the history of considerations relating to the feasibility and cost of Caller ID; (b) the FCC's general ability to promulgate regulations; and (c) the FCC's ability to seek additional regulatory authority from Congress. *See* Pl.'s Resp., pp. 5-10. Newell does not explain what any of this has to do with whether the Caller ID regulation was issued under § 227(c) or § 227(d). And explanation strains the imagination.

There is no private right of action to enforce 47 CFR § 64.1601.

**Conclusion**

Newell has failed to sufficiently plead a violation of 47 CFR § 64.1601, and, even if he had, there is no private right of action to enforce 47 CFR § 64.1601. Thus, for the reasons stated, Newell's claim for violation of 47 CFR § 64.1601 should be dismissed.

Dated: May 27, 2025

Respectfully submitted,

 /s/ Scott J. Helfand
Scott J. Helfand (Pro Hac Vice)
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Scott.Helfand@huschblackwell.com
Tel: 312-341-9876
Fax: 312-655-1501

Laura K. Conroy
PA State Bar No. 206797
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
Laura.Conroy@huschblackwell.com
Tel: 202-378-5388
Fax: 202-378-2319

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by the filing of said document through the Court's electronic filing system on this 27th day of May 2025.

By: *
/s/ Scott J. Helfand*
Scott J. Helfand