IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOUREY NEWELL**, *individually and on behalf of all others similarly situated,* | : : : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-1419** |
| | : | |
| **JR CAPITAL, LLC** | : | |

**McHUGH, J.**                                                                                                                    **July 16, 2025**

## MEMORANDUM

The Telephone Consumer Protection Act (TCPA) was passed by Congress in 1991 to address consumer privacy concerns related to the proliferation of telemarketing. In crafting the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime" administered by the Federal Communications Commission. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012). At issue here is one provision of that regime, 47 C.F.R. § 64.1601(e), which requires telemarketers to transmit caller identification information. Plaintiff has sued, arguing that unsolicited marketing messages he received lacked caller identification information required under the Act. Following consideration of a motion to dismiss, I conclude that a private cause of action exists, the regulation covers text messages, and Plaintiff has adequately pled that the text messages do not contain the required caller identification information.

**I.      Facts as Pled**

Plaintiff Jourey Newell alleges that he has a residential[1] phone number starting with 484, which he registered on the National Do Not Call Registry some time prior to 2022. Am. Compl.

---

[1] There appears to be a dispute of fact as to whether this is actually a residential, non-commercial number, which is not amenable to resolution under Rule 12. As Defendant acknowledges, determining whether a

¶¶ 18-22, ECF 10.  Between 2022 and 2025, Mr. Newell received five telemarketing text messages from Defendant JR Capital, advertising business equipment and vehicles.  *Id.* ¶¶ 23-24, 26.  Several of these messages were sent within twelve months of each other.  *Id.* ¶ 24.  Every text message included a link to JR Capital's website, jrwcap.com/equipment, and four messages included a phone number to contact.  *Id.* ¶ 26.  None of the messages included JR Capital's name.  *Id.*  The caller identification transmitted alongside the texts included the geographic origin of the message, but did not include JR Capital's name or the name of a hired telemarketer.  *Id.* ¶¶ 24-26.

After receiving the first two telemarketing texts, Mr. Newell sent an email to JR Capital's general email address requesting to be put on their internal Do Not Call List.  *Id.* ¶ 27.  But JR Capital sent Newell three additional texts after receiving this request.  *Id.* ¶¶ 24, 27, 28.

Newell asserts multiple violations of the Telephone Consumer Protection Act, including violations of a regulation establishing caller identification ("caller ID") requirements, 47 C.F.R. § 64.1601(e)(1).  It is this count that JR Capital moves to dismiss.

**II.     Standard of Review**

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

---

phone number qualifies as residential is a fact-specific, case-by-case inquiry.  *Shelton v. Pro Source Lending Grp. LLC*, No. 24-4394, 2025 WL 817485, at *3 n.3 (E.D. Pa. Mar. 14, 2025) (McHugh, J.).

**III.    Discussion**

Newell specifically alleges that JR Capital violated § 64.1601(e),[2] a regulation promulgated under the TCPA, by failing to include its name in the text messages he received. Section 64.1601(e) provides that "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information," and sets out specific requirements for what information must be included in the caller ID, including "the name of the telemarketer" or "the name of the seller" benefitting from the telemarketing. 47 C.F.R. § 64.1601(e).

Defendant asserts three grounds on which this claim should be dismissed. First, JR Capital asserts that no private right of action exists under § 64.1601(e). Second, it argues that § 64.1601(e) does not apply to text messages. Finally, JR Capital claims that the text messages in question comply with the requirements of § 64.1601(e). All three arguments fail, and Defendant's motion must be denied.

**A. A Private Right of Action Exists for Violations of § 64.1601(e).**

Not every violation of the TPCA gives rise to a private cause of action. When a regulation is invoked as the source of a claim, the existence of a private right of actions depends on which section of the statute provided the legal authority for issuance of the regulation. Plaintiff asserts that the FCC promulgated § 64.1601(e) under § 227(c) of the TCPA, which creates a private right of action, while Defendant contends that it was prescribed under § 227(d), which does not. The FCC has not expressly identified the subsection of § 227 from which it drew authority in

---

[2] I will abbreviate regulation 47 C.F.R. § 64.1601 as "§ 64.1601," and statutory provision 47 U.S.C. § 227 as "§ 227."

3

promulgating § 64.1601(e),³ requiring the Court to determine the source of TCPA authority that the FCC used.⁴ This is not a unique circumstance, and where the FCC is not explicit it falls to courts to decide. *See, e.g.*, *Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1338-39 (N.D. Ga. 2020) (collecting cases).

The text of the TCPA and regulation at issue, the legislative and administrative history, and the presumption that agencies act within their lawful authority all lead me to conclude that § 64.1601(e) was promulgated under § 227(c), and that a private right of action exists.⁵

   1. *Congress created an express private right of action for violations under § 227(c).*

Private rights of action to enforce federal laws "must be created by Congress," not the Courts. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017). "When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action." *Ziglar*, 582 U.S. at 133. "If the statute

---

³ *See* Def. Mem. at 12, ECF 14 ("the FCC did not specify which TCPA provision the FCC relied on in issuing section 64.1601(e)"); *see also* TCPA Report and Order, 18 FCC Rec. 14014 (FCC No. 03-153) (July 3, 2003) at ¶ 222.

⁴ Typically, courts defer to agencies' reasonable readings of genuinely ambiguous regulations. *See Kisor v. Wilkie,* 588 U.S. 558 (2019) (describing *Auer* deference). However, deference is only appropriate if "a regulation is genuinely ambiguous . . . even after a court has resorted to all the standard tools of interpretation," and if the agency has actually spoken on the issue. *Id*. at 573. Here, I do not view the regulation itself as ambiguous, and the FCC has not spoken on any of the issues before me, rendering *Auer* deference inapplicable.

⁵ A court must consider the "text, structure, history, and purpose of a regulation" to determine its meaning. *United States v. Adair*, 38 F.4th 341, 348 (3d Cir. 2022) (citing *Kisor*, 588 U.S. at 575). The rules of statutory construction also apply when interpreting agency regulations. *See, e.g.*, *Kinsor,* 588 U.S. at 575 ("a court must exhaust all the traditional tools of construction" when interpreting regulations); *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668-69 (2007) (construing a regulation in light of text, history, and canon against surplusage).

itself does not display an intent to create a private remedy, then a cause of action does not exist." *Id.* (cleaned up).

Congress believed that it was important to allow private citizens to enforce certain provisions of the TCPA, and expressly created a cause of action under § 227(c) of the Act. Section 227(c)(5), titled "Private right of action," provides that any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring "an action based *on the violation of the regulations prescribed under this subsection*" for damages and injunctive relief. *Id.* (emphasis added). Consequently, if a regulation was created under § 227(c), a private cause of action exists as to that regulation.

> 2. *Section 227(c) directs the FCC to analyze network technologies and prescribe regulations as appropriate.*

To determine if § 64.1601(e) was promulgated under § 227(c), it is necessary to review the content and context of § 227.

The TCPA was signed into law in 1991. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. It was enacted by Congress in response to widespread consumer complaints about the growing number of telemarketing calls viewed as a "nuisance and an invasion of privacy." S. Rep. No. 102-178, at 2 (1991). Congress delegated authority to the FCC to make rules and regulations implementing the TCPA. 47 U.S.C. §§ 227(b)(2), (c)(2), (d)(2)-(3), (e)(3).

In addition to delegating general rulemaking authority, Congress tasked the FCC with specific duties. Under § 227(c), Congress ordered the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving

telephone solicitations to which they object." *Id.* § 227(c)(1). Congress was particularly detailed in this mandate to the FCC, ordering them to "compare and evaluate alternative methods and procedures (including the use of . . . *telephone network technologies*. . . and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights . . ." and then "prescribe regulations to implement methods and procedures for protecting [] privacy rights." *Id.* §§ 227(c)(1)(A), (c)(2) (emphasis added).[6]

### 3. Caller identification is a "network technology," falling under § 227(c).

The administrative record demonstrates that, since the first FCC proceeding under the TCPA, the FCC has considered caller ID a § 227(c) "network technology." Shortly after the TCPA was passed, the FCC published a Report and Order summarizing the agency analysis mandated by § 227(c)(1), which included amendment of its rules and regulations. TCPA Report and Order, 7 FCC Rec. 8752 (FCC No. 92-443) (Oct. 16, 1992) ("1992 TCPA Order").[7] In the 1992 TCPA Order, the FCC evaluated "Network Technologies" as instructed by Congress. *Id*. ¶¶ 16-17.[8] Within its network technologies analysis, the FCC assessed the use of a caller ID system, whereby telemarketers would be required to use an identifier that consumers would be able to readily identify "using automatic number identification" or "[c]aller ID service." *Id.* ¶ 16. The FCC

---

[6] In addition, § 227(c)(3) noted that such regulations may include a national do-not-call database, and laid out additional requirements if the FCC decided to implement such a database. The FCC implemented a national do not call registry through 47 C.F.R. § 64.1200(c). However, § 227(c) in no way limited the FCC's ability to implement other methods and procedures; it merely permitted a national database as one such method.

[7] The Court takes judicial notice of the relevant administrative record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters incorporated by reference or integral to the claim" and "matters of public record" in determining whether a pleading has stated a claim).

[8] FCC documents such as the 1992 TCPA Order are both paginated and paragraphed. For precision, I will cite to specific paragraphs for all FCC documents.

declined to require any alternative network technologies because of the "cost and technological barriers to implementation." *Id.* ¶ 17. The 1992 TCPA Order clearly shows that the FCC considered caller ID a telephone network technology, falling within § 227(c)(1).

Telephone technologies rapidly evolved in the decade after the TCPA was passed, and in 2002 the FCC published a Notice of Proposed Rulemaking (NPRM) seeking comments on proposed updates to the regulations implementing the TCPA. *See* TCPA NPRM, 17 FCC Rec. 17459 (FCC No. 02-250) (Sept. 18, 2002) at ¶ 1 (noting that, since 1991, "telemarketing practices have changed significantly" and "[n]ew technologies have emerged" increasing "public concern about the effect on consumer privacy"). Within the "Network Technologies" chapter of the NPRM, the FCC expressly solicited comments on:

> whether the Commission should consider any additional "caller ID" requirements in the context of its review of the TCPA rules. Specifically, should the Commission require telemarketers to transmit the name and telephone number of the calling party, when possible, or prohibit them from blocking or altering the transmission of such information? *Id.* ¶ 21-22.

After receiving and analyzing public comments, the FCC promulgated a regulation adding subsection (e) to § 64.1601, thereby creating the caller ID requirements at issue in this litigation. *See Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 44179 (July 25, 2003).[9]

---

[9] The complete text of § 64.1601(e) states:
> (e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
>> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.
>> (2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.

In its Report and Order accompanying the regulation, the FCC discussed caller ID as a network technology, and explained that they will "require all sellers and telemarketers to transmit caller ID information, regardless of their calling systems." TCPA Report and Order, 18 FCC Rec. 14014 (FCC No. 03-153) (July 3, 2003) at ¶ 179 ("2003 TCPA Order").

In sum, the administrative history unequivocally demonstrates that caller ID is a network technology, assessed by the FCC as one available method to protect residential telephone subscribers' privacy rights under § 227(c). *See Dobronski v. Selectquote Ins. Servs.*, No. 23-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025) ("The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers. That places § 64.1601(e) in the heartland of § 227(c).").

### 4. Defendant's arguments that § 64.1601(e) was promulgated under TCPA § 227(d) are not persuasive.

Defendant relies heavily on the fact that several other district courts have concluded that § 64.1601(e) was promulgated under § 227(d) of the TCPA, which does not provide a private cause of action. *See Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 24-243, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024); *Dobronski v. Selectquote Ins. Servs.*, 462 F.Supp.3d 784, 790 (E.D. Mich. 2020); *Meyer*, No. 15-2405, 2017 WL 5138316, at *17; *Worsham v. Travel Options, Inc.*,

---

(3) Tax-exempt nonprofit organizations are not required to comply with this paragraph.
47 C.F.R. § 64.1601(e).

No. 14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd* 678 F.App'x 165 (4th Cir. 2017).[10]  I do not find these cases persuasive.

They largely adopt the reasoning of *Worsham*. In *Worsham*, the Court concluded that a "violation of § 64.1601(e)(1) is a violation of technical and procedural standards under [TCPA § 227] subsection d," which does not have a private cause of action.  2016 WL 4592373, at *7.  In reaching this outcome, the Court noted that "Caller ID technology does not fit neatly into the focus of either subsection [b or c], neither of which *requires* the use of such technology to accomplish their respective purposes." *Id.* at *4 (emphasis added).  It then concluded that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* (emphasis in original).

In my view, *Worsham* misunderstands the structure of the statute.  In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations.  If § 64.1601(e) is promulgated as a "method or procedure" to "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists.  And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c).  Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt

---

[10] *Worsham's* affirmance on appeal lends no weight to its conclusion.  In the Fourth Circuit, "unpublished opinions have no precedential value, and they are entitled only to the weight they generate by the persuasiveness of their reasoning." *United States v. Shivers*, 56 F.4th 320, 326 n.3 (4th Cir. 2022) (internal citations omitted).  The Fourth Circuit's affirmance of *Worsham* was conclusory, and as such adds nothing to the analysis of the issue before me.  *See Worsham*, 678 F.App'x at 165.

technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 2025 WL 900439 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).

Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority.[11] Section 64.1601(e) thus fits best under § 227(c), not (d).

*Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

---

[11] In a Reply brief, Defendant attempts to reconcile § 64.1601(e) and § 227(d) by interpreting § 64.1601(e) as only applying to automated or pre-recorded calls. Def. Reply at 12-13, ECF 19. This contradicts the plain text of (e), and would eliminate the caller ID requirements for a large swath of telemarketing calls. But the FCC did not limit (e) to these types of calls in the regulation, or express its desire to limit caller ID requirements to these types of calls in its 2003 TCPA Order. Thus, Defendant's attempt to reconcile § 64.1601(e) and § 227(d) is unpersuasive.

> 5. *The FCC's silence on a private right of action for § 64.1601(e) does not alter this analysis.*

In its 2003 TCPA Order promulgating § 64.1601(e) and many other regulations, the FCC did not specify whether any regulation had a private cause of action. JR Capital argues the Court should infer from this silence that no private right of action exists. *See* Mot. to Dismiss Mem. at 12-13. I disagree.

In support of their argument, Defendant cites *Meyer v. Cap. All. Grp.*, where a district court "decline[d] the invitation to infer a private right of action where section 64.1601(e) is silent on the matter." No. 15-2405, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017). But like *Worsham,* this ignores the structure of the statute, in that Congress specifically authorized the FCC to issue regulations, and provided for a private right of action for all regulations issued under § 227(c). *Accord Dombronski,* 2025 WL 900439 (rejecting the argument that § 64.1601(e)'s lack of language creating an express cause of action precludes the existence of a private cause of action). For that matter, the statute would not empower the FCC to deprive parties of a private right of action for a regulation issued under § 227(c) where the statutory language is plainly to the contrary.

Further, other TCPA regulations that the FCC has promulgated without specific reference to the existence of a private right of action have been construed to confer such a right. *See, e.g.*, *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 347 (1st Cir. 2022) (allowing private actions enforcing 47 C.F.R. § 64.1200(c)(2)); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019) (same). And, as discussed below, 47 C.F.R. § 64.1200(d) has also been found to give rise to a private cause of action pursuant to § 227(c)(5), and as with § 64.1601(e) the text of the regulation itself did not so provide.

11

Finally, it cannot simply be inferred that the FCC's silence as to a § 64.1601(e) private right of action necessarily reflects a conclusion by the FCC that no such right exists. That is so because at the time of the 2003 TCPA Order, there had been extensive litigation in district and circuit courts as to the extent of the TCPA private right of action found in § 227(c)(5) and (b)(3). As of 2003, four circuits had concluded that federal district courts lacked jurisdiction over private TCPA actions. *See Mims*, 565 U.S. at 376 (collecting cases). It was not until 2012 that the Supreme Court clarified that the TCPA does not limit federal jurisdiction over such cases. *Id*. at 372. The FCC's hesitancy to delve into this highly litigated morass may represent nothing more than deference to the judiciary and Congress.

> 6. *Courts have found § 227(c) to be the source of other regulations using similar reasoning.*

Although there is a comparatively narrow body of case law on whether a private cause of action exists under § 64.1601(e), far more courts have performed a similar analysis in the context of TCPA regulation 47 C.F.R. § 64.1200(d). The majority of these courts – including two circuit courts – have determined that § 64.1200(d) was promulgated under § 227(c). The reasoning of these courts further supports the existence of a cause of action under § 64.1601(e).

Section 64.1200(d) contains a variety of procedural requirements to protect the privacy rights of residential telephone subscribers. Under § 64.1200(d), telemarketers must: (1) maintain a do-not-call list and have a related written policy; (2) train telemarketing staff on the use of the do-not-call list; (3) record and disclose do-not-call requests; and (4) identify the seller's name and phone number during pre-recorded or artificial calls. 47 C.F.R. §64.1200(d)(1)-(6). As with § 64.1601(e), the FCC did not identify under which subsection of § 227 this regulation was promulgated, leading to extensive litigation.

While the Third Circuit has not weighed in on this issue, "federal courts around the country have – with most courts holding that there is a private right of action," including the District of New Jersey and the Sixth and Eleventh Circuits. *Bradshaw v. CHW Grp., Inc.*, 763 F.Supp.3d 641, 649 (D.N.J. 2025) (collecting cases and concluding that "[t]his Court is persuaded that there is a private right of action here"); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) ("The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of these [§ 64.1200(d)] regulations . . . . 47 U.S.C. § 227(c)(5)."); *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).

In concluding that § 64.1200(d) was promulgated under § 227(c), multiple courts have considered the fact that § 64.1200(d) and § 227(c) apply broadly to telemarketing, while § 227(d) only applies to telemarketing performed over fax machines and automated telemarketing devices. *See Fischman v. MediaStratX, LLC*, No. 20-83, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021) ("Section 227(d)'s plain text, on the other hand, concerns standards governing 'telephone facsimile machine[s,]' 'automatic telephone dialing system[s,]' and other automated telemarketing devices'"); *c.f. Charvat*, 656 F.3d at 449 (finding that § 227(c) "and its accompanying regulations in 47 C.F.R. § 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to *all* calls—live or automated—initiated for telemarketing purposes to residential telephone subscribers."). Identical reasoning applies to § 64.1601(e), which is not limited in scope to fax machines or automated telemarketing and thereby fits more readily under § 227(c).

Further, many courts have looked to the purpose of the statute and regulation. As one court concluded, "§ 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights" and therefore "[t]he available record indicates that § 64.1200(d) was promulgated under § 227(c) and contains a private right of action." *Rosenberg v. LoanDepot.com LLC*, 435

13

F.Supp.3d 308, 324-25 (D. Mass. 2020). Many other courts have used similar reasoning. *See, e.g.*, *Menin v. Star Markets Co., Inc.*, No. 23-11918, 2024 WL 4123522, at *2 (D. Mass. Sept. 9, 2024) ("This Court, however, is persuaded by the majority rule that the purpose of the internal do-not-call provisions and policies in § 64.1200(d) comport with § 227(c), which is 'concerned principally with the protection of individual privacy rights.'"); *Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1338-39 (N.D. Ga. 2020) (finding that § 64.1200(d)'s provisions further the purpose of § 227(c)); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F.Supp.3d 1187, 1200-01 (M.D. Tenn. 2017) (reasoning that § 64.1200(d) as a whole "fit[s] cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations"). Similarly, § 64.1601(e)'s caller identification requirements were clearly considered by FCC to be a method to protect the privacy rights of residential telephone consumers, positioning it in the heart of § 227(c).

In contrast, in *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 10-100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011), the district court found that one provision of § 64.1200(d), specifically (d)(4), was promulgated under § 227(d), and thus did not support a private cause of action. But *Burdge*'s analysis bolsters the conclusion that § 64.1601(e) falls within § 227(c). The *Burdge* court relied heavily on the 1992 TCPA Order, which listed the (d)(4) requirements under "Technical and Procedural Requirements." 1992 TCPA Order, ¶ 53. Because § 227(d) itself is entitled "Technical and Procedural Standards" and directs the FCC to prescribe technical and procedural standards of artificial and prerecorded telemarketing, the Court readily concluded that § 64.1200(d)(4) was promulgated under § 227(d).[12] As to § 64.1601(e), the 1992 TCPA Order

---

[12] The Court in *Worsham* also adopted the reasoning of *Burdge* as to § 64.1200(d). *See Worsham*, 2016 WL 4592373, at *7. This creates an internal inconsistency because *Worsham* relied on the 1992 TCPA

14

clearly demonstrates that the caller identification requirements are "network technologies" fitting squarely within § 227(c)'s "methods or procedures" for protecting residential consumer privacy. 1992 TCPA Order, ¶¶ 16-17.

This more extensively developed area of caselaw thus reinforces my conclusion that § 227(c) is the source of authority for § 64.1601(e).

> 7. *In sum, a private cause of action exists for violations of § 64.1601(e).*

In § 227(c), Congress specifically ordered the FCC to evaluate the use of "network technologies" and other methods and procedures to protect residential telephone subscribers' privacy rights, and to prescribe regulations implementing the methods and procedures it deemed appropriate. The FCC obeyed Congress's § 227(c) directive, assessing the feasibility of caller ID as a network technology in 1992 and 2003. And in 2003, the FCC determined that caller ID was at last an achievable requirement and promulgated § 64.1601(e), requiring telemarketers to use caller ID. Based on this history, a violation of § 64.1601(e) is clearly a violation of regulations prescribed under § 227(c). And because Congress expressly and unequivocally created a private cause of action "based on a violation of the regulations prescribed under [§ 227(c)]," there is a private cause of action to enforce violations of § 64.1601(e). 47 U.S.C. § 227(c)(5).

Defendant's Motion to Dismiss on this ground is denied.

---

Order headings in classifying § 64.1200(d) but ignored the 1992 TCPA Order headings when classifying § 64.1601(e).

### B. Section 64.1601(e) Applies to Text Messages.

JR Capital also argues that Plaintiff's § 64.1601(e) claim fails because the regulation only covers calls made over the public switched telephone network (PSTN), and text messages are not transmitted over the PSTN.

JR Capital grounds their analysis in § 64.1601(a), which only applies to "[t]elecommunications carriers and providers" who transmit calls "on the public switched telephone network (PSTN)." 47 C.F.R. § 64.1601(a)(1). Defendant argues that § 64.1601(a)'s limitations also apply to (e), and subsequently § 64.1601(e) does not cover most text messages, as texts are not typically transmitted through the PSTN. *See In re Petitions for Declaratory Ruling on Regulatory Status of Wireless Messaging Service*, 33 FCC Rec. 12075, 12090 (FCC 18-178), ¶ 33 n.109 (Dec. 13, 2018) ("the public switched network itself is not one that generally supports text messaging").[13]

But the text of the regulation itself shows that subsection (a)'s criteria do not apply to (e). The introduction of subsection (a) specifically states in a preamble, "Except as provided in paragraphs (d) and (e) of this section: . . ." 47 C.F.R. § 64.1601(a). By using the term "except," the FCC clearly meant that the PSTN limitations in subsection (a) do not apply to (e).

Subsection (e) is also distinct from the rest of the section based on whom it regulates. Subsections (a)-(d) apply only to telecommunications carriers or providers, defined as "any

---

[13] Elsewhere in the subchapter, Public Switched Network is defined as "[t]he network that includes any common carrier switched network, whether by wire or radio, including local exchange carriers, interexchange carriers, *and mobile service providers*, that uses the North American Numbering Plan, or public IP addresses, in connection with the provision of switched services." 47 C.F.R. § 20.3 (emphasis added). This definition suggests that the regulatory definition of public switched network may also cover text messages, as text messages are transmitted by mobile service providers. However, for purposes of this motion I do not need to decide whether text messages can be transmitted over the PSTN.

provider of telecommunications services." 46 U.S.C. § 153(51) (defining "telecommunications carrier" for Title 47, Chapter 5 of the U.S. Code, which includes the TCPA). In contrast, subsection (e) applies to "[a]ny person or entity that engages in telemarketing."[14] 47 C.F.R. § 64.1601(e). Thus, the regulated entities in (a) and (e) are different. Were subsection (a)'s limitations incorporated automatically into (e), the caller ID requirement would only cover *telecommunication carriers* that engage in telemarketing *over the PSTN*.[15] But the FCC did not intend to severely limit subsection (e) in this way. As set forth in the 2003 TCPA Order, "[t]he new rules will also require *all companies* conducting telemarketing to transmit caller identification (caller ID) information." ¶ 1 (emphasis added); *see also id.* ¶¶ 173-184 (discussing the FCC's decision to require telemarketers to transmit caller ID). Subsection (e) is therefore a distinct subsection, not subject to either the PSTN or telecommunication carrier requisites of subsection (a).

Additionally, in its 2003 TCPA Order accompanying § 64.1601(e), the FCC commented that it decided to "require all sellers and telemarketers to transmit caller ID information, *regardless of their calling systems*."[16] 2003 TCPA Order at ¶ 179 (emphasis added). This shows that the

---

[14] Subsection (e) cites to 47 C.F.R. § 64.1200(f)(10) for the definition of telemarketer, which previously was where telemarketer was defined. However, in 2012 and 2021, § 64.1200(f) was amended to add additional definitions, which adjusted the numbering. *See* 77 Fed. Reg. 34249; 86 Fed. Reg. 2563-64. Telemarketing is now defined at § 64.1200(f)(13). The definition itself has not changed, only the numbering.

[15] Further, it is "a basic tenet of statutory construction, equally applicable to regulatory construction, that a statute 'should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Silverman v. Eastrich Multiple Investor Fund*, 51 F.3d 28, 31 (3d Cir. 1995) (citation omitted). Interpreting § 64.1601(a) to curtail (e)'s applicability would violate this tenet.

[16] Defendant argues that "calling systems" are limited to internal calling systems such as PBX and Centrex, mistakenly citing 18 FCC Rec. 1419-1421 instead of 18 FCC Rec. 14119-14121 (corresponding with ¶¶ 175-79 of the 2003 TCPA Order). Def. Reply at 6, ECF 19. Putting aside the error in citation, the argument

FCC did not intend to limit (e)'s caller ID requirement to a specific calling system or technology but wanted it to apply broadly to telephonic telemarketing regardless of the technology used.

Finally, the meaning of technical terms used within subsection (e) also show that (e) applies to text messages. Under § 64.1601(e), "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information." Caller identification information is defined as "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service *or a text message* sent using a text messaging service." 47 C.F.R. § 64.1600(c) (emphasis added).[17] Therefore, § 64.1601(e) specifically covers text messages.

Based on these collective factors, it is evident that the PSTN limitations in subsection (a) do not apply to (e), and telemarketing text messages must comply with § 64.1601(e)'s caller ID requirements. Dismissal is not warranted on this ground.

---

is unpersuasive. While the 2003 TCPA Order does discuss potential technological hurdles with requiring CPN transmittal for internal calling systems, it also discusses a variety of non-internal calling systems such as the newer Signaling System 7 (SS7), capable of transmitting CPN, and compares SS7 to older calling systems that cannot transmit CPN. *See* 2003 TCPA Order at ¶¶ 173-184. Thus, while "calling systems" may include internal calling systems, it describes a broader array of technology including SS7 and its predecessors.

[17] This definition appears in the same subpart as § 64.1601. The consistent-usage canon of statutory construction presumes that identical phrases, particularly specialized terms of art, used in different parts of the same statute are intended to have the same meaning. *See Pereira v. Sessions*, 585 U.S. 198, 211 (2018) (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012)) ("[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.").

### C. Newell Adequately Pleads that JR Capital's Texts Violated § 64.1601(e).

JR Capital further asserts that Mr. Newell's claims must be dismissed because the text messages include "a website link with JR Capital's name on it," and therefore comply with § 64.1601(e). *See* Mot. to Dismiss Mem. at 2, 7-8.

The TCPA requires anyone who engages in telemarketing to transmit caller ID information, subject to limited exceptions. 47 C.F.R. § 64.1601(e). This information must include either the CPN or ANI[18] and the name of the telemarketer, or the name and customer service number of the seller that the call is being made on behalf of. *Id*. § 64.1601(e)(1).

Mr. Newell included screenshots of the five text messages at issue from JR Capital in his Amended Complaint. Am. Compl. ¶ 26. Four texts have a customer service call-back number, complying with that requirement of § 64.1601(e). However, none of the texts include the name of the seller or telemarketer – in this case, JR Capital – as required. Each text includes a website link to "jrwcap.com/equipment." But this is inadequate under § 64.1601(e). First, the website domain "jrwcap.com" is different than the company's name "JR Capital." This url is not "the name of the seller," as required. 47 C.F.R § 64.1601(e)(1). And though clicking the link immediately leads you to JR Capital's website, this puts the onus – and risk of being the target of malware and phishing scams – on the recipient of the text. This stands in contrast with the clear purpose of the TCPA to protect consumers from nuisance calls and protect consumer privacy. *See* S. Rep. 102-178, at 5 (1991); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy).

---

[18] CPN stands for calling party number, and ANI stands for automatic number identification. 47 C.F.R. §§ 64.1600(b), (e). In essence, both include information about a calling party that may accompany calls, depending on the calling system technology used.

The administrative record further demonstrates that the FCC considered website urls as a form of compliance with § 64.1601(e)'s identification requirements, but did not implement that option. In response to the FCC's 2002 NPRM soliciting comments on proposed caller ID regulations, one commenter "argued that a company's website information should be [] permitted as a substitute for the name and phone number." 2003 TCPA Order at ¶ 177. Despite this specific request, the version of § 64.1601(e) promulgated did not include website urls as a compliance option.

The TCPA is a remedial statute, and thus "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Interpreting TCPA regulations to allow an ambiguous website url to satisfy § 64.1601(e)'s identification requirement would contravene this directive, Congress's clear intent to protect consumer privacy, and the FCC's specific choice to exclude website urls. Mr. Newell therefore adequately pleads that these five text messages violate § 64.1601(e)'s caller ID requirements.

### IV.  Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be denied. An appropriate order follows.

   /s/ Gerald Austin McHugh
United States District Judge