**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-01419-GAM |
| Plaintiff, | Hon. Gerald A. McHugh |
| v. | |
| JR CAPITAL, LLC, | |
| Defendant. | |

## ORDER

AND NOW, this _____ day of _____, 2026, upon consideration of

the Motion for Summary Judgment of Defendant, JR Capital, LLC ("JR Capital"), any response

and reply thereto, and any argument ordered by the Court, it is hereby ORDERED that the

Motion is GRANTED, summary judgment is entered in favor of JR Capital, and this case is

DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
Hon. Gerald A. McHugh, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-01419-GAM |
| Plaintiff, | Hon. Gerald A. McHugh |
| v. | |
| JR CAPITAL, LLC, | |
| Defendant. | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Guidelines for Counsel, Defendant, JR Capital, LLC ("JR Capital"), respectfully moves for summary judgment in its favor and against Plaintiff Jourey Newell ("Newell") on all three counts of Newell's First Amended Class Action Complaint (ECF No. 10).

Newell alleges that JR Capital violated the Telephone Consumer Protection Act's restrictions on phone calls to residential phone numbers. To support that claim, Newell alleges that he received text messages from JR Capital on his residential phone number. But that phone number is publicly listed as the phone number for Newell's business. And JR Capital sent text messages to that phone number offering financing for business equipment. Indeed, JR Capital provides financing for businesses and businesses only. JR Capital does not offer services for individual (*i.e.,* residential) consumers.

For its part, this Court ordered bifurcated discovery to test Newell's claim that the subject phone number is residential. As discussed more fully in JR Capital's accompanying Memorandum of Law, discovery has shown that Newell cannot prove the subject phone number is residential. And, even if Newell could create a question of fact on that point, he should be equitably estopped from claiming the phone number is residential to pursue litigation.

**WHEREFORE**, Defendant, JR Capital, LLC, respectfully requests that the Court grant this Motion, enter summary judgment in JR Capital's favor and against Newell on all three counts of the First Amended Class Action Complaint, and grant such other and further relief as the Court deems just and proper.

Dated: June 24, 2026                                 Respectfully submitted,

                                                 /s/ Scott J. Helfand
                                                 Scott J. Helfand (Pro Hac Vice)
                                                 **HUSCH BLACKWELL LLP**
                                                 120 South Riverside Plaza
                                                 Suite 2200
                                                 Chicago, IL 60606
                                                 Scott.Helfand@huschblackwell.com
                                                 Tel: 312-341-9876
                                                 Fax: 312-655-1501

                                                 Laura K. Conroy
                                                 PA State Bar No. 206797
                                                 **HUSCH BLACKWELL LLP**
                                                 1801 Pennsylvania Avenue, NW
                                                 Suite 1000
                                                 Washington, D.C. 20006-3606
                                                 Laura.Conroy@huschblackwell.com
                                                 Tel: 202-378-5388
                                                 Fax: 202-378-2319

                                                 *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by the filing of said document through the Court's electronic filing system on June 24, 2026.

                                                 By: */s/ Scott J. Helfand*
                                                      Scott J. Helfand

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-01419-GAM |
| Plaintiff, | Hon. Gerald A. McHugh |
| v. | |
| JR CAPITAL, LLC, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendant, JR Capital, LLC ("JR Capital"), finances equipment purchases for businesses. To help identify businesses that might benefit from that financing, JR Capital subscribed to a commercial database containing contact information for businesses. One of these businesses was the business operated by Plaintiff, Jourey Newell ("Newell"). The contact information identified Newell's business, its industry code (landscaping services), and a phone number ending in 4132. JR Capital sent text messages to the 4132 number offering financing for trucks and other business equipment.

In response, Newell filed this putative class action under the Telephone Consumer Protection Act ("TCPA"). Yet, to recover under the TCPA provisions Newell invokes, Newell must prove that the 4132 number is a "residential" number, not a business number. He alleges just that in his amended complaint.

Discovery has shown otherwise. Beginning in 2016, Newell used the 4132 number as the contact number for his business. To be sure, Newell claims that, in 2018, he started using a new number for his business. But even after Newell filed this lawsuit, in 2025, claiming that the 4132

number is a residential phone number, Newell continued to publicly list the 4132 number as the contact number for his business in at least two separate government registries for businesses. Shortly after he filed this lawsuit, Newell took down one of those listings. The other one remained up more than a year into this lawsuit. Meanwhile, Newell admits that, to this day, he continues to use the 4132 number for his business. Although he claims that his "true" business number is the one he acquired in 2018, both numbers are registered in the same name with the same address and billing information.

On this record, JR Capital is entitled to summary judgment for at least two reasons.

*First*, as a factual matter, Newell cannot prove that the 4132 number is residential. To the contrary, the evidence shows that Newell has used that phone number for business and continues to do so to this day.

*Second*, even if Newell could manufacture a factual dispute about how he privately used the 4132 phone number, he is equitably estopped from claiming that the number is residential. As this Court observed in another recent TCPA case, a plaintiff should not be permitted to hold a number out as a business line, reap the commercial benefits of so doing, and then claim the same number is "residential" for purposes of a TCPA lawsuit. That is precisely what Newell has done. So he is equitably estopped from claiming the 4132 number is residential.

JR Capital's motion for summary judgment should be granted.

## **Background**

Nearly 35 years ago, Congress passed the TCPA to, among other things, restrict telemarketing calls to residential consumers. But as regulators and commentators alike have observed, the TCPA has veered off course. The TCPA has had limited effect in curbing rogue telemarketers. It has, though, created a litigation cottage industry.

2

Newell is a part of that cottage industry. During the past eight years, he has brought over a dozen TCPA lawsuits, claiming his 4132 number is residential.[1] In this case, this Court ordered discovery to test that claim. ECF No. 28 (ordering the parties to "conduct fact discovery as to whether the telephone number alleged to have been contacted was a residential or business number," and permitting the subsequent filing of "dispositive or partially dispositive motions following such fact discovery"); *see also* ECF Nos. 30 & 32 (extending the deadline for that discovery and dispositive or partially dispositive motions). Before digging further into what that discovery has shown, we pause to further discuss the legal background.

> **A.    Congress passes the TCPA to, among other things, restrict telemarketing calls to residential consumers.**

"In enacting the TCPA, Congress found that '[u]nrestricted telemarketing' can be 'an intrusive invasion of privacy.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). For example, Congress found that "automated or prerecorded telephone calls made to

---

[1] In his most-recent cases, Newell's complaint masks the number as "(484) XXX-XXXX." *See, e.g.*, *Newell v. LendVia LLC*, No. 2:25-cv-01018 (E.D. Pa. filed Feb. 26, 2025) (alleging that the number is "a residential telephone line" used "for personal, residential, and household reasons" and registered on the Do-Not-Call Registry); *Newell v. Lift Lending, LLC*, No. 2:25-cv-01210 (E.D. Pa. filed Mar. 6, 2025) (same); *Newell v. RiseUp Fin. Grp., LLC*, No. 2:25-cv-01402 (E.D. Pa. filed Mar. 17, 2025) (same); *Newell v. RxLink Inc.*, No. 2:25-cv-04270 (E.D. Pa. filed July 29, 2025) (same); *Newell v. Pella Windows & Doors, Inc.*, No. 2:25-cv-06074 (E.D. Pa. filed Oct. 24, 2025) (same); *Newell v. BKV-BPP Retail LLC*, No. 1:25-cv-00395 (W.D. Tex. filed Mar. 15, 2025) (same); *Newell v. Hoffenmer Inc.*, No. 1:25-cv-03961 (N.D. Ill. filed Apr. 11, 2025) (same); *Newell v. Yoke Global Inc.*, No. 1:25-cv-03049 (N.D. Ga. filed June 2, 2025) (same); *Newell v. Digitire Pros., LLC*, No. 3:25-cv-01794 (D. Conn. filed Oct. 23, 2025) (same); *Newell v. Foley Carrier Servs., LLC*, No. 3:25-cv-02043 (D. Conn. filed Dec. 9, 2025) (same); *Newell v. Inmate Photos, LLC*, No. 2:26-cv-00114 (D. Nev. filed Jan. 20, 2026) (same). In his earlier cases, Newell's complaints revealed more of the number. *See Newell v. Stone & Saunders, LLC*, No. 2:23-cv-03048 (E.D. Pa. filed Aug. 8, 2023) (pleading the number as "(484)-213-XXXX" — the 484-213 exchange of the 4132 number); *Newell v. Adroit Health Grp. LLC*, No. 2:21-cv-05079 (E.D. Pa. filed Nov. 18, 2021) (same); *Newell v. Optima Advocates, Inc.*, No. 2:18-cv-04183 (E.D. Pa. filed Sept. 27, 2018).

private residences were rightly regarded by recipients as an invasion of privacy." *Id*. (internal quotation marks and citations omitted). Congress passed the TCPA to protect against such intrusions. *See id*.

As part of the TCPA, Congress instructed the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Congress created a private right of action to enforce the regulations promulgated under that subsection. 47 U.S.C. § 227(c)(5).

Unfortunately, as the former Chairman of FCC has observed, "the TCPA has strayed far from its original purpose." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (Pai, dissenting) (overruled in part by *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)). The risk of exposure in TCPA class actions— often hundreds of millions of dollars—has forced enormous settlements regardless of the validity of the underlying claims. *See* U.S. Chamber of Commerce Institute for Legal Reform, *Expanding Litigation Pathways TCPA Lawsuit Abuse Continues in the Wake of Duguid* (April 2024) (*available at* https://instituteforlegalreform.com/wp-content/uploads/2024/04/ILR-Expanding-Litigation-Pathways-April-2024.pdf) p. 2 (last visited June 16, 2026). "This stream of lawsuits hurts legitimate U.S. businesses and nonprofits trying to communicate with customers, clients, donors, patients, and others." *Id.,* p. 3. At the same time, research indicates that TCPA lawsuits "have not led to a decrease in robocall volume." *Id*. In short, to quote former-Chairman Pai again, the TCPA has "become the poster child for lawsuit abuse." *Id*.

Against this backdrop, Newell brought the current putative class action.

**B.      What discovery has shown in this case.**

**1.      *JR Capital finances equipment for businesses and businesses only.***

JR Capital is "a business that provides financing for businesses." Ex. A (5/27/2026 Rule 30(b)(6) Dep. of JR Capital, LLC, through Paris Robbins) ("Robbins Dep.") 11:2-4. Specifically, JR Capital finances equipment (such as trucks and construction equipment) that businesses purchase. *Id.* 11:5-17. Its market is "[l]iterally any business that's buying equipment throughout America," *id.* 17:22-18:2, and, as its corporate representative put it, "JR Capital finances businesses throughout America for businesses only." *Id.* 56:13-17.

One way JR Capital reaches those businesses is by text message. *Id.* 18:3-6; 30:24-31:9; 38:20-39:7. To identify businesses to contact by text message, JR Capital purchased, in 2022, a subscription providing access to D&B Hoovers, a Dun & Bradstreet database of business contact information. *Id.* 14:5-12; 20:2-5; 46:11-13; 47:13-16; 52:16-22; Ex. B (D&B order form). The database "was advertised and sold to [JR Capital]…as a database of businesses." Robbins Dep. 47:5-9; 23:10-11.

**2.      *Newell operates a business.***

One of the records in that database belonged to Newell's business. Beginning in 2016, Newell operated a landscaping business. In October 2023, Newell expanded his business and incorporated it as Newell Contracting LLC. Ex. C (5/13/2026 Dep. of Jourey Newell) ("Newell Dep.") 15:16-16:3, 19:12-16; 23:10-19; 34:24-35:10. Newell Contracting provides "primarily the same services" as the landscaping business did, "plus some additional" services like fencing work. *Id.* 36:12-23.

Operating Newell Contracting is Newell's "primary work" and he considers it his only occupation.[2] *Id.* 20:11-23; 37:7-13. Although Newell Contracting uses a "virtual mailbox" at on DeKalb Pike in Norristown, Newell Contracting is a home-based business, and its only physical address is Newell's home on Brandywine Lane in King of Prussia, Pennsylvania. *Id.* 13:8-21; 102:10-16; *see also* Ex. D (Pl.'s Supp. Resp. to Def.'s First Set of Interrogs.) ("Pl.'s Supp. Rog Resp.") No. 10 (Newell's businesses "are/were home-based businesses"). Newell uses a pickup truck in the Newell Contracting business and has owned two trucks. Newell Dep. 40:10-14; 103:16-104:6.

### 3. *Newell uses the 4132 number for his business.*

Newell has three wireless phone numbers, and he is the named account holder for all three. Specifically, Newell has the 4132 number, which he has had since before November 2022; a number ending in 1170, acquired in October 2018; and a number ending in 8609, acquired in approximately March 2025 (the month after JR Capital was served with the complaint in this case). Pl.'s Supp. Rog Resp. No. 8; Newell Dep. 19:8-11.

Before October 2018, the 4132 number served as the sole contact number for Newell's landscaping business: Newell "received phone calls related to Newell Landscaping on the 4132 phone number…before the 1170 phone number became the business phone number." Newell Dep. 19:3-11. After Newell acquired the 1170 number, the 4132 number's business role continued. To take one example, longtime customers have continued to contact the 4132 number. *Id.* 54:10-24. Additionally, Newell's family members give out the 4132 number to people who need contracting work done. *Id.* 55:1-23. For his part, Newell continues to make and receive

---

[2] Although Newell has another business related to collecting on judgments and he also owns and operates investment properties, Newell does not consider these business ventures an "occupation." Newell Dep., 21:2-23:20; 27:9-28:15.

business-related calls and texts on the 4132 number. Although Newell characterizes this usage as "incidental," it may occur several times a week. *Id.* 18:4-21; 19:17-20:10; 52:14-22; 55:1-8; 56:1-8. Meanwhile, the 1170 number—the line Newell describes as the current "business phone number"—looks the same on paper as the 4132 number: it, too, is a wireless number held in Newell's name, and it is part of a phone plan billed to the Brandywine Lane address in King of Prussia. Pl.'s Supp. Rog Resp. No. 8.

### 4. *Newell publicly lists the 4132 number as Newell Contracting's phone number.*

Newell has not just provided the 4132 number directly to customers. For example, Newell registered Newell Contracting as a home improvement contractor with the Bureau of Consumer Protection of the Pennsylvania Office of Attorney General. Newell Dep. 44:4-15; 46:7-23; Ex. E (Home Improvement Contractor Registration Application). The Attorney General's office maintains a public, online search engine that consumers can use to look up registered contractors. Newell Dep. 47:23-48:18; 50:6-15. A search for Newell Contracting on that registry returns "Newell Contracting LLC," its Pennsylvania registration number, and the 4132 number as the company's phone number. *Id.* 50:18-51:9; Ex. F (5/11/2026 Home Improvement Contractor search result). As Newell himself admitted, "if you use the search engine, that's the number that would appear for you to…[contact] the business;" anyone who searches Newell Contracting on the Attorney General's website "is going to get the 4132 phone number." Newell Dep. 51:10-19; *see also id.* 56:20-57:3; 58:18-24. That remained true as of May 11, 2026—more than fourteen months after this lawsuit was filed. Ex. F; Newell Dep. 104:16-105:9.

The Attorney General's registry was not the only public listing. Newell also registered Newell Contracting as a motor carrier with the FMCSA, an agency of the United States

Department of Transportation, under USDOT Number 4193978. Newell Dep. 96:20-97:17; 101:19-21; Ex. G (2/26/2025 FMCSA company profile). FMCSA carrier registration information is publicly available through the FMCSA's SAFER website, and it is republished by third-party websites. *Id.* 105:16-107:3 (discussing brokersnapshots.com listing for Newell Contracting, showing the company's USDOT number, addresses, and "Active" operating status).

As of February 26, 2025, the publicly available FMCSA profile for Newell Contracting listed the 4132 number as the company's phone number, along with the company's virtual-mailbox address and its physical address on Brandywine Lane. *Id.* 101:4-24; 111:20-113:1; Ex. G. Although Newell claims (in litigation) that he did not realize that he was listing the 4132 number for Newell Contracting, Newell concedes that that is the number publicly listed for Newell Contracting.

**5.**      ***The 4132 number reaches JR Capital through Dun & Bradstreet's business database, and JR Capital texts the 4132 number about business-equipment financing.***

JR Capital obtained the 4132 number from the Dun & Bradstreet business database. Robbins Dep. 14:5-8; 18:16-20; 19:7-12. The information Dun & Bradstreet supplied identified the business's Standard Industrial Classification ("SIC") code as 0782 ("a landscaping business"), listed the business under the name "Jourey Newell," listed a Brandywine Lane address, and identified the business's number as the 4132 number. *Id.* 17:3-13; 28:14-29:12; 42:12-20; Ex. H (JR Capital's supplemental interrogatory responses setting forth the Dun & Bradstreet data fields).

Relying on that business record, JR Capital sent text messages to the 4132 number. The messages—five in total, sent between November 4, 2022 and February 2025—offered financing

8

for trucks and other business equipment. Pl.'s First Am. Class Action Compl. ("FAC"), ECF No. 10, ¶¶ 23-24, 26; Newell Dep. 100:9-19; 107:15-108:22; Ex. I (screenshots of text messages).

Each text message informed recipients that, if they did not want to receive messages, they could simply reply "stop." But Newell—who has spent years filing TCPA lawsuits claiming that the 4132 number is "residential"—did not reply "stop" to any of the messages. Instead, on August 7, 2023, Newell sent an email to a JR Capital email address asking JR Capital to stop texting "my mobile telephone." Ex. J (8/7/2023 email); Robbins Dep. 32:6-12; 35:21-36:24; FAC ¶ 27. JR Capital maintains a procedure to honor opt-out requests made outside of the text-reply channel. Unfortunately, due to human error, JR Capital missed Newell's email. Robbins Dep. 32:13-33:8; 40:2-12. Again, though, despite the instructions within the text message (*i.e.*, reply "stop" to stop receiving messages), Newell specifically chose not to reply to any of the text messages.

### 6. *Newell sues, then changes the phone number on Newell Contracting's federal-government listing.*

Instead of replying to the text messages to opt out, Newell filed this lawsuit. In his amended complaint, Newell alleges that the 4132 number "is a residential, non-commercial telephone number" that he "uses…for personal, residential, and household reasons." FAC ¶¶ 18-19, 37, 44-59.

After Newell filed this lawsuit, he changed the phone number for Newell Contracting's federal listing. Specifically, at some point between February 26, 2025—one week after JR Capital was served—and July 28, 2025, Newell changed the phone number listed for Newell Contracting on its public FMCSA registration from the 4132 number to the 1170 number. Newell Dep. 110:1-6; 113:11-16; 114:11-115:2; *compare* Ex. G (2/26/2025 profile listing the 4132 number), *with* Ex. K (7/28/2025 SAFER company snapshot listing the 1170 number and an

9

MCS-150 form date of 7/23/2025). According to Newell, he made the change "when [he] became aware that the wrong phone number was being displayed." Newell Dep. 104:10-15; 110:3-6.

Newell did not, however, change the Attorney General listing. There, as noted, a search for Newell Contracting in the database of registered contractors continues to bring back the 4132 number. Nevertheless, in his sworn interrogatory responses, Newell avers that the 4132 number is "his personal cellular number, held in his personal name, subscribed to a consumer cellular service plan, and used for personal purposes, and that he does not hold it out to the world as a business number. Pl.'s Supp. Rog Resp. No. 10.

## Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Third Circuit has stressed, a party cannot manufacture a genuine dispute through conclusory, self-serving assertions that are contradicted by the record. *See, e.g., Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).

## Argument

Here, summary judgment is proper for two reasons. First, because Newell cannot establish that the 4132 number is residential, Newell cannot establish the elements of his claims. *See* 47 U.S.C. § 227(c). Second, consistent with this Court's teachings in another recent TCPA case, Newell should be equitably estopped from pursuing his claims. *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *5 (E.D. Pa. Mar. 14, 2025) (McHugh, J.) (stating that, if a plaintiff takes down a business listing for a number "and then immediately sue[s]," the Court "would be strongly inclined to find estoppel").

A.    **Newell cannot establish the elements of his claims.**

1.    ***Each of Newell's claims requires him to prove that the 4132 number is a residential number.***

In his amended complaint, Newell alleges three claims. In Count I, Newell alleges a violation on the TCPA's prohibition on contacting certain numbers registered on the national Do Not Call Registry ("DNC Claim"). Skipping to Count III, Newell asserts a violation of the TCPA's prohibition on contacting numbers following a reasonable opt-out request ("Internal DNC Claim"). And, in Count II, Newell alleges a violation of an alleged Caller ID requirement for certain phone calls ("Caller ID Claim").[3]

There is no dispute that the DNC Claim requires a residential number. Nor is there any dispute that the Internal DNC Claim requires a residential number. But JR Capital anticipates that—having avoided dismissal by relying on § 227(c)'s private right of action for calls to residential subscribers—Newell will now argue that the Caller ID Claim is not limited to residential subscribers.

This argument should be rejected for two reasons.

First, Newell should be judicially estopped from arguing that his Caller ID Claim is not limited to residential subscribers. As the Supreme Court has explained, judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then

---

[3] For its part, JR Capital moved to dismiss Newell's Caller ID claim. In so doing, JR Capital argued, among other things, that—unlike Newell's DNC Claim and Internal DNC Claim—Newell's Caller ID Claim does not arise under § 227(c) and so lacks a private right of action. Newell opposed JR Capital's motion. In so doing, Newell argued that the Caller ID claim is brought pursuant to the private right of action in 47 U.S.C. § 227(c)(5). That is to say, Newell argued that the Caller ID Claim is brought under the FCC's rulemaking "to protect *residential telephone subscribers*' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). The Court agreed and denied JR Capital's motion to dismiss. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 576-77 (E.D. Pa. 2025).

11

relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). The purpose of judicial estoppel "is to protect the integrity of the judicial process." *Id*. (internal quotation marks omitted). Accordingly, for well over a century, the Supreme Court has held that, where " 'a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" *Id*. (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

Courts have considered a number of factors in the judicial-estoppel analysis. *See id*. For example, courts apply judicial estoppel where: "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 50 (3d Cir. 2018).

All three requirements are met here. As to inconsistent positions, in opposing dismissal of the Caller ID Claim, Newell argued that the Caller ID requirement seeks to "protect residential telephone subscribers' privacy rights." ECF No. 18, p. 9. To the extent Newell takes one position to avoid dismissal and another to avoid summary judgment, Newell is "acting in a culpable manner threatening to the court's authority or integrity." *See Danise*, 738 F. App'x at 50. And the application of judicial estoppel under these circumstances would be tailored to address the affront to the court's authority or integrity." *See id*. In short, then, Newell should be judicially estopped from arguing that his Caller ID Claim does not require a residential number.

12

Second, judicial estoppel aside, the Caller ID requirement is found in an FCC regulation, and "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Here, Newell might argue that the FCC's Caller ID regulation does not expressly reference residential numbers. 47 C.F.R. § 64.1601(e) ("Any person or entity that engages in telemarketing…must transmit caller identification information."). True enough. But the statutory provision itself—*i.e.*, § 227(c)—is expressly so limited. And, as noted, the FCC does not have authority to issue a regulation exceeding that statutory limitation. *Bowen*, 488 U.S. at 208.

In short, if Newell cannot prove that the 4132 number is residential, all three of his claims fail.

      **2.**      ***Newell cannot meet his burden of showing that the 4132 number is a residential number.***

      **a.**      **Courts have considered a number of factors in determining whether a wireless phone number is residential.**

Determining whether a wireless number is residential can be a fact-intensive, "case-by-case evaluation." [4] *Shelton*, 2025 WL 817485, at *3 n. 3. In analyzing whether a wireless number is residential, courts have considered "(1) how plaintiffs hold their phone numbers out to the

---

[4] The FCC has found that, in some circumstances, cell phones can be residential. That interpretation is no longer binding on this Court. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.") (*citing Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)). Still, courts continue to find that cell phones can be residential. *See, e.g., Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *2-4 (N.D. Ga. Aug. 7, 2025). Here, JR Capital does not ask this Court to address this issue. JR Capital assumes that a cell-phone number can be residential. But the 4132 number is not.

public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).

Here, every factor that meaningfully distinguishes a business line from a residential one points the same way. JR Capital applies these factors below.

### b.    Applying these factors here, the undisputed facts establish that the 4132 number is a business number.

For ease of discussion, JR Capital puts the above factors into four buckets.

*Holding out.* Newell held the 4132 number out to the public as his business's contact number. As an initial matter, Newell concedes that, when he started his business, he used that phone number for his business and provided that number to his customers. Later, when he expanded from his original landscaping business into Newell Contracting, Newell listed the 4132 number in the Pennsylvania Attorney General's public home-improvement-contractor registry. It appears there still. Newell Dep. 44:4-13; 50:18-51:9; 104:16-105:9; Ex. F. As Newell conceded, anyone who looks up Newell Contracting on the Attorney General's website—say, someone checking to see if a contractor is registered before making a hiring decision—"is going to get the 4132 phone number" as the number to call. Newell Dep. 51:10-19; 58:18-24.

Newell also listed the 4132 number on Newell Contracting's federal motor-carrier registration, where it appeared on the FMCSA's public database (and was republished by commercial websites). After filing this lawsuit, however, Newell changed that listing. Newell Dep. 96:20-97:17; 101:4-24; 105:17-107:3; 110:1-6; Exs. G, K.

What's Newell's response to all this? Newell now asserts—in litigation—that he secretly never *intended* the registries to display his "personal" number. He says—in litigation—that he

14

supplied the 4132 number only in response to prompts for a "cell phone" number. *see* Pl.'s Supp. Rog Resp. No. 10; Newell Dep. 45:1-12; 49:3-12. For present purposes, we can put aside the plausibility of this tale. Plausibility aside, the question under the first *Chennette* factor is how the number is held out *to the public*. And what the public registries actually display is not in dispute: the 4132 number is Newell Contracting's phone number.

*Registration and payment.* Newell will likely emphasize that the 4132 number is a wireless number, held in his personal name, on a cellular plan billed to his home address. Pl.'s Supp. Rog Resp. Nos. 8, 10. But those facts distinguish nothing in this case. The number that Newell himself calls his "business phone number" (*i.e.,* the 1170 number) shares every one of those characteristics: it, too, is a wireless number held in Newell's name, on a phone plan billed to a Brandywine Lane address. Pl.'s Supp. Rog Resp. No. 8. On Newell's own telling, his claimed current business line (that is, the 1170 number) would flunk Newell's own preferred test for what is a residential number and what is a residential one. Regardless, Newell's business is home-based, and that is where the 4132 number is registered.

*Business usage.* The 4132 number is not a line that merely brushed up against Newell's business. It *was* the business's number: before October 2018, the 4132 number served as the sole contact number for Newell's landscaping business. Newell Dep. 19:3-11. And, even accepting Newell's assertions that the business usage waned, Newell concedes that it never stopped. According to Newell himself, after he acquired the 1170 number, current customers continued to reach him on the 4132 number, family members continued to give the 4132 number to prospective customers, and he continued to make and receive calls and texts related to Newell Contracting on the 4132 number. Newell Dep. 18:4-21; 52:14-22; 54:17-24; 55:4-23. However

15

Newell labels that usage, it is business usage, on a number that the public records identify as a business number.

*The reasonable observer.* Finally, consider the catch-all factor: how would "a reasonable observer…view the phone line"? *Chennette*, 50 F.4th at 1225. A reasonable observer who consulted the public record—the Attorney General's contractor registry, the FMCSA's SAFER database, or Dun & Bradstreet's business database—would have seen exactly what JR Capital saw: a landscaping-and-contracting business whose listed contact number was the 4132 number. Newell Dep. 50:18-51:9; 101:2-24; Robbins Dep. 17:3-13; Exs. F, G, H.

Against all this, Newell offers only his own, after-the-fact say-so: an assertion that the number is "used for personal purposes" and not "held out to the world as a business number." Pl.'s Supp. Rog Resp. No. 10. Yet federal courts are not so easily fooled. And they have repeatedly rejected precisely this move, granting summary judgment where a plaintiff's conclusory declaration of "residential" use was contradicted by the record. *See Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656-58 (W.D. Tenn. 2020) (granting summary judgment where plaintiff failed to present sufficient evidence of residential usage); *Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6-7 (D. Kan. Aug. 17, 2016) (same).

The same result follows here. Newell cannot establish that the 4132 number is residential. Therefore, without reading further, this Court can grant JR Capital's motion for summary judgment. As discussed below, however, there is another basis to do so. Newell should be equitably estopped from arguing that the 4132 phone number is residential.

**B.    Newell should be equitably estopped from arguing that the 4132 phone number is residential.**

Even if Newell could create a factual dispute about whether the 4132 number is residential, summary judgment should still be granted. Newell is equitably estopped from

16

pursuing claims premised on the number being residential. *See* Answer & Affirmative Defenses, ECF No. 22, Second Affirmative Defense.

### 1. *This Court has already recognized the need to apply equitable estoppel under similar circumstances.*

This Court has already described the circumstances in which equitable estoppel should bar a TCPA plaintiff from disavowing his own business listings. To quote this Court, "[i]f Plaintiff took down the number from his business website and then immediately sued [the defendant] or another marketer, I would be strongly inclined to find estoppel." *Shelton*, 2025 WL 817485, at *5. Stated another way, a plaintiff should not be permitted to benefit from holding a number out as a business line—inviting the world to treat it as such—and then recharacterize the same number as "residential" for litigation purposes.

Newell's conduct here is even worse. As discussed, Newell did not even take his listings down *before* suing. He sued *while* the 4132 number remained publicly listed—with a state consumer-protection agency and a federal transportation agency—as Newell Contracting's phone number. Indeed, over a year into this litigation, he *kept* the state listing. Exs. F, G; Newell Dep. 104:16-105:9; 101:4-24. Bottom line: Newell held the number out as his business phone, JR Capital reasonably took him at his public word, and Newell's after-the-fact edits to his federal listing only confirm that he understood exactly what those listings conveyed. He should be equitably estopped from claiming the 4132 number is residential.

### 2. *Application of the elements of equitable estoppel confirms this Court's admonition in Shelton.*

"Grounded in common law, equitable estoppel prevents a party from enforcing a right against another party when the right was gained through misleading actions." *Shelton*, 2025 WL 817485, at *5; *see also* Black's Law Dictionary, ESTOPPEL (12th ed. 2024) (defining equitable

17

estoppel as a "defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way."). "The party asserting equitable estoppel must show '(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment.'" *Id.* (quoting *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)); *see also Wilson v. Rawle & Henderson LLP*, CIV.A. 11-4636, 2011 WL 5237345, at *3 (E.D. Pa. Nov. 2, 2011). In other words, "[a]ll that is required for estoppel is that one's conduct intentionally or negligently 'induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" *Liberty Prop. Tr. v. Day-Timers, Inc.*, 2003 PA Super 7, ¶ 20, 815 A.2d 1045, 1052 (Pa. Super. Ct. 2003) (internal citation omitted).

So it is here.

First, Newell's repeated public filings satisfy the representation element. This is especially so given his *continued* public listing of the 4132 phone number for his business.

Second, JR Capital reasonably relied on Newell's public representations. To reiterate, JR Capital is in the business of financing business equipment for businesses and businesses only. Robbins Dep. 11:2-17; 17:22-18:2; 56:13-21. JR Capital does not finance purchases for residential consumers, does not market to residential consumers, and has no interest in contacting residential consumers. *Id.* In short, JR Capital reasonably relied on Newell's public representations that the 4132 number was a business number.

Third, JR Capital changed its position to its detriment in reliance on Newell's representations. JR Capital sent text messages to the 4132 number offering exactly what the public record suggested its owner might need: financing for business equipment. Newell Dep.

18

100:9-19; Ex. I; FAC ¶¶ 23-24, 26. For doing so, JR Capital now faces a putative nationwide class action threatening crippling liability. *See* FAC ¶¶ 48-49, 54-55, 58-59. Had Newell's public listings disclosed what Newell now claims (*i.e.*, that the 4132 number is a residential line), JR Capital would not have contacted it. JR Capital *would have had no reason* to contact it. Again, JR Capital does business with businesses and businesses only. Robbins Dep. 11:2-17; 56:13-21. The detriment element is satisfied.

### Conclusion

Newell's claims all rest on the premise that the 4132 number is a residential number. The evidence flatly refutes that premise: the 4132 number was the phone number for Newell's business, remained in business use, and was held out to the public, through multiple government registries, as a business number. And, even if there were a question of fact about the residential-versus-business character of the number, Newell's public representations should equitably estop him from claiming that the 4132 number is residential. Thus, for the reasons stated, JR Capital respectfully requests that this Court grant summary judgment in JR Capital's favor on all claims and award any additional relief the Court deems appropriate.

Dated: June 24, 2026                                Respectfully submitted,

                                         */s/ Scott J. Helfand*
                                         Scott J. Helfand (Pro Hac Vice)
                                         **HUSCH BLACKWELL LLP**
                                         120 South Riverside Plaza
                                         Suite 2200
                                         Chicago, IL 60606
                                         Scott.Helfand@huschblackwell.com
                                         Tel: 312-341-9876
                                         Fax: 312-655-1501

Laura K. Conroy
PA State Bar No. 206797
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
Laura.Conroy@huschblackwell.com
Tel: 202-378-5388
Fax: 202-378-2319

*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by the filing of said document through the Court's electronic filing system on June 24, 2026.

By: */s/ Scott J. Helfand*
Scott J. Helfand

20

**INDEX OF EXHIBITS**

| | |
|---|---|
| **Exhibit A:** | Excerpts of the transcript of the Rule 30(b)(6) deposition of JR Capital, LLC, through its designee Paris Robbins, taken May 27, 2026 |
| **Exhibit B:** | Dun & Bradstreet Hoovers order form |
| **Exhibit C:** | Excerpts of the transcript of the deposition of Plaintiff Jourey Newell, taken May 13, 2026 |
| **Exhibit D:** | Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories |
| **Exhibit E:** | Pennsylvania Home Improvement Contractor Registration Application |
| **Exhibit F:** | Pennsylvania Attorney General Home Improvement Contractor registry search result dated May 11, 2026 |
| **Exhibit G:** | Federal Motor Carrier Safety Administration company profile for USDOT No. 4193978, dated February 26, 2025 |
| **Exhibit H:** | Defendant JR Capital, LLC's Supplemental Responses to Plaintiff's First Set of Interrogatories, setting forth the Dun & Bradstreet data fields |
| **Exhibit I:** | Screenshots of text messages produced by Plaintiff |
| **Exhibit J:** | Email from Jourey Newell dated August 7, 2023 |
| **Exhibit K:** | Federal Motor Carrier Safety Administration SAFER company snapshot for USDOT No. 4193978, dated July 28, 2025 (reflecting MCS-150 form dated July 23, 2025) |