# EXHIBIT C

1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOUREY NEWELL,            )

individually and on       )

behalf of all others      )

similarly situated,       )

                          )

        Plaintiffs,        )

                          )   No. 2:25-cv-01419-GAM

    vs.                   )

                          )

JR CAPITAL, LLC,          )

                          )

        Defendant.         )


        The confidential discovery deposition of JOUREY NEWELL, for examination taken in the above-entitled cause before ANDREW R. PITTS, CSR, RPR, taken via videoconference on May 13, 2026, at the hour of 10:03 a.m. Eastern Time pursuant to Notice.


STENOGRAPHICALLY REPORTED BY:

ANDREW R. PITTS, CSR, RPR

State of Illinois CSR License No. 084-004575

13

Q.    Okay.  All right.  Let's shift gears from documents for a moment, and let me go over a little background.

How old are you, Mr. Newell?

A.    30.

Q.    And what is your date of birth?

A.    ███████████ .

Q.    And where do you live?

A.    King of Prussia, Pennsylvania.

Q.    Okay.  And what is the specific address?

A.    I'm sorry, it cut off there for a second.

Q.    Oh, sorry.  What is your specific address?

A.    ███ Brandywine Lane, and that's in King of Prussia.

Q.    All right.  And for how long have you lived at ███ Brandywine Lane?

A.    I've lived at ███ Brandywine for three years.

Q.    And before that, where did you live?

A.    The address was ███ █████████████ , also King of Prussia.

15

Q.    Okay.  And now you live on Brandywine road, so it all came full circle.  Okay.

What did you study at Brandywine?

A.    There was a business minor.  I was taking a lot of English courses just because I like English.  It was very -- I didn't know what I wanted to do, so that's sort of why I stopped.

Q.    Got it.  And when were you there, and the years?

A.    That would have been in 2014, and I think I would have stopped in 2015 or 2016.

Q.    And what about any professional licenses or certificates?

A.    Nothing comes to mind for professional licenses or certificates.

Q.    Now, so you established Newell Contracting, right?  That's your company?

A.    Yes.

Q.    I know the technical term under Pennsylvania law is that you're the governor of Newell contracting but I keep thinking of -- now it's going to bother me, the governor of Pennsylvania whose name escapes me, but in any event, okay, in what year did you establish Newell

16

Contracting?

A.    Newell Contracting came into existence in October of 2023.

Q.    And did you have any businesses before then?

A.    Yes, Newell Landscaping.

Q.    Newell Landscaping, okay.

And the phone number, this 41 whatever it is, 4132 phone number, was that connected to both Newell Contracting and Newell Landscaping?

A.    We just --

MR. PERRONG:  Objection to form.

BY MR. HELFAND:

Q.    You can answer.

A.    I was going to say when you say connected to, what do you mean by that?

Q.    Well, let me ask you this.

You used the 4132 number at some point for Newell Contracting, correct?

MR. PERRONG:  Objection.

BY THE WITNESS:

A.    No.

BY MR. HELFAND:

Q.    You never used the 4132 number for

MR. PERRONG: Objection to form.

You can answer.

BY THE WITNESS:

A.    I have always maintained a business phone number, which is ███1170. From time to time, there may be an incidental call that's related to business.

BY MR. HELFAND:

Q.    Okay. That's fair.

To the extent you had made such incidental calls or received incidental call calls -- well, first of all, let me take a step back.

I am going to, for the most part, separate out between calls and text messages. What about text messages? Would your answer be the same, that is to say that your answer would be that you received only incidental or sent only texts related to Newell Contracting on the 4132 phone number?

A.    Yes, that's correct.

Q.    Okay. And what about with regard to Newell Landscaping?

A.    With regards to Newell Landscaping, so

19

you're asking to the 4132 if that was related to Newell Landscaping?

Q.   I'm asking if you received phone calls related to Newell Landscaping on the 4132 phone number.

A.   Yes, before the 1170 phone number became the business phone number.

Q.   Okay.  And when did the 1170 number become the business number?

A.   The 1170 number was acquired in October of 2018.

Q.   And when did you form Newell Landscaping?

A.   Newell Landscaping was in existence as sort of a part-time business operation since roughly 2016.

Q.   Okay.  And after you formed Newell Landscaping -- strike that.

After you acquired the 1170 business number, did you continue to make or receive calls on the 4132 number in connection with Newell Landscaping?

MR. PERRONG:  Objection to form.

You can answer.

20

BY THE WITNESS:

A.    There would have been incidental calls on the 4132 number, but the primary business number was the number for which I would put out to people to ask, like, if they wanted work done, that would be the number that would be put out as the business number.

BY MR. HELFAND:

Q.    This was the 1170 number after 2018?

A.    That's correct.

Q.    Okay.  Do you currently work?

A.    I do work.

Q.    And what is that work?

A.    In capacity in being owner and operator of Newell Contracting, I do a various contracting duties.

Q.    And you -- okay.  I want to talk more about Newell Contracting in a minute, but let me take a step back.

Do you have any other occupations currently besides Newell Contracting?

A.    There is no other occupations.  That's my primary work.

Q.    Okay.  And you don't operate any other

21

businesses?

A.    No.

Q.    You don't operate a business relating to collecting judgments or liquidating judgments?

A.    There was -- so we started to -- I started to do some judgment recovery, but I have been so occupied with investment property -- which I wouldn't really call an occupation, that's why I didn't mention it -- that I really haven't done much work, too much work involved with that.

Q.    But you are the co-founder of that company; is that correct?

A.    That's correct.

Q.    Did you found that company along with another gentleman?  And his name is Justin L -- I apologize for the pronunciation Verraro; is that correct?

A.    That's correct.

Q.    Okay.  So you also mentioned an investment property?  What's the investment property?

A.    It's a -- it's a Poconos rental property.

Q.    So you operate that as another of your

22

business ventures; is that correct?

A.    I would -- I would -- it depends what you mean by operate.  So acquired it in --

MR. PERRONG:  Hold on.  Let me just object to form.

But you can answer.

BY THE WITNESS:

A.    I acquired it in January of this year, so it's relatively new.  So at this point, there's been no outward business.  It's just been getting the property sort of ready, doing some work, organization, getting rid of things, that sort of thing.

BY MR. HELFAND:

Q.    Got it.  And you said this is in the Poconos?

A.    It is.

Q.    And is it your intention, I guess, to rent it out?

A.    That's correct.

Q.    Okay.  And so we've got the judgment business.  And I apologize, what is the name of that business again?

A.    I'm sorry, the sound got really low

23

there for a second.

Q.    Oh, I apologize.  What is the name of the judgment business again?

A.    There's a fictitious name registration Contractor Collections Co., C-O.

Q.    I know there's a website, correct?

A.    Yes.

Q.    Okay.  I just couldn't remember the name, but thank you.

Okay.  So we've got Newell Contracting, which was started in October of 2023, correct?

A.    That's correct.

Q.    And before that, there was Newell Landscaping, which was started in 2016; is that correct?

A.    That's correct.

Q.    Okay.  And then currently, there is Newell Contracting, correct?

A.    That's correct.

Q.    And there's also this judgment business, the collections business; is that also correct?

A.    That's correct, I guess, regardless of the amount of time spent, yes, that is correct.

27

business or whatever.

Other than Newell Contracting, the judgment business, and the investment property, do you have any other business ventures at this time?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No.

BY MR. HELFAND:

Q.    You don't own or operate any other businesses at this time; is that correct?

A.    If you would classify -- just to be 100 percent clear, I mean, I don't know if you'd classify, say, a rental property that's a full-time long term rental that's not run as a business.  It's like you said before, it's a pass-through, so that I would treat more as an investment not an occupation, but I want to be honest with your answer -- you know, my answers too.

Q.    Mr. Newell, I very much appreciate that, and I think you've hit on something which is sort of whether it's investment, whether it's a business, are you the owner, are you the governor, whatever, and it's tough without knowing

28

the answers in advance for me to ask the questions

necessarily to get to the exact answer, so

I appreciate your being forthcoming on that.

So this is, I assume, separate from the

Poconos property, this other investment property,

correct?

A.    Yes.

Q.    Okay.  And where is that investment

property located?

A.    That's in King of Prussia.

Q.    King of Prussia?

And you said that's a long-term rental,

so I assume you have, like, a long-term tenant

there?

A.    That's correct.

Q.    And we have now gone through Newell

Contracting, judgment recovery, investment in the

Poconos, investment property in King of Prussia.

Any other business?  And, again, I'm

not worried about business for tax purposes,

right, whether it's a sole proprietorship, an LLC,

an incorporated entity, what have you.  Are there

any other business with which you're currently

involved?

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                    CONFIDENTIAL/ATTORNEYS' EYES ONLY              5/13/2026

34

Now, Newell Contracting came into being in October 2023, correct?

A.    That's correct.

Q.    And before that, you had the same business, essentially, you operated essentially the same business as Newell Landscaping; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Actually, the characterization I would say is not correct.

BY MR. HELFAND:

Q.    Okay.  Then please tell me what the differences are.

A.    Outside of the change in the formation of the business from sole proprietorship to an LLC, it was that the nature of the business wasn't simply landscaping, so the contracting does a little bit more than just the landscaping.

Q.    Okay.  Let's start with the landscaping business, and then we can work forward; is that okay?

A.    That's okay.

Q.    Okay.  Tell me, what sort of services

35

did Newell Landscaping provide?

A.    Pretty much anything landscaping-related, property maintenance from mulching to trimming to a number -- I mean, a number of different things.  Anything someone needed outdoors, we would do.

Q.    So you would describe it as a sort of a standard landscaping business, for lack of a better way to put it?

A.    That's how I would describe it, yeah.

Q.    Okay.  Great.  Now, did you service residential properties or commercial properties?

A.    Newell Landscaping was primarily residential.

Q.    And then you service some commercial?

A.    Yes, I would say later on, maybe some commercial.

Q.    If you had to do a ballparks, what would you say the split is percentage-wise between?

A.    I would say like 90/10.

Q.    All right.  And then so then in 2023, you formed Newell Contracting, right?

A.    That's correct.

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                    CONFIDENTIAL/ATTORNEYS' EYES ONLY                    5/13/2026

36

Q.    And obviously I know you mentioned Newell Contracting is an LLC.  It's an LLC, right? Is that correct?

A.    That's correct.

Q.    Whereas Newell Landscaping was a sole proprietorship?

A.    That's correct.

Q.    And Newell Contracting, you said, does work in addition to or different from Newell Contracting; is that correct?

A.    That's correct.

Q.    Just to make it easier for my notes, does Newell Contracting provide the same services as Newell Landscaping did, just additional services, or does Newell Landscaping no longer provide some of those services?

A.    No, I would say it's primarily the same services plus some additional.

Q.    Okay.  Great.  And what are those additional services?

A.    More of like a handyman service plus fencing and some other things that people might not associate with landscaping.

Q.    And when you say handyman, can you give

37

me an example of that?

A.    Sure, I can fix gutters or downspouts or repair the trim around someone's window. I mean, I know how to do a lot with houses, so that's why it's sort of expanded, just because I have new skills.

Q.    Great.  Do you have any employees at Newell Contracting?

A.    No, it's always just been me.

Q.    Just you.

And was the same true for Newell Landscaping?

A.    Yes.

Q.    Tell me about some of the equipment that you use in your business -- I'm sorry, in your -- as Newell Contracting, like imagine I don't know how to fix a spout or to do landscaping.  And I don't.  Tell me about some of the equipment you use in your business.

MR. PERRONG:  Objection to form. Scott, just I have been pretty lenient with you here, but I think that this sort of starting to go outside the realm of the issue of whether or not Mr. Newell's number is used

40

Do you use what I'll call trucking equipment in your Newell Contracting business?

MR. PERRONG:  Objection to form.

You can answer.

BY THE WITNESS:

A.    Can you describe -- like, trucking equipment, what do you mean?  Does that go from anything like a pickup truck or --

BY MR. HELFAND:

Q.    Let's start with a pickup truck.

A.    Okay.

Q.    Do you use a pickup truck in your Newell Contracting business?

A.    I do use a pickup truck.

Q.    Okay.  And what about any kind of like, I don't know, forklift Is?

A.    No.

Q.    No forklifts.

What about any kind of, like, earth movers?

A.    Do I use them, or do I own them?

Q.    Use.

A.    Use?  On occasion.

Q.    Okay.  And in addition to pickup

44

you, so --

A.    Right.

Q.    -- that's a fair point.

Let's see.  Now, you registered Newell Contracting as a home improvement contractor with the Pennsylvania Attorney General's Office; is that correct?

A.    That's correct.

Q.    And you submitted the application as part of that registration process, correct?

A.    That's correct.

Q.    And you provided an address for Newell Contracting on that application; is that correct?

A.    I imagine it would have ask requested an address, yes.

Q.    We can look at the document in a minute, just I just I want to make sure that I understand what you're saying first.

And you registered the phone number for Newell Contracting; is that true?

A.    I imagine at least one of them would have been requested on the application.

Q.    And that phone number was the 4132 number; is that correct?

45

A.    To my knowledge, it requested both a cell phone number and a business number.  So I would think that I would put the business number and the cell phone number.

Q.    Okay.  But you listed the 4132 number as a business number; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No, to my recollection, the application asked for a cell phone number and a business number, and I would have put both in their respective fields.

BY MR. HELFAND:

Q.    Okay.  Now, you listed these numbers -- well, let me show you.  Let me try again to show you a document, and we'll see if we can bring this up on the screen.

(Whereupon, Newell Exhibit 2 was presented.)

BY MR. HELFAND:

Q.    All right.  Mr. Newell, please take a look at this document.  Can you see the document, Mr. Newell?

A.    I can see it, yes.

46

Q.    Do you recognize this document?

A.    Yes, it would have been a version, I'm sure, similar to this.  This looks like maybe a paper version that perhaps you mail in.  I think I would have filled it out online, but essentially I would say yes.

Q.    Okay.  So you recognize this document to be the application for the Home Improvement Contractor Registration; is that correct?

A.    Yes, that's what it says.

Q.    And that's what you recognize it to be, correct?

A.    Yes.

Q.    And you recognize it since you filled out such an application; is that also correct?

A.    There would been a home improvement contractor application submitted, yes.

Q.    Right.  But otherwise you wouldn't be registered as a home improvement.  Newell Contracting wouldn't be registered as a home improvement contractor with the Pennsylvania Attorney General's Office; is that correct?

A.    That's correct.

Q.    Okay.  And just going down here --

47

MR. PERRONG:  Could he see all pages of the document before you start asking questions about it?

MR. HELFAND:  Absolutely.  Let me scroll through it.

MR. PERRONG:  Thank you.

MR. HELFAND:  Of course.  Thank you.

BY MR. HELFAND:

Q.    I am going to scroll back up to the top of this document now.

Okay.  So turning back to this document for a second, you provided a business street address for Newell Contracting; is that correct?

A.    Yes, it would have been required.

Q.    Right.  And you also provided a business mailing address; is that correct?

A.    Yes.

Q.    And you provided those addresses so that people would know where you were located; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No, I suppose if they were to look up the home improvement contractor license to say --

48

to be certain that you had one, for instance, if you were going to do a job, then yes, that's correct.

BY MR. HELFAND:

Q.    Okay.  Yeah, and I appreciate your sort of phrasing it that way because, I guess, let me give you another sort of hypothetical.

You know, I want to hire a contracting business, and I am, you know, a homeowner in the King of Prussia area, but I want to make sure that whoever I hire is registered with the Pennsylvania Attorney General, right?

And so then I look the business up, and I can find out both that they're registered and where they're located; is that fair?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Yes.

BY MR. HELFAND:

Q.    And then there is a number -- or there's a line here for Business Telephone Number, and you provided the 4132 number for the business telephone number; is that correct?

A.    To my knowledge, I would have put the

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                CONFIDENTIAL/ATTORNEYS' EYES ONLY              5/13/2026

49

1170 phone number for the business telephone

number.

Q.    You would have.  Okay.

If you only put one number down on this application, would it have been the 4132 number or the business telephone number?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    I don't believe I would have. I believe right there, Point of Contact, I would have put Business Phone Number as 1170, Personal Telephone Number as 4132.

BY MR. HELFAND:

Q.    Okay.  All right.  Let's have this document, marked as Exhibit 2.  And I am going to stop sharing this document now.

And I want to show you another document, which I am going to ask to have marked as Exhibit 3.

(Whereupon, Newell Exhibit 3 was presented.)

BY MR. HELFAND:

Q.    Let me know, Mr. Newell, if you are able to see my screen.

JOUREY NEWELL v. JR CAPITAL, LLC
CONFIDENTIAL/ATTORNEYS' EYES ONLY
5/13/2026

50

A.    Okay.  I can see it.

Q.    Okay.  Do you recognize this document?

A.    Yeah, I believe this would be -- yes.

Q.    What do you recognize the document to be?

A.    Well, I believe it's the search engine that's probably on the Home Improvement Contractor site.

Q.    Okay.  And this would be the search engine that someone would use if they wanted to look up Newell Contracting or, frankly, any other registered company registered under this -- the home improvement licensure regime; is that correct?

A.    Yes, that's correct.

Q.    And just scrolling down -- I apologize. This document is difficult to scroll.

So this says Newell Contracting LLC, correct?

A.    Yes.

Q.    And you've got your PA registration number; is that correct?

A.    Yes.

Q.    And it shows the address of ███ DeKalb

51

Pike; is that correct?

A.    That's correct.

Q.    And that is your business's mailing address, correct?

A.    That's correct.

Q.    And it lists as the phone number the 4132 number; is that also correct?

A.    That is correct.  The phone number listed, yes.

Q.    Okay.  So, in other words, if I were to search for Newell Contracting as a licensed Pennsylvania contracting company, the number I would find to contact that company would be ████████ 4132; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    It appears if you use the search engine, that's the number that would appear for you to -- yes, for the business.

BY MR. HELFAND:

Q.    And do you have any reason to believe that if you had put in a different number for the business, that number wouldn't have been logged by the Pennsylvania Attorney General?

52

MR. PERRONG:  Objection.

BY THE WITNESS:

A.    I would -- I would imagine that the business phone number you put in would be put there.  That's the one that would match --

BY MR. HELFAND:

Q.    That's when -- fair enough.

And, again, just to confirm, this is the business mailing address, the ███ DeKalb Pike, correct?

A.    That is the mailing address.

Q.    Okay.  Let me stop sharing at this point.

Now, you testified earlier that you have made and received calls or texts related to Newell Contracting on the 4132 number, correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Yes.

BY MR. HELFAND:

Q.    I'm sorry, Mr. Newell, go on.

A.    That's correct.

Q.    And I think you mentioned that -- I think you used the term incidental, at least

54

A.    But what I would say is that there were some people perhaps that were customers previously of Newell Landscaping that would then when I switched numbers, sometimes people have a hard time getting used to the fact that you have changed your phone number.  So sometimes they send a message to the incorrect one, and I have to correct it and say text them back from the 1170 or call them back from the 1170.

Q.    Let's see if I can understand what you just said correctly.

So if someone called you on the 4132 number related to Newell Contracting, you would hang up and call them back using the 1170 number?

A.    No, what I meant to say is --

Q.    Okay.

A.    -- a customer who has been a long-time customer, for instance, they had the 4132 number as the Newell Landscaping number prior to the 1170, that sometimes they would get confused because now they've got two contacts on their phone, and they would make a call to my personal phone number.  That's an example of what I meant by incidental.

55

Q.    Okay.  I think I understand what you're saying.

So just getting back to my question, let me ask you again, on a weekly basis, how often do you use the 4132 number for Newell Contracting?

A.    How often?  It could be a few times a week.  I mean, it could be less than that.  It could be no times per week.

Q.    Okay.  So --

A.    It's many variables --

Q.    I'm sorry, Mr. Newell, I spoke over you.  I'll let you finish your answer.

A.    No, I just was going to say it could be varied.  There is no way of knowing when somebody is going to reach out.

So, for instance, if somebody, a family member, has shared what they know as my number because they know me as a family member, for instance, and they think, "Oh, this person needs X done for work," and so they share the 4132 number, and so then that person reaches out.  But I don't put that 4132 number out there as a business number for people to contact.

Q.    Okay.  And, well, getting back to the

56

sort of weekly usage, so you said it varies; is that correct?

A.    It varies, yes.

Q.    Could be no times; is that fair?

A.    That's fair.

Q.    And it could be many times in a week; is that also fair?

A.    That's fair.

Q.    Okay.  And you used the example -- which I appreciate the use of the example.  You used the example of if a family number gave your number out, you know, to someone who need a contractor; is that fair?

A.    That's fair.

Q.    Okay.  And you also used the example of someone who had received the number from you before you had created the 1170 number; is that also fair?

A.    That's fair.

Q.    Okay.  And then, of course, someone who looked you up on the Attorney General's website would also get that number; is that also correct?

MR. PERRONG:  Objection to form.

57

BY THE WITNESS:

    A.    I suppose so, but I can't name a single instance where that has happened.

BY MR. HELFAND:

    Q.    Okay.  Is it your testimony that no one has ever contacted you as a registered contracting company with the Attorney General's Office?

         MR. PERRONG:  Objection to form.

BY THE WITNESS:

    A.    No, my testimony would be that no one has ever called me saying, "Hey, I searched up on home improvement contractor website, and I'm reaching out to you today because your number is listed."

BY MR. HELFAND:

    Q.    Fair enough.  But someone could have gotten the number there without having that specific conversation with you; is that fair?

         MR. PERRONG:  Objection to form.

BY THE WITNESS:

    A.    I suppose, but --

BY MR. HELFAND:

    Q.    I mean, I guess I would ask it in a different way.

58

          If I was interested in a home

improvement contractor and I wanted to make sure

they were registered, I might look them up at the

AG's website, correct?

          MR. PERRONG:  Objection to form.

BY THE WITNESS:

     A.    I suppose that's true, but they would

already have to have the name Newell Contracting

in mind.

BY MR. HELFAND:

     Q.    Sure.  Newell Contracting --

     A.    So it's not as if they're going on

there -- I'm not sure if there's an entire list in

an area provided or some instance where it almost

serves as an advertisement.  I think it's more to

verify something where they've already been in

contact with me.

     Q.    Okay.  But let's say they put in Newell

Contracting on the Attorney General's website.  We

have already established that they are going to

get the 4132 phone number, correct?

          MR. PERRONG:  Objection to form.

BY THE WITNESS:

     A.    That is what's listed, yes.

96

there's a word I'm looking for.

A.    Depreciation.

Q.    Thank you.  Did you say depreciation? Thank you very much.  Yeah, you would have depreciation, or I don't know if you could have appreciation, but you would have depreciation for that equipment, correct?

A.    Yes.

Q.    And I know we talked about -- I mean, I'm going to circle back here.

Did you, on your tax returns, would you deduct the -- or depreciation for phone equipment?

A.    No.  For phone equipment, no.

Q.    You never deducted or -- like, I think it would probably be under the rubric "office equipment" or something like that.  You never deducted that on your tax returns?

A.    I would have probably have office equipment, sure.

Q.    Fair.  And then we talked earlier about your Attorney General registration, and then you also registered Newell Contracting with the Federal Motor Carrier Safety Administration; is that correct?

97

A.    That's correct.

Q.    And the Federal Motor Carrier Safety Administration is connected to the United States Department of Transportation; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    That's correct; as far as my understanding, they're intertwined, essentially.

BY MR. HELFAND:

Q.    Well, I won't quiz you on the specific legal relationship, but thank you for, again -- and in all seriousness, Mr. Newell, I do appreciate your sort of careful responses and making sure we both understand each other.

So you registered Newell Contracting as a carrier, correct?

A.    Yes.

Q.    Tell me what kind of carrier work Newell Contracting does.

A.    It's really just my tools.  I don't carry other people's property.

Q.    So you registered Newell Contracting as a carrier because you were carrying your tools; is that your testimony?

A.    Yes, I can see it.

Q.    Okay.  And I am just going to scroll through it.

Okay.  Mr. Newell, do you recognize in document?

A.    Yes.

Q.    And what do you recognize this document to be?

A.    The amended class action complaint.

Q.    Okay.  And scrolling down to page 6 of the PDF, these are the text messages that are the subject of the complaint, correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Yes.

BY MR. HELFAND:

Q.    And these text messages were sent to the 4132 number that we have been discussing?

A.    That's correct.

Q.    Okay.  I'll stop sharing this.  Now let me circle back and show you another document.

Can you see this document, Mr. Newell?

A.    Yes.

Q.    And do you recognize this document?

101

A.    Yes.

Q.    And what do you recognize this document to be?

A.    That appears to be the company profile from the US DOT, or FMCSA.

Q.    And this document lists a mailing address for Newell Contracting; is that correct?

A.    Yes.

Q.    And that's the DeKalb Pike address; is that correct?

A.    That's correct.

Q.    And it also lists the physical address, which is the ▮ Brandywine Lane address; is that correct?

A.    That's correct.

Q.    Okay.  And it lists the phone number as ▮4132; is that correct?

A.    That's what's listed here, yeah.

Q.    Okay.  And, again, you registered Newell Contracting with the FMCSA, correct?

A.    Yes.

Q.    And in doing so, you used these addresses; is that correct?

A.    I believe so, yes.

Q.    Okay.

A.    I mean, I believe so just because the physical address and the mailing address are two different things, but I guess that's what would have -- it would have been required by them, otherwise I wouldn't have put the Brandywine.

Q.    Okay.  Fair enough.  But you put these addresses in, fair enough?

A.    Yes.

Q.    Does Newell Contracting have a physical address other than the ███ Brandywine?

A.    No, it's a home address.

Q.    But it has a separate -- I guess is this some sort of P.O. Box, the ███ DeKalb Pike?

A.    It's a -- yeah, it's a virtual mailbox.

Q.    Virtual mailbox.  Okay.  And I can stop sharing this with you.  So let me show you another document.  My apologies, Mr. Newell.  The technology in this deposition has been less than ideal, mostly because my lack of technological profession.

A.    It's okay.  I don't have another one to relate it to, so --

Q.    There you go.

103

(Whereupon, Newell Exhibit 6

was presented.)

BY MR. HELFAND:

Q.    I'm going to scroll through this.  Do you recognize this document that I'm scrolling through, Mr. Newell?

A.    I do.

Q.    And what do you recognize this document to be?

A.    It looks to be the company snapshot from the FMCSA.

Q.    And what is the reference to power units mean to you?

A.    Power units, to me, would mean the number of vehicles.

Q.    So you testified earlier you used a pickup truck in the Newell Contracting business; is --

A.    Yes, at present, there's one truck.  In the past, there's been two trucks.  So one of them was sold recently.

Q.    Fair enough.  And you list drivers as four?

A.    Yeah, that's -- I don't -- that's

bizarre to me because I'm the only driver, so I don't know why there's four drivers listed.

Q.    Okay.  Fair enough.  And, again, we see the same addresses, the ██ Brandywine and the DeKalb Pike, the virtual mailbox, as you put it?

A.    Right.

Q.    And the number here, however, is different from the 4132 number, correct?

A.    Yes.

Q.    And you made that change after you filed this lawsuit; is that right?

A.    I made the change -- I'm not sure of the precise date.  It's probably stamped on there, but I made the change when I became aware that the wrong phone number was being displayed.

Q.    But you're still displaying that number in other areas, correct, in other locations, correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Well, as was represented here, it was with the Attorney General, but I --

BY MR. HELFAND:

Q.    And also with other online locations,

is that also correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    I am not aware, and we haven't explored those as exhibits, but the ones that we have gone over, the AG site I'm aware of now, but the DOT registration I became aware of, and I wanted to make a step to correct that to the business number.

BY MR. HELFAND:

Q.    Okay.  Let me stop sharing with you that document, and let me share with you another document.

(Whereupon, Newell Exhibit 7 was presented.)

BY MR. HELFAND:

Q.    Here, let me scroll through this one as well.  Do you see this document, Mr. Newell?

A.    I can see it, yes.

Q.    Okay.  Do you recognize this document?

A.    No, I do not.

Q.    Can you read for me what it says in the upper left-hand corner here?

A.    The URL link?

106

Q.    Yeah.

A.    "Brokersnapshots.com," and then it's got dash "company DOT" and then it lists a DOT number, which appears to be mine.

Q.    And this list s two addresses for Newell Contracting LLC; is that correct?

A.    That's correct.

Q.    And based on the little icon here, it looks likes one is the physical and one is the mailing; is that correct?

MR. PERRONG:  Objection.

BY THE WITNESS:

A.    That would be my -- that would be my understanding.

BY MR. HELFAND:

Q.    And then those, the physical and the mailing, line up with what we saw previously, correct?

A.    Yeah, it's displayed the same as it was on the FMCSA snapshot.

Q.    Right.  And this lists the operating status as Active?

A.    Which I'm assuming is correlating with the DOT number, yes.

107

Q.    And this also lists the entity type as carrier with the do the number; is that correct?

A.    Yes.

Q.    I'll stop sharing.  I want to show you another document, Mr. Newell.

(Whereupon, Newell Exhibit 8

was presented.)

BY MR. HELFAND:

Q.    Let me know when you can see this document.

A.    Yes, I can see it.

Q.    Do you recognize this document?

A.    Yes.

Q.    How do you recognize the document?

A.    It would appear to be some of the screenshots of the text messages received.

Q.    These would have been the text messages received at the 4132 number?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Yes.

BY MR. HELFAND:

Q.    So this one appears to be dated November 4th, correct?

108

A.    That's correct.

Q.    And then there's this other one on January 24th, correct?

A.    That's correct.

Q.    And then here's another one on February 22nd, 2024, right?

A.    Yes.

Q.    And this is another one of the text messages received at the 4132 number?

A.    That's correct.

Q.    And this one as well (indicating)?

A.    Yes.

Q.    This August 22nd one that we're looking at now?

A.    Yes.

Q.    Okay.  Did you receive any other text messages that you believe are from JR Capital other than these?

A.    Not that I know of or have -- yeah, that's what I have to present is these.

Q.    Okay.

A.    Yes.

Q.    And I ask this -- and, again, this is not a trick.  I am just trying to make sure we

110

safer.web or the FMCSA.  Did you say you changed it before you filed this lawsuit or after?

A.    Oh, I said I wasn't aware of the date that it was changed, that I did it when I became aware of the phone number that was being displayed.

Q.    Okay.  So if the FMCSA records reflect that the change occurred after this lawsuit was filed, do you have any reason to question those records?

A.    Do I have any reason to question the record?

Q.    Correct.  But you're saying you're not sure if you changed it before or after the approximate lawsuit was filed.  The records from the FMCSA suggest that it was changed after the lawsuit was filed.  I'm asking you if you have any reason to doubt those records.

MR. PERRONG:  Objection to form.  You showed him two screenshots on two separate dates.  I don't think that you showed him a record that states when it was changed.

MR. HELFAND:  Okay.  Andrew, enough with the speaking objections.

111

BY MR. HELFAND:

Q.    Let's go back to that document then. So I'm going to take you back to the document.

MR. HELFAND:  And, Mr. Court Reporter, can you remind me which exhibit number this is?  This is the first screenshot from the FMCSA.

(Whereupon, a discussion was had off the record.)

MR. HELFAND:  All right.  Let's go back, and I think we will mark this as Exhibit 6.  The First Amended Complaint was Exhibit 5, correct?

COURT REPORTER:  Hold on.  You're right, it's 5.

MR. HELFAND:  All right.  Let's have this marked as Exhibit 6 because you say I didn't mention that before.

BY MR. HELFAND:

Q.    Mr. Newell, let me refer you back to Exhibit 6, and you said you recognize this document, correct?

A.    Yes.

Q.    Okay.  And this is a document showing

112

Newell Contracting's number as the 4132 number; is that correct?

A.    Yes.

Q.    Okay.  And the time stamp at the top left-hand corner of this is 2/26/25, 12:54 p.m., correct?

A.    That appears to be correct, yes.

Q.    And I believe this was shortly after you filed the lawsuit, correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    I'm actually not certain of the exact date of filing.

BY MR. HELFAND:

Q.    And that's fine.  We won't hold you to that.

So I know you said you're not sure of the exact date of filing, but we can all check the documents, so I'm not too worried about that.

A.    Sure.

Q.    But just to confirm, this which we have now marked as Exhibit 6 shows the 4132 number, correct?

A.    That's what's reflected on the

113

document, yes.

Q.    Okay.  And then if we go to the next exhibit, which should be marked as Exhibit 7 -- and I'll share my screen here again -- can you see this document, Mr. Newell?

A.    No, I don't see a document yet.

Q.    Let's try that again.

Okay.  Let me know when you can see the document.

A.    Okay.  I can see it.

Q.    Okay.  And this is the Safer web FMSCA page which shows the 1170 number, correct?

A.    Yes.

Q.    Okay.  And the time stamp on this one is 7/28/25, correct?

A.    That is correct.

Q.    Okay.  So looking at these two documents, does that refresh your recollection as to when the changed the phone number?

A.    Well, no, I -- I mean, it's simply a -- I don't know if that date listed on the document is when it was accessed or if it marks when the change was made.  I think it's when the document was accessed by whoever accessed it.

114

Q.   Correct.  And this is 7/28/25.  But the access for Exhibit 6, which is 2/26/25, shows the previous number.

So I'm asking if, knowing that accessing the website in February 2025, knowing that it shows the 4132 number, accessing the website in July of 2025 showing the 1170 number refreshes your recollection as to when you changed the number?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.   It provides a date range somewhere between the listing you showed and the 28th.  The 26th and the 28th, yeah, somewhere in that range, it was changed.

BY MR. HELFAND:

Q.   Yeah.  And again, Mr. Newell, you raised a really good point.  It is the date accessed that's showing in the upper left-hand corner so we don't -- and what you're saying is you changed it at some point.  Between February and July of 2025, you changed the number, but you're not going to testify under oath that it was on, you know, March -- or April 15th, 2025?

115

A.    No, I just -- I can't from memory say when it was.

MR. HELFAND:  Okay.  Fair enough. Okay.  And then just to close the loop, making sure we have all the exhibits in order, Mr. Court Reporter, we also looked at this exhibit, which I suppose we should mark as Exhibit 9.

(Whereupon, a discussion was had off the record.)

BY MR. HELFAND:

Q.    Mr. Newell, before we went off the record to clear up the numbering and identification of the exhibits, I was showing you a document which is marked as Exhibit 9.  I am going to bring that back up for you, and I believe you said you recognize this document; is that correct?

A.    Yes, I do.

Q.    And you recognize this to be the interrogatories you served in this case; is that correct?

A.    Yes.

Q.    Okay.  And this actually appears to be

121

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOUREY NEWELL,               )
individually and on          )
behalf of all others         )
similarly situated,          )
                             )
          Plaintiffs,        )
                             )   No. 2:25-cv-01419-GAM
     vs.                     )
                             )
JR CAPITAL, LLC,             )
                             )
          Defendant.         )


        I, JOUREY NEWELL, state that I have read the foregoing confidential transcript of the testimony given by me at my deposition on May 13, 2026, and that said transcript constitutes a true and correct record of the testimony given by me at said deposition except as I have so indicated on the errata sheets provided herein.


                _____
                       JOUREY NEWELL


No corrections (Please initial)_____
Number of errata sheets submitted_____
SUBSCRIBED AND SWORN to
before me this _____ day
of _____, 2026.


_____

122

CERTIFIED SHORTHAND REPORTER

REPORTER CERTIFICATE

I, ANDREW R. PITTS, a Registered Professional Reporter and Certified Shorthand Reporter within and for the County of Cook and State of Illinois, do hereby certify that heretofore, to wit, on May 13, 2026, personally appeared before me JOUREY NEWELL, a witness in a certain cause now pending and undetermined in the United States District Court for the Eastern District of Pennsylvania, wherein Jourey Newell, individually and on behalf of all others similarly situated are the Plaintiffs and JR CAPITAL, LLC is the Defendant.

I further certify that the witness was by me first duly sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the confidential testimony then given by the said witness was reported stenographically by me in the presence of said witness and was thereafter transcribed by me; and the foregoing is a true and complete transcript of the confidential testimony so given by the said witness as aforesaid.

The signature of the witness to the foregoing deposition was not waived.

I further certify that the taking of this confidential deposition was pursuant to notice and that there were present at the taking of said deposition the appearances as heretofore noted.

I further certify that I am not a relative or employee or attorney or counsel, nor a relative or employee of such attorney or counsel for any of the parties hereto, nor interested directly or indirectly in the outcome of this action.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my notarial seal on this 21st day of May, 2026.



ANDREW R. PITTS, CSR, RPR

License No. 084-004575

31 (Pages 118 to 121)

120

in a week, if we could do that.

COURT REPORTER: Yeah, that's fine.

(Whereupon the witness was dismissed and the proceedings were recessed at 12:59 p.m. Eastern Time.)

FURTHER DEPONENT SAYETH NAUGHT

121

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOUREY NEWELL,
individually and on
behalf of all others
similarly situated,

     Plaintiffs,

     vs.          No. 2:25-cv-01419-GAM

JR CAPITAL, LLC,

     Defendant.

I, JOUREY NEWELL, state that I have read the foregoing confidential transcript of the testimony given by me at my deposition on May 13, 2026, and that said transcript constitutes a true and correct record of the testimony given by me at said deposition except as I have so indicated on the errata sheets provided herein.

JOUREY NEWELL

No corrections (Please initial)_____
Number of errata sheets submitted__7____
SUBSCRIBED AND SWORN to
before me this _____ day
of _____, 2026.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) No. 2:25-cv-01419-GAM |
| | ) |
| v. | ) |
| | ) |
| JR CAPITAL, LLC, | ) |
| | ) |
| Defendant. | |

## ERRATA SHEET AND CONFIDENTIALITY DESIGNATIONS

*Deposition of Jourey Newell — May 13, 2026*

I, Jourey Newell, having read the transcript of my deposition taken on May 13, 2026, request that the following corrections be made to the transcript and designate the portions identified below as confidential pursuant to the protective order entered in this action.

## I. CORRECTIONS

*The following corrections reflect transcription errors only and do not alter the substance of the testimony given.*

| Page:Line | Change | Reason |
|---|---|---|
| 60:9 | Change "how they received my inn" to "how they received my number." | Mistranscription — "number" rendered as "inn." |
| 88:24 | Change "To no, I do not" to "No, I do not." | Garbled transcription of "No." |
| 90:13 | Change "I want familiar with them, yes" to "I am familiar with them, yes." | Mistranscription — "want" should be "am." |
| 92:5 | Change "Yesenio's (phonetic)" to "Jesaniel's." | Phonetic placeholder; correct spelling is "Jesaniel." |

## II. CONFIDENTIALITY DESIGNATIONS

*The following portions of the transcript are designated CONFIDENTIAL pursuant to the protective order. This designation is in addition to, and does not waive, any blanket designation of the transcript.*

| Page:Line | Designation | Reason |
|---|---|---|
| 8:19–20 | Confidential | Personal/cell telephone number. |
| 13:6–7; 13:16–24 | Confidential | Date of birth and home/prior residential addresses. |
| 24:1–25:23 | Confidential | Business formation, tax structure, and sole-proprietorship details. |
| 50:24–52:11 | Confidential | Business addresses, virtual mailbox, and registration data. |
| 92:1–93:16 | Confidential | Third-party personal telephone numbers and identities of friends/associates. |
| 94:5–96:19 | Confidential | Tax return treatment, profits/losses, and depreciation details. |
| 101:6–106:18 | Confidential | Business addresses, registration, and carrier-profile data. |

Page 1

| Page:Line | Designation | Reason |
|---|---|---|
| 118:13–119:8 | Confidential | Personal investment holdings and business revenue information. |

Number of errata sheets submitted: _____2_____
No corrections (please initial): _____
I declare that the foregoing corrections and designations are true and correct to the best of my knowledge.

_____
Jourey Newell
Dated: _____June 21, 2026_____

Page 2