1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOUREY NEWELL,            )

individually and on      )

behalf of all others     )

similarly situated,      )

                         )

        Plaintiffs,      )

                         )   No. 2:25-cv-01419-GAM

    vs.                  )

                         )

JR CAPITAL, LLC,         )

                         )

        Defendant.       )


        The confidential discovery deposition of JOUREY NEWELL, for examination taken in the above-entitled cause before ANDREW R. PITTS, CSR, RPR, taken via videoconference on May 13, 2026, at the hour of 10:03 a.m. Eastern Time pursuant to Notice.


STENOGRAPHICALLY REPORTED BY:

ANDREW R. PITTS, CSR, RPR

State of Illinois CSR License No. 084-004575

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                    CONFIDENTIAL/ATTORNEYS' EYES ONLY          5/13/2026

2

PRESENT:

        PERRONG LAW LLC

        ANDREW ROMAN PERRONG, ESQ.

        2657 Mount Carmel Avenue

        Glenside, Pennsylvania 19038

        215.225.5529

        a@perronglaw.com


                Appeared via remote videoconference

                on behalf of the Plaintiffs;

        HUSCH BLACKWELL LLP

        SCOTT J. HELFAND, ESQ.

        120 South Riverside Plaza

        Suite 2200

        Chicago, Illinois 60606

        312.341.9876

        scott.helfand@huschblackwell.com

                Appeared via remote videoconference

                on behalf of the Defendant.



                * * * * *

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL            CONFIDENTIAL/ATTORNEYS' EYES ONLY          5/13/2026

3

                         I N D E X

WITNESS                                              PAGE

JOUREY NEWELL

    Examination By Mr. Helfand                       4

    Examination By Mr. Perrong                       118


                       E X H I B I T S

       EXHIBIT                            PAGE

       NUMBER                             MARKED


    Newell Exhibit No. 1           11

    Newell Exhibit No. 2           45

    Newell Exhibit No. 3           49

    Newell Exhibit No. 4           60

    Newell Exhibit No. 5           99

    Newell Exhibit No. 6           103

    Newell Exhibit No. 7           105

    Newell Exhibit No. 8           107

    Newell Exhibit No. 9           109

    Newell Exhibit No. 10          116

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL          CONFIDENTIAL/ATTORNEYS' EYES ONLY          5/13/2026

4

(Whereupon, the following proceedings were held via videoconference.)

(Whereupon, the witness was administered an oath.)

MR. HELFAND:  Good morning.  Let the record reflect this is the deposition of Mr. Jourey Newell taken pursuant to notice and the Federal Rules of Civil Procedure.

JOUREY NEWELL, called as a witness herein, having been first administered an oath, was examined and testified remotely via videoconference as follows:

EXAMINATION

BY MR. HELFAND:

Q.   Mr. Newell, my name is Scott Helfand, and I am an attorney at Husch Blackwell. I represent the Defendant in this case, JR Capital.

Before we get too far along, I just want to go over some ground rules that will hopefully make this deposition run more smoothly and get us all out of here quicker rather than later.

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                    CONFIDENTIAL/ATTORNEYS' EYES ONLY            5/13/2026

18

MR. PERRONG:  Objection to form.

You can answer.

BY THE WITNESS:

A.    I have always maintained a business phone number, which is 250-1170.  From time to time, there may be an incidental call that's related to business.

BY MR. HELFAND:

Q.    Okay.  That's fair.

To the extent you had made such incidental calls or received incidental call calls -- well, first of all, let me take a step back.

I am going to, for the most part, separate out between calls and text messages. What about text messages?  Would your answer be the same, that is to say that your answer would be that you received only incidental or sent only texts related to Newell Contracting on the 4132 phone number?

A.    Yes, that's correct.

Q.    Okay.  And what about with regard to Newell Landscaping?

A.    With regards to Newell Landscaping, so

19

you're asking to the 4132 if that was related to Newell Landscaping?

Q.   I'm asking if you received phone calls related to Newell Landscaping on the 4132 phone number.

A.   Yes, before the 1170 phone number became the business phone number.

Q.   Okay.  And when did the 1170 number become the business number?

A.   The 1170 number was acquired in October of 2018.

Q.   And when did you form Newell Landscaping?

A.   Newell Landscaping was in existence as sort of a part-time business operation since roughly 2016.

Q.   Okay.  And after you formed Newell Landscaping -- strike that.

After you acquired the 1170 business number, did you continue to make or receive calls on the 4132 number in connection with Newell Landscaping?

MR. PERRONG:  Objection to form.

You can answer.

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                CONFIDENTIAL/ATTORNEYS' EYES ONLY            5/13/2026

20

BY THE WITNESS:

A.    There would have been incidental calls on the 4132 number, but the primary business number was the number for which I would put out to people to ask, like, if they wanted work done, that would be the number that would be put out as the business number.

BY MR. HELFAND:

Q.    This was the 1170 number after 2018?

A.    That's correct.

Q.    Okay.  Do you currently work?

A.    I do work.

Q.    And what is that work?

A.    In capacity in being owner and operator of Newell Contracting, I do a various contracting duties.

Q.    And you -- okay.  I want to talk more about Newell Contracting in a minute, but let me take a step back.

Do you have any other occupations currently besides Newell Contracting?

A.    There is no other occupations.  That's my primary work.

Q.    Okay.  And you don't operate any other

34

Now, Newell Contracting came into being in October 2023, correct?

A.    That's correct.

Q.    And before that, you had the same business, essentially, you operated essentially the same business as Newell Landscaping; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Actually, the characterization I would say is not correct.

BY MR. HELFAND:

Q.    Okay.  Then please tell me what the differences are.

A.    Outside of the change in the formation of the business from sole proprietorship to an LLC, it was that the nature of the business wasn't simply landscaping, so the contracting does a little bit more than just the landscaping.

Q.    Okay.  Let's start with the landscaping business, and then we can work forward; is that okay?

A.    That's okay.

Q.    Okay.  Tell me, what sort of services

36

Q.    And obviously I know you mentioned Newell Contracting is an LLC.  It's an LLC, right? Is that correct?

A.    That's correct.

Q.    Whereas Newell Landscaping was a sole proprietorship?

A.    That's correct.

Q.    And Newell Contracting, you said, does work in addition to or different from Newell Contracting; is that correct?

A.    That's correct.

Q.    Just to make it easier for my notes, does Newell Contracting provide the same services as Newell Landscaping did, just additional services, or does Newell Landscaping no longer provide some of those services?

A.    No, I would say it's primarily the same services plus some additional.

Q.    Okay.  Great.  And what are those additional services?

A.    More of like a handyman service plus fencing and some other things that people might not associate with landscaping.

Q.    And when you say handyman, can you give

37

me an example of that?

A.    Sure, I can fix gutters or downspouts or repair the trim around someone's window. I mean, I know how to do a lot with houses, so that's why it's sort of expanded, just because I have new skills.

Q.    Great.  Do you have any employees at Newell Contracting?

A.    No, it's always just been me.

Q.    Just you.

And was the same true for Newell Landscaping?

A.    Yes.

Q.    Tell me about some of the equipment that you use in your business -- I'm sorry, in your -- as Newell Contracting, like imagine I don't know how to fix a spout or to do landscaping.  And I don't.  Tell me about some of the equipment you use in your business.

MR. PERRONG:  Objection to form. Scott, just I have been pretty lenient with you here, but I think that this sort of starting to go outside the realm of the issue of whether or not Mr. Newell's number is used

45

A.    To my knowledge, it requested both a cell phone number and a business number.  So I would think that I would put the business number and the cell phone number.

Q.    Okay.  But you listed the 4132 number as a business number; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No, to my recollection, the application asked for a cell phone number and a business number, and I would have put both in their respective fields.

BY MR. HELFAND:

Q.    Okay.  Now, you listed these numbers -- well, let me show you.  Let me try again to show you a document, and we'll see if we can bring this up on the screen.

(Whereupon, Newell Exhibit 2 was presented.)

BY MR. HELFAND:

Q.    All right.  Mr. Newell, please take a look at this document.  Can you see the document, Mr. Newell?

A.    I can see it, yes.

46

Q.    Do you recognize this document?

A.    Yes, it would have been a version, I'm sure, similar to this.  This looks like maybe a paper version that perhaps you mail in.  I think I would have filled it out online, but essentially I would say yes.

Q.    Okay.  So you recognize this document to be the application for the Home Improvement Contractor Registration; is that correct?

A.    Yes, that's what it says.

Q.    And that's what you recognize it to be, correct?

A.    Yes.

Q.    And you recognize it since you filled out such an application; is that also correct?

A.    There would been a home improvement contractor application submitted, yes.

Q.    Right.  But otherwise you wouldn't be registered as a home improvement.  Newell Contracting wouldn't be registered as a home improvement contractor with the Pennsylvania Attorney General's Office; is that correct?

A.    That's correct.

Q.    Okay.  And just going down here --

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                CONFIDENTIAL/ATTORNEYS' EYES ONLY            5/13/2026

47

MR. PERRONG:  Could he see all pages of the document before you start asking questions about it?

MR. HELFAND:  Absolutely.  Let me scroll through it.

MR. PERRONG:  Thank you.

MR. HELFAND:  Of course.  Thank you.

BY MR. HELFAND:

Q.    I am going to scroll back up to the top of this document now.

Okay.  So turning back to this document for a second, you provided a business street address for Newell Contracting; is that correct?

A.    Yes, it would have been required.

Q.    Right.  And you also provided a business mailing address; is that correct?

A.    Yes.

Q.    And you provided those addresses so that people would know where you were located; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No, I suppose if they were to look up the home improvement contractor license to say --

48

to be certain that you had one, for instance, if you were going to do a job, then yes, that's correct.

BY MR. HELFAND:

Q.    Okay.  Yeah, and I appreciate your sort of phrasing it that way because, I guess, let me give you another sort of hypothetical.

You know, I want to hire a contracting business, and I am, you know, a homeowner in the King of Prussia area, but I want to make sure that whoever I hire is registered with the Pennsylvania Attorney General, right?

And so then I look the business up, and I can find out both that they're registered and where they're located; is that fair?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Yes.

BY MR. HELFAND:

Q.    And then there is a number -- or there's a line here for Business Telephone Number, and you provided the 4132 number for the business telephone number; is that correct?

A.    To my knowledge, I would have put the

49

1170 phone number for the business telephone number.

Q. You would have. Okay.

If you only put one number down on this application, would it have been the 4132 number or the business telephone number?

MR. PERRONG: Objection to form.

BY THE WITNESS:

A. I don't believe I would have. I believe right there, Point of Contact, I would have put Business Phone Number as 1170, Personal Telephone Number as 4132.

BY MR. HELFAND:

Q. Okay. All right. Let's have this document, marked as Exhibit 2. And I am going to stop sharing this document now.

And I want to show you another document, which I am going to ask to have marked as Exhibit 3.

(Whereupon, Newell Exhibit 3 was presented.)

BY MR. HELFAND:

Q. Let me know, Mr. Newell, if you are able to see my screen.

54

A.    But what I would say is that there were some people perhaps that were customers previously of Newell Landscaping that would then when I switched numbers, sometimes people have a hard time getting used to the fact that you have changed your phone number.  So sometimes they send a message to the incorrect one, and I have to correct it and say text them back from the 1170 or call them back from the 1170.

Q.    Let's see if I can understand what you just said correctly.

So if someone called you on the 4132 number related to Newell Contracting, you would hang up and call them back using the 1170 number?

A.    No, what I meant to say is --

Q.    Okay.

A.    -- a customer who has been a long-time customer, for instance, they had the 4132 number as the Newell Landscaping number prior to the 1170, that sometimes they would get confused because now they've got two contacts on their phone, and they would make a call to my personal phone number.  That's an example of what I meant by incidental.

55

Q.   Okay.  I think I understand what you're saying.

So just getting back to my question, let me ask you again, on a weekly basis, how often do you use the 4132 number for Newell Contracting?

A.   How often?  It could be a few times a week.  I mean, it could be less than that.  It could be no times per week.

Q.   Okay.  So --

A.   It's many variables --

Q.   I'm sorry, Mr. Newell, I spoke over you.  I'll let you finish your answer.

A.   No, I just was going to say it could be varied.  There is no way of knowing when somebody is going to reach out.

So, for instance, if somebody, a family member, has shared what they know as my number because they know me as a family member, for instance, and they think, "Oh, this person needs X done for work," and so they share the 4132 number, and so then that person reaches out.  But I don't put that 4132 number out there as a business number for people to contact.

Q.   Okay.  And, well, getting back to the

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                CONFIDENTIAL/ATTORNEYS' EYES ONLY                5/13/2026

56

sort of weekly usage, so you said it varies; is that correct?

A.    It varies, yes.

Q.    Could be no times; is that fair?

A.    That's fair.

Q.    And it could be many times in a week; is that also fair?

A.    That's fair.

Q.    Okay.  And you used the example -- which I appreciate the use of the example.  You used the example of if a family number gave your number out, you know, to someone who need a contractor; is that fair?

A.    That's fair.

Q.    Okay.  And you also used the example of someone who had received the number from you before you had created the 1170 number; is that also fair?

A.    That's fair.

Q.    Okay.  And then, of course, someone who looked you up on the Attorney General's website would also get that number; is that also correct?

MR. PERRONG:  Objection to form.

JOUREY NEWELL v. JR CAPITAL, LLC
NEWELL                 CONFIDENTIAL/ATTORNEYS' EYES ONLY              5/13/2026

57

BY THE WITNESS:

A.    I suppose so, but I can't name a single instance where that has happened.

BY MR. HELFAND:

Q.    Okay.  Is it your testimony that no one has ever contacted you as a registered contracting company with the Attorney General's Office?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    No, my testimony would be that no one has ever called me saying, "Hey, I searched up on home improvement contractor website, and I'm reaching out to you today because your number is listed."

BY MR. HELFAND:

Q.    Fair enough.  But someone could have gotten the number there without having that specific conversation with you; is that fair?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    I suppose, but --

BY MR. HELFAND:

Q.    I mean, I guess I would ask it in a different way.

58

         If I was interested in a home improvement contractor and I wanted to make sure they were registered, I might look them up at the AG's website, correct?

         MR. PERRONG:  Objection to form.

BY THE WITNESS:

    A.    I suppose that's true, but they would already have to have the name Newell Contracting in mind.

BY MR. HELFAND:

    Q.    Sure.  Newell Contracting --

    A.    So it's not as if they're going on there -- I'm not sure if there's an entire list in an area provided or some instance where it almost serves as an advertisement.  I think it's more to verify something where they've already been in contact with me.

    Q.    Okay.  But let's say they put in Newell Contracting on the Attorney General's website.  We have already established that they are going to get the 4132 phone number, correct?

         MR. PERRONG:  Objection to form.

BY THE WITNESS:

    A.    That is what's listed, yes.

96

there's a word I'm looking for.

A.    Depreciation.

Q.    Thank you.  Did you say depreciation?
Thank you very much.  Yeah, you would have
depreciation, or I don't know if you could have
appreciation, but you would have depreciation for
that equipment, correct?

A.    Yes.

Q.    And I know we talked about -- I mean,
I'm going to circle back here.

Did you, on your tax returns, would you
deduct the -- or depreciation for phone equipment?

A.    No.  For phone equipment, no.

Q.    You never deducted or -- like, I think
it would probably be under the rubric "office
equipment" or something like that.  You never
deducted that on your tax returns?

A.    I would have probably have office
equipment, sure.

Q.    Fair.  And then we talked earlier about
your Attorney General registration, and then you
also registered Newell Contracting with the
Federal Motor Carrier Safety Administration; is
that correct?

97

A.    That's correct.

Q.    And the Federal Motor Carrier Safety Administration is connected to the United States Department of Transportation; is that correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    That's correct; as far as my understanding, they're intertwined, essentially.

BY MR. HELFAND:

Q.    Well, I won't quiz you on the specific legal relationship, but thank you for, again -- and in all seriousness, Mr. Newell, I do appreciate your sort of careful responses and making sure we both understand each other.

So you registered Newell Contracting as a carrier, correct?

A.    Yes.

Q.    Tell me what kind of carrier work Newell Contracting does.

A.    It's really just my tools.  I don't carry other people's property.

Q.    So you registered Newell Contracting as a carrier because you were carrying your tools; is that your testimony?

98

A.    Yes.

Q.    Now, when you registered Newell Contracting, you provided an address for Newell Contracting, correct?

A.    Yes.

Q.    And did you provide that potential address so that people, potential customers, would know where to contact you?

A.    No, I never imagined that I would be gaining customers through the US DOT number. That's -- it would be a bizarre channel to be gaining any customers.

Q.    Why would it be a bizarre channel through which to gain any customers?

A.    I don't see it as a -- it's a -- certain regulations require you to have a number. So it's more or less something you need to do to remain compliant.  It's less to do with putting information out there for potential customers.

Q.    I'm going to show you a document.

MR. PERRONG:  Before you do that, we're getting on two hours at this point.  Do you have much longer to go, or do you --

MR. HELFAND:  You know, I can honestly

104

bizarre to me because I'm the only driver, so

I don't know why there's four drivers listed.

Q.    Okay.  Fair enough.  And, again, we see

the same addresses, the ███ ██████████ and the

DeKalb Pike, the virtual mailbox, as you put it?

A.    Right.

Q.    And the number here, however, is

different from the 4132 number, correct?

A.    Yes.

Q.    And you made that change after you

filed this lawsuit; is that right?

A.    I made the change -- I'm not sure of

the precise date.  It's probably stamped on there,

but I made the change when I became aware that the

wrong phone number was being displayed.

Q.    But you're still displaying that number

in other areas, correct, in other locations,

correct?

MR. PERRONG:  Objection to form.

BY THE WITNESS:

A.    Well, as was represented here, it was

with the Attorney General, but I --

BY MR. HELFAND:

Q.    And also with other online locations,

110

safer.web or the FMCSA.  Did you say you changed it before you filed this lawsuit or after?

A.    Oh, I said I wasn't aware of the date that it was changed, that I did it when I became aware of the phone number that was being displayed.

Q.    Okay.  So if the FMCSA records reflect that the change occurred after this lawsuit was filed, do you have any reason to question those records?

A.    Do I have any reason to question the record?

Q.    Correct.  But you're saying you're not sure if you changed it before or after the approximate lawsuit was filed.  The records from the FMCSA suggest that it was changed after the lawsuit was filed.  I'm asking you if you have any reason to doubt those records.

MR. PERRONG:  Objection to form.  You showed him two screenshots on two separate dates.  I don't think that you showed him a record that states when it was changed.

MR. HELFAND:  Okay.  Andrew, enough with the speaking objections.