**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-01419-GAM |
| Plaintiff, | Hon. Gerald A. McHugh |
| v. | |
| JR CAPITAL, LLC, | |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Asked to come forward with evidence that the 4132 number is what his complaint alleges—a residential line—Newell responds with a brief that repeatedly tells this Court the record says things it does not say, and with a new declaration that tells a story his own deposition refutes. Newell's Opposition to JR Capital's Motion for Summary Judgment fails to show why JR Capital is not entitled to judgment as a matter of law.

This is so for two reasons.

First, perhaps in an attempt to avoid scrutiny of the record evidence regarding his business use of the 4132 phone number, Newell argues that— even if the 4132 number is not residential—his Caller ID claim (Count II) survives summary judgment. According to Newell's Opposition, businesses, too, have a private right of action to enforce the Caller ID regulation. Yet, as Newell himself argued in seeking to avoid dismissal of that claim (and this Court agreed), the FCC promulgated the Caller ID regulation under § 227(c) of the TCPA. By its terms, § 227(c) limits its private right of action to residential subscribers.

No court—ever—has held that § 227(c) provides a private right of action for businesses. And, in this case, Newell's previous argument should judicially estop him from arguing for such a finding. Judicial estoppel aside, Newell's argument is not well taken. Newell ignores § 227(c)'s text, pretends the Caller ID regulation addresses an issue it doesn't (*i.e.*, who may enforce it), and urges this Court to dramatically expand the amount of litigation flowing into this Court from an already over-litigated statute.

Second, Newell argues that, even assuming § 227(c) provides a private right of action only for residential-phone users, his claims survive summary judgment. In so arguing, however, Newell repeatedly misstates the record in an attempt to manufacture a fact dispute. The record here stands exactly where JR Capital's Motion left it. Newell registered Newell Contracting with two government agencies, and the public listing each agency generated displayed the 4132 number as a business's contact number. To use Newell's own words, "that's the number that would appear for you to -- yes, for the business." ECF No. 33-3, Newell Dep. 51:17-19. Indeed, the number was his landscaping business's sole contact number for years, and he admits he still uses it for the business as much as "many times in a week." ECF No. 33-3, Newell Dep. 19:3-11; 56:6-8. Moreover, JR Capital—which finances businesses only and has no reason to contact residential subscribers—obtained the 4132 number from a Dun & Bradstreet record that identified Newell's landscaping business by company name, industry, SIC code, and year founded. ECF No. 34-6, Resp. No. 8.

JR Capital's motion for summary judgment should be granted.[1]

---

[1] The Court bifurcated discovery to address whether the 4132 number is residential. Thus, this motion for summary judgment addresses summary judgment based on the residential-versus-business issue. Notably, though, there is a growing split of authority over whether text messages are actionable under § 227(c)'s private right of action. To be sure, courts in this District have said yes. *See Pero v. Brown-Daub Chevrolet of Nazareth*, No. CV 25-7016, 2026 WL 1747214,

**Background**

A.    **What the Opposition tells the Court about the evidence versus what the record shows.**

Newell tells the Court to look at the record. JR Capital invites the same scrutiny—of both sides. A review of the record shows that the Opposition mischaracterizes the evidence, repeatedly and on points that matter. The chart below identifies several significant examples.[2]

| What the Opposition Tells the Court | What the Record Actually Shows |
|---|---|
| On the FMCSA registration, Newell "entered the 4132 number not as the business number, but instead as his personal cell phone, in accordance with the application's prompt for a cell phone number. (Ex. 4 at 45:1-12; 49:9-12; 55:22-23.)" Opp. 5; *see also* Opp. 26. | None of the cited testimony concerns the FMCSA form; pages 45 and 49 discuss the Attorney General application, and 55:22-23 is general. Newell's actual FMCSA testimony: the public listing showed "the wrong phone number," which he changed—between February 26 and July 28, 2025, months into this suit—to "correct that to the business number." ECF No. 33-3, Newell Dep. 104:12-15; 105:6-9; 114:12-15; ECF No. 33-7, ECF No. 33-11. |
| JR Capital asserted "(citing no one)" that Newell uses the number for business "several times a week"; "[n]owhere in Mr. Newell's testimony did he make that statement." Opp. 30. | JR Capital's memorandum cited five passages for that sentence. ECF No. 33 at 7 (citing Newell Dep. 18:4-21; 19:17-20:10; 52:14-22; 55:1-8; 56:1-8). Newell testified his business use of the 4132 number "could be a few times a week" (55:6-8) and agreed it "could be many times in a week." (56:6-8.) |
| Newell told JR Capital in writing that the number was "his personal cell phone, not a business phone" (Opp. 6) and "represented to JR Capital that the number was his residential number" (Opp. 33). | The email says neither. It calls the number "my mobile telephone number" and "my cellular telephone number," ECF No. 34-7—terms equally true of the 1170 number Newell calls his business line. Newell nowhere calls the number |

at *4-5 (E.D. Pa. June 17, 2026). But the Seventh Circuit recently said no. *Steidinger v. Blackstone Med. Servs.*, No. 25-2398, 2026 WL 2028517 at *3 (July 14, 2026). And this issue will continue to wind its way up to other Circuit Courts, including the Third Circuit. For purposes of this Motion, however, the text-call distinction is not relevant.

[2] Cited excerpts of the Newell and Robbins deposition transcripts appear at ECF Nos. 33-3 (Def. Ex. C) and 33-1 (Def. Ex. A), and at Plaintiff's ECF Nos. 34-5 (Pl.'s Ex. 4) and 34-2 (Pl.'s Ex. 1). The additional pages cited only in this reply (Newell Dep. 85-92) are attached as JR Capital's summary judgment **Exhibit L** at ECF No. 35-1. Citations to "Opp." are to the internal pagination of Plaintiff's response, ECF No. 34.

| | |
|---|---|
| | "personal" or "residential," and nowhere says it is not a business number. *See id.* |
| The Dun & Bradstreet record "does not identify a business number at all," listing only a personal name, a "Direct Phone," and a "residential address." Opp. 20-23; Newell Decl. ¶ 7. | The interrogatory answer Newell cites lists the full record: "Industry (Agriculture)"; "Year Founded (2016)"; two SIC codes, both "Lawn and Garden Services"; "Company Name (Newell, Jourey)"; "Direct Phone" (the 4132 number). ECF No. 34-6, Resp. No. 8. It is a business record describing Newell's landscaping business, founded, as he testified, "roughly 2016" (Newell Dep. 19:14-16)—with the 4132 number as its phone. The record says "Address," not "residential address," so the Opposition adds that word. |
| "Both registrations belong to Newell Contracting LLC, an entity that did not exist" when JR Capital bought the data and sent the first text, so reliance is "chronologically impossible." Opp. 2, 5, 33. | This conflates the LLC with the business. Newell operated the same landscaping business as a sole proprietorship "since roughly 2016," and the LLC continued it. ECF No. 33-3, Newell Dep. 19:14-16; 23:13-16; 34:1-19. The D&B record JR Capital bought in 2022 describes that then-existing business (founded 2016; Lawn and Garden Services) with the 4132 number. The registrations came later, and publicly displayed the same number during the 2024-2025 texts. ECF No. 33-7 (MCS-150 Form Date 02/13/2024). |
| "[T]he Court has already held that the calls in this form . . . violate § 64.1601(e)." Opp. 15. | The Court sustained Newell's allegations at the pleading stage; it adjudicated no violation. Merits discovery on Count II has never occurred—because Newell himself insisted, repeatedly, that discovery was "limited . . . solely to whether the telephone number . . . was a residential or business number." ECF No. 33-4, Resp. Nos. 8, 10. |
| JR Capital's subpoena of Newell's phone records "uncovered, unsurprisingly, residential use, including calls to his parents, grandmother, and friends." Opp. 28. | The Opposition cites nothing for this, and the records are not in Newell's evidence. What is in the record is the deposition examination of those records, which showed calls with building-materials suppliers, bid-network contacts, and Newell's business co-founder—each attributed by Newell to personal "home improvement" projects or friendship. ECF No. 35-1, Newell Dep. 85:15-92:24. |

| | |
|---|---|
| Newell "corrected" the FMCSA listing "as soon as he learned it was publicly displayed." Opp. 26-27; Newell Decl. ¶ 11. | The change was made between February 26 and July 28, 2025—months after this lawsuit was filed, ECF No. 33-3, Newell Dep. 112:4-9; 114:12-15—by an MCS-150 filed July 23, 2025. ECF No. 33-11. The Attorney General listing, which he has known of at least as long, still displayed the 4132 number on May 11, 2026, fourteen months into the case. ECF No. 33-6. The declaration does not say he has ever corrected it. |
| Newell "has testified that he has not [held the number out] for at least eight years." Opp. 35. | No such testimony exists. Within the very period Newell claims he was not holding the number out, he filed the February 13, 2024 MCS-150 that listed the 4132 number on his federal registration, ECF No. 33-7, and registered Newell Contracting with the Pennsylvania Attorney General in 2023, whose public listing still displays it. ECF No. 33-5, ECF No. 33-6. The 1170 number was acquired in October 2018—less than eight years ago—and those government filings postdate that acquisition by five and six years respectively. ECF No. 33-3, Newell Dep. 19:8-11. |

Consider another example.

At one point, Newell tells this Court that, during JR Capital's Rule 30(b)(6) deposition, counsel "fed" JR Capital's witness (Robbins) his testimony. Opp. 21. That is a serious accusation. But the transcript does not come close to supporting it. Asked what the Dun & Bradstreet record's telephone field is labeled, Robbins answered the question directly—"it just says business phone number or phone number," and "I believe it just says phone or business phone." ECF No. 34-2, at 23:15-21. Only then, when pressed on the precise wording, did he note that the exact field labels had already been produced, and counsel confirmed that JR Capital had "provided the fields from the D&B data in the supplemental . . . interrogatory responses." *Id.* at 23:25-24:18. That is not a witness being supplied an answer; it is a witness accurately recalling that the underlying document was in the record—which it is, verified under oath, as Plaintiff's own Exhibit 5. ECF No. 34-6, Resp. No. 8.

**B.    The relevance of these mischaracterizations.**

None of these mischaracterizations is minor.[3] The Opposition's thrust (*e.g.*, that Newell entered the 4132 number in a personal field, that his business use was merely incidental, that the email disclaimed the number, that the Dun & Bradstreet record shows nothing commercial, that reliance was chronologically impossible) depends on an unsupported version of the record. The chart above shows what the record actually says.

As noted, in an attempt to alter the record, Newell submits a declaration with his Opposition, ECF No. 34-8. But that declaration should be disregarded, as it contradicts Newell's own deposition testimony.[4] *See infra*, § C.2.b.

<u>Argument</u>

For his claims under the TCPA to survive summary judgment, Newell must come forward with evidence that he received calls on a residential phone number. Mot. for Summary Judgment, ECF No. 33 at 11. Newell's efforts to avoid summary judgment fail on two fronts.

First, in an apparent attempt to avoid the evidence that the 4132 number was a business number, Newell now asserts that his claim under the Caller ID regulation (Count II) contains no

---

[3] Recall, too, that each challenged text message informed recipients that, if they did not want to receive messages, they could simply reply "stop." But Newell—who has spent years filing TCPA lawsuits claiming that the 4132 number is "residential"—did not reply "stop" to any of the messages. Instead, on August 7, 2023, Newell sent an email to a JR Capital email address. JR Capital missed that email due to human error. But Newell never followed up or responded "stop" to the couple of subsequent texts he received over the course of the following 18 months or so. Ex. J (8/7/2023 email); Robbins Dep. 32:6-12; 35:21-36:24; FAC ¶ 27.

[4] Newell's footnote 1 urges the Court to set aside his litigation history. Yet JR Capital's motion does not ask this Court to decide this Motion based solely on Newell's litigation history. JR Capital's Motion asks only that, in scrutinizing the record, the Court keep in mind the overall context of modern TCPA litigation. *See* ECF No. 33, pp. 2-4.

residential requirement as a matter of law. Yet this argument contradicts the position he took in opposing JR Capital's Motion to Dismiss. So Newell should be judicially estopped from advancing it. That aside, Newell's position runs contrary to the plain language of the statute. Newell cites no authority suggesting otherwise. Nor could he. No court has ever held what Newell seeks to have this Court hold.

Second, after eventually getting back to the residential-versus-business question, Newell repeatedly tells this Court that the record says things it does not say. The evidence shows that Newell held the 4132 number out as a business number and in fact used the 4132 number for business.

Summary judgment should be granted for JR Capital on all of Newell's claims.

**A.      Section 227(c)—under which Newell himself successfully argued all his claims arise— limits its private right of action to residential subscribers.**

**1.      *Newell should be estopped from arguing that § 227(c) creates a private right of action for non-residential telephone subscribers*.**

In opposing JR Capital's motion for summary judgment, Newell asks this Court to do something that no other court to consider the issue has done. That is, to hold that § 227(c) of the TCPA creates a private right of action for non-residential telephone users. This would be a flagrant misreading of the plain language of the TCPA. And it would open the proverbial floodgates to an entirely new army of litigants under a statute that has "already strayed far from its original purpose" and "become the poster child for lawsuit abuse." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (Pai, dissenting) (overruled in part by *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)).

This Court should reject Newell's invitation, but the Court need not reach Newell's statutory interpretation arguments in the first instance because judicial estoppel independently bars

7

the new theory. To save Count II from dismissal at the pleading stage, Newell argued that § 64.1601(e) is a lawful exercise of § 227(c) rulemaking because § 227(c) "authorized the FCC to promulgate rules relating to the need to protect residential telephone subscribers' privacy rights." Pl.'s Opp'n to Mot. to Dismiss, ECF No. 18 at 9.

The Court accepted that position, holding the regulation "fits comfortably within § 227(c)." *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 579 (E.D. Pa. 2025). Newell won that ruling by grounding the regulation in residential-subscriber privacy. He cannot now disavow that ground to avoid the element it carries with it. *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018) (judicial estoppel designed to "prevent litigants from playing fast and loose with the courts" by "gain[ing] an advantage by litigation on one theory, and then seek[ing] an inconsistent advantage by pursuing an incompatible theory").

To try to obfuscate things, Newell argues that rulemaking authority and the scope of the duty are separate questions. Opp. 16. That may be true, but nobody disputes that § 64.1601(e)'s duty is universal. Every telemarketer must transmit caller ID on every call, to businesses and residences alike, and the FCC can enforce the caller ID regulation against any of them. That is not the question here. The question is who can bring a private lawsuit under § 227(c)(5).

In his motion to dismiss briefing, time and time again, Newell relied on the plain language of the purpose of § 227(c), namely that it was meant entirely to protect residential telephone users. *See* Pl.'s Opp'n to Mot. to Dismiss, ECF No. 18 at 3 ("§ 227(c) authorizes the FCC to promulgate rules relating to the 'need to protect residential telephone subscribers' privacy rights"); at 4; at 5 (stressing that § 227(c) deals with "*consumer* privacy"); at 7 (FCC promulgated Caller ID

8

regulation under authority to engage in rulemaking addressing "consumer privacy"); 11, 12, 17 (same).

This Court need not reach Newell's efforts to rewrite the statute if it finds him judicially estopped from raising these arguments. Newell's current position, that § 227(c)'s private right of action is not limited to residential telephone subscribers, is plainly inconsistent with his position in opposing JR Capital's motion to dismiss. Even if the Court were to reach the merits of Newell's statutory-interpretation argument, this Court should reject that argument.

    2.    ***There is no authority supporting a private right of action for non-residential subscribers to enforce any regulation issued under § 227(c).***

        a.    <u>Section 227(c) does not create a private right of action for non-residential subscribers</u>.

Section 227(c) creates a private cause of action only for consumers using residential phone numbers under the TCPA. Indeed, Congress settled that in the structure of the statute.

In § 227, Congress put two private rights of action right next to each other. Section 227(b)(3) gives its action to "[a] person *or entity*." (emphasis added). By contrast, § 227(c) is more limited. Section 227(c)(5) gives its action to "[a] person who has received more than one telephone call . . . in violation of the regulations prescribed under this subsection," and that subsection's stated purpose, by Newell's own account, is to protect "residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1).

For his part, Newell makes three efforts to show the statute says the opposite of what it says. These efforts should be rejected.

First, Newell cites to *Bostock v. Clayton Cnty.*, 590 U.S. 644, 653 (2020) for the notion that the same logic that led to the Supreme Court holding that Title VII prohibits discrimination based on sexual orientation should apply to broaden the reach of the § 227(c) to businesses. But

9

this is not a case where the drafters of the TCPA "might not have anticipated their work would lead to this particular result." *Bostock*, 590 U.S. at 653. Congress knew exactly how to grant a private right of action to businesses, as it did so in § 227(b)(3).[5]

Second, Newell points out that, in § 227(c)(3), the TCPA authorizes the FCC to create a database (*i.e.*, the Do Not Call Registry) of residential subscribers. Opp. 12. From this, Newell concludes that the other FCC regulations issued under § 227 must be enforceable by non-residential subscribers. Yet, in making this argument, Newell disregards the very paragraph setting out the private right of action. Again, that's § 227(c)(5). And, in sharp contrast to § 227(b)(3)'s private right of action for any "person *or entity*," § 227(c)(5) provides a private right of action only for a person. *Compare* § 227(b)(3) *with* § 227(c)(5)

Third, Newell pretends that § 227(b)(3) does not exist. Newell's brief never mentions § 227(b)(3). Instead, he resorts to the Telecommunications Act's general definition of "person," as defined in Subchapter 1 of Chapter 5. 47 U.S.C. § 153(39).

Putting aside the fact that the TCPA is in Part I of Subchapter II of the Telecommunications Act, if that definition controls, "person" and "person or entity" are interchangeable, and Congress accomplished nothing by adding "or entity" in one subsection and leaving it out of the next. That cannot be right. The "presumption of intentional drafting" Newell invokes against the FCC's regulations, Opp. 9, applies with equal force to Congress's own word choices in the adjacent subsections of § 227. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed Congress acts intentionally and purposely….").

---

[5] Notably, relying on the more-expansive private right of action in § 227(b)(3), businesses routinely file suit under § 227(b) and its implementing regulations. *See, e.g., Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246 (3d Cir. 2019) (lawsuit brought by medical corporation).

Newell cites no authority supporting his argument that this Court should look to the definitions in § 153 of the broader Telecommunications Act to create a private right of action for businesses under §227(c). This is not surprising, though. As noted, no court has ever found that §227(c) creates a private right of action for businesses.

With good reason.

The definition of "person" found in § 153 was copied from the definition of "person" when the Communications Act was first enacted in 1934. Communications Act of 1934, June 19, 1934, ch. 652, title I, § 3(i). The TCPA was not enacted until 1991. As the Supreme Court and the Third Circuit have stressed, when the "scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand," the "specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended." *In re Yellow Corp.*, 152 F.4th 491, 502 (3d Cir. 2025) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000)). This is in keeping with the traditional rule of statutory interpretation that "specific terms prevail over the general in the same or another statute which otherwise might be controlling." *PJM Power Providers Grp. v. Fed. Energy Reg. Comm'n*, 88 F.4th 250, 270 (3d Cir. 2023) amended, No. 21-3068, 2024 WL 259448 (3d Cir. Jan. 24, 2024) (cleaned up).

The result does not change even if the Court looks only to § 153, which was part of the Telecommunications Act of 1996, and ignores that the definition of person in § 153 was lifted from the 1934 statute. A "statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. 'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the

11

priority of enactment.'" *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 130 (3d Cir. 1998).

Read as the statute's structure requires, the § 227(c)(5) action belongs to the class § 227(c) was written to protect, namely residential subscribers. Newell's contrary arguments should be rejected.

        b.      <u>The Caller ID Regulation does not (and cannot) create a private right of action that the statute itself does not provide.</u>

Section 227(c) creates a private right of action only for residential telephone subscribers. In arguing otherwise, Newell points out that businesses are incidentally protected by the Caller ID requirements of § 64.1601(e). So, Newell concludes, businesses must have standing to enforce violations of that regulation under § 227(c). But whether businesses may incidentally benefit from the caller ID regulation makes no difference as to whether § 227(c) of the TCPA provides a private right of action for businesses.[6]

A regulation cannot broaden the reach of the statute. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988). In his response, Newell attempts to resist *Bowen's* application to this case. But that attempt falls flat. Although § 64.1601(e) regulates who must use caller ID, that does not change the plain language of the TCPA in determining who may pursue a cause of action for violation of the regulation. Courts must "look to the enabling statute to find the source of a right of action to enforce regulations" because, as *Bowen* instructs, "an agency's rulemaking power cannot exceed the authority granted to it by Congress." *Three Rivers Ctr. for Independent Living*

---

[6] Newell also argues that, because certain FCC regulations refer specifically to "residential telephone subscriber" and the Caller ID regulation does not, the Caller ID regulation is not limited to residential lines. Opp. 11. Again, though, this is misdirection. The question this Court must answer is not whether caller ID must be used—the question is who may bring suit. And that question can be answered only by the text of the *statute*.

*v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004). This Court has determined that the caller ID regulation falls under § 227(c) and that section of the TCPA creates a private right of action for residential subscribers *only*. The text of the regulation cannot broaden §227(c)(5), meaning § 64.1601(e) cannot create a private right of action for businesses under §227(c).

In short, Newell invites this Court to be the first court ever to find that businesses can enforce § 227(c)'s private right of action. Newell's argument is inconsistent with what he argued previously, it is contrary to the statutory text, and it would entail a massive expansion of an already overly-expansive litigation vehicle.

To succeed on his claims, Newell must prove that the 4132 number is residential. As discussed below, he cannot.

**B.      Newell has failed to present sufficient evidence supporting the conclusion that the 4132 number is residential, and he should be equitably estopped from arguing that it is.**

As the record evidence shows, Newell spent years holding the 4132 phone number out as a business number. Newell's attempts to rewrite history (and the record) should be rejected. He should be equitably estopped from arguing the 4132 phone number is residential. And, regardless, he has failed to produce sufficient evidence showing that the 4132 number is residential.

**1.      *Newell should be equitably estopped from claiming the phone number is residential.***

Newell argues that he should not be equitably estopped, because the government registrations that JR Capital cites did not exist when JR Capital obtained the phone number from Dun & Bradstreet. This argument misses the mark.

As this Court knows, "[g]rounded in common law, equitable estoppel prevents a party from enforcing a right against another party when the right was gained through misleading actions."

13

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *5 (E.D. Pa. Mar. 14, 2025); *see also* Black's Law Dictionary, ESTOPPEL (12th ed. 2024). "All that is required for estoppel is that one's conduct intentionally or negligently 'induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" *Liberty Prop. Tr. v. Day-Timers, Inc.*, 2003 PA Super 7, ¶ 20, 815 A.2d 1045, 1052 (Pa. Super. Ct. 2003) (internal citation omitted).

Here, the public registrations are evidence of holding out whether JR Capital first saw them in 2022 or 2025. But JR Capital's reliance, for estoppel purposes, started with the Dun & Bradstreet record it purchased, which identified Newell's landscaping company by name, industry, SIC code, and founding year, with the 4132 number as its contact. ECF No. 34-6, Resp. No. 8; ECF No. 34-2, Robbins Dep. 21:14-16 ("We purchased full access to all businesses throughout America, and he was one of them.").

Newell protests that he never submitted data to Dun & Bradstreet, but that is beside the point. The estoppel defense does not require that he typed the entry himself. It requires that he operated the business the record describes, used the 4132 number for it, and then, during the very period of the texts, registered that business with two government agencies that published the same number as its public contact. Reliance as to the later texts is not "chronologically impossible." The 2023 registration and the February 13, 2024 MCS-150 both predate the final texts into 2025. ECF No. 33-5, ECF No. 33-7. Regardless, Newell held out the 4132 phone number as a business number as far back as 2016, and JR Capital relied on those representations.

For his part, Newell cites *Pro Source* as support, but that decision cuts against him. The Court described the circumstance that would leave it "strongly inclined to find estoppel" as a

14

number publicly associated with the plaintiff's business, followed by suit. 2025 WL 817485, at *5.

That is this case. The feature that saved the plaintiff in *Pro Source* is absent here: the plaintiff had removed his number from public business listings years before the calls began, and the Court faulted the defendant for not verifying that the association had lapsed. No lapse occurred here—anyone who checked the public record on the day of the first text, the day of the last, or today would find the 4132 number listed as Newell's business contact. He added it to two government registries while the texts were running and has left one up seventeen months into this lawsuit. The Court noted that the "passage of time weighs against" estoppel where public association has ended. *Id.* Where association has never ended, that logic points the other way.

Newell should be estopped from arguing that the 4132 number is residential. As discussed below, however, even if Newell gets by estoppel, summary judgment should be granted.

> 2.    ***The evidence does not support a finding that the 4132 number is residential.***
>
> a.    Newell has the burden of establishing the 4132 number is residential.

As an initial matter, Newell argues that, under the FCC's do-not-call rule, because the 4132 number is a wireless number, the 4132 number is presumed to be residential at the summary-judgment stage of litigation. But that's not right.

In "addition to the 'residential telephone subscriber' element, [the FCC's do-not-call rule] requires a plaintiff to prove that she registered her telephone number on the National Do-Not-Call Registry." *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020). "Allowing proof of registration on the National Do-Not-Call Registry to satisfy the 'residential telephone subscriber' element would violate the interpretive canon against surplusage." *Id*. What's more, although "the FCC stated that it would presume that wireless numbers registered on the

15

national do-not-call registry were residential numbers," the FCC also stated, "that in the case of an enforcement action, the complainant had the burden to prove that the wireless number was used as a residential number." *Lee v. Loandepot.com, LLC*, No. 14-CV-01084, 2016 WL 4382786, at *6-7 (D. Kan. Aug. 17, 2016).

In short, the presumption Newell invokes was the FCC's solution to a registry-administration problem, and it says so. Because determining a wireless subscriber's residential status is "fact-intensive," the FCC chose to "presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers'"—while warning, in the same paragraph, that "[s]uch a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14039 ¶ 36 (2003). By its own terms, the presumption lets a wireless number onto the registry; it does not excuse the "complaining wireless subscriber" from proving residential status once litigation puts it at issue.

For his part, Newell does not grapple with any of this. Instead, Newell makes two efforts to support his evidentiary-presumption argument. Neither is persuasive.

First, Newell tells the Court that, in *Krakauer v. Dish Network, LLC*, the Fourth Circuit addressed the evidentiary presumption. Opp. 18 (citing 925 F.3d 643, 658 (4th Cir. 2019)). Yet *Krakauer* does no such thing. It did not address this issue at all.

Second, Newell tells this Court that "JR Capital suggests in passing that, after *McLaughlin*, 606 U.S. 146, the FCC's residential presumption is no longer binding." *Id*. But JR Capital said no such thing. JR Capital noted only that, after *McLaughlin*, this Court is not bound by the FCC's determination that a cell phone *can be* residential. ECF No. 33 at 13 n. 4. As JR Capital noted,

however, JR Capital does not dispute that proposition here. JR Capital argues only that the number here is not residential. In any event, as discussed, the FCC's presumption is not an evidentiary presumption at all. *See Stevens-Bratton*, 437 F. Supp. 3d at 658; *Lee*, 2016 WL 4382786, at *6-7.

Newell's contrary reading—registration alone ends the inquiry—would let any business line be laundered into "residential" status by the unilateral act of registering it. That is not how the rule works. *See id*. Regardless, presumption or no, Newell's evidence is insufficient, as discussed below.

      b.      <u>This Court should reject Newell's sham declaration.</u>

As noted at the outset, Newell submits a declaration with his Opposition. This is the third version of Newell's story. And the Third Circuit's sham-affidavit doctrine exists for precisely this maneuver: a party "may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (quoting *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004)).

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez*, 503 F.3d at 253. A court may disregard such a declaration where the "affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction." *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988). The Third Circuit has affirmed doing exactly that in a TCPA case at summary judgment. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391-92 (3d Cir. 2017).

In this case, consider the following paragraphs in Newell's declaration.

**Paragraph 10 (the FMCSA entry).** The declaration swears Newell "entered the 4132 number in accordance with the [FMCSA] application's prompt for a cell phone number, not as the business number." That position originated in Newell's interrogatory answers. ECF No. 33-4, Resp. No. 10.

At his deposition, Newell was "carefully questioned on the issue," *Martin*, 851 F.2d at 706. He was shown the February 2025 listing displaying the 4132 number and the July 2025 listing displaying the 1170 number, and he never once mentioned a cell-phone prompt. He testified instead that "the wrong phone number was being displayed" and that he acted "to correct that to the business number." ECF No. 33-3, Newell Dep. 104:12-15; 105:6-9. Those words do not describe a deliberate, accurate entry in a separate cell-phone field. A correct entry is not "wrong," and moving the business number into a cell-phone field would "correct" nothing.

The documents corroborate the deposition, not the declaration. The listing's single carrier "Phone" field displayed the 4132 number on February 26, 2025, reflecting Newell's own February 13, 2024 MCS-150 filing, and displayed the 1170 number, which Newell himself describes as the business number, after his July 23, 2025 filing. ECF No. 33-7, ECF No. 33-11. The blank form and instructions Newell filed establish only that the "Principal Business Phone Number . . . may be a cell phone number," ECF No. 34-4, Item 13—which says nothing about which field the 4132 number occupied. And regardless of which internal MCS-150 field Newell claims to have used, the public SAFER profile displays a single, unlabeled "Phone:" entry next to Newell Contracting's name. ECF No. 33-7. That is what any member of the public would see. A declaration that revives an interrogatory position the declarant abandoned under oath, in the face of the only documents in the record, meets the definition of a sham. *Jiminez*, 503 F.3d at 254 (affidavit "entirely unsupported by the record" may be disregarded).

**Paragraph 12 ("I respond from the 1170 number").** The declaration states a categorical practice: when business contacts reach him on the 4132 number, "I respond from the 1170 number." The deposition told a different story.

When counsel asked directly whether he would "hang up and call them back using the 1170 number," Newell answered, "No, what I meant to say is," and then offered a single example rather than confirming the rule. ECF No. 33-3, Newell Dep. 54:10-24. He also testified that he *uses* the 4132 number "for Newell Contracting" as often as "a few times a week," and up to "many times in a week." ECF No. 33-3, Newell Dep. 55:4-8; 56:6-8. The declaration takes testimony Newell qualified at the time and presents it as an absolute, while leaving out the testimony that cuts the other way.

**Paragraph 6 ("not held the 4132 number out to the public").** The declaration swears that "[s]ince October 2018, I have not held the 4132 number out to the public as a business telephone number." Newell admitted at deposition that anyone who looks his business up on the Attorney General's public registry "would . . . get that number," ECF No. 33-3, Newell Dep. 56:20-57:3, and that the 4132 number is "the number that would appear for you to -- yes, for the business." *Id.* 51:10-19.

That public listing—created by Newell's own registration, *id.* 44:4-45:4—has displayed the number continuously, including on May 11, 2026. ECF No. 33-6. His own February 2024 federal filing did the same until he changed it mid-suit. ECF No. 33-7, ECF No. 33-11. A sworn generality cannot erase sworn specifics.

**Paragraphs 7 and 11** restate, under oath, the same selective characterizations addressed in the chart included in the background section of this reply. Paragraph 7 describes the Dun & Bradstreet record with its industry, SIC, and founding-year fields omitted. Paragraph 11 offers an

19

"as soon as I became aware" correction that in fact came months into this lawsuit, while the other public listing remains to this day.

The declaration, in short, "indicates only that the affiant cannot maintain a consistent story." *Jiminez*, 503 F.3d at 253. The Court should disregard paragraphs 6, 7, and 10 through 12 and decide this motion on Newell's deposition testimony and the documents. The remaining paragraphs, the consumer-plan and billing details of ¶¶ 2-3, can be taken as true. As discussed, though, those facts describe Newell's admitted business line just as accurately, and raise no genuine dispute.

In his response, Newell cites *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314 (3d Cir. 2014). Yet that case does not rescue the declaration. *Lupyan* held that a single, consistent, personal-knowledge denial is sufficient to defeat a presumption at summary judgment — there, a plaintiff's sworn statement that she never received a letter her employer claimed to have mailed. The court was clear about the predicate: the plaintiff had made only one statement on the point, it had never changed, and she was the only person who could know whether the letter arrived. *Lupyan* had nothing to say about a declarant who offers a third account after two prior ones under oath, because that circumstance did not arise.

The sham-affidavit doctrine under *Jiminez* addresses precisely that circumstance. *Lupyan* and *Jiminez* are complementary, not in conflict: *Lupyan* answers whether consistent self-serving testimony defeats a summary judgment presumption (yes), while *Jiminez* answers whether a declaration that contradicts the declarant's own sworn deposition can manufacture a genuine dispute (no). Newell's declaration is governed by *Jiminez*, not *Lupyan*.

Having discussed the sham nature of Newell's declaration, JR Capital concludes below with a recap of the record evidence.

20

c.    The evidence does not support a finding that the 4132 number is residential.

As discussed in JR Capital's opening memorandum, courts analyzing whether a wireless number is residential have considered "(1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).[7]

Here, the 4132 number was the sole contact number for Newell's landscaping business for years. ECF No. 33-3, Newell Dep. 19:3-11. It remains in business use today, by Newell's own account "a few times a week," up to "many times in a week." *Id.* 55:4-8; 56:6-8. It is the number the Commonwealth of Pennsylvania publishes to anyone who looks up Newell Contracting: "the number that would appear for you to -- yes, for the business." *Id.* 51:17-19; ECF No. 33-6. It stayed on Newell's federal motor-carrier listing, under his own February 13, 2024 filing, until he removed it months into this lawsuit. ECF No. 33-7, ECF No. 33-11. And it is the number a national business database supplied to JR Capital in a record describing Newell's landscaping business, complete with industry, SIC code, and founding year. ECF No. 34-6, Resp. No. 8.

Newell's answer to the public listings is that the forms asked for a personal number. For the FMCSA, that position was abandoned at deposition and is contradicted by the documents. As set out above, it cannot survive the sham-affidavit doctrine. For the Attorney General registry,

---

[7] In *Chennette*, the Ninth Circuit suggested it was adopting a burden-shift like the one Newell argues for here. *See* 50 F.4th at 1225–26. In doing so, however, the Ninth Circuit did not address the full text of the FCC's order. That's not surprising, though. In that case, the defendant did not argue that the plaintiff had the burden. The defendant argued only that cell phones used for residential and business purposes are never residential phones full stop. *See id.* at 1223. Here, as noted, JR Capital makes no such argument.

21

even Newell's own account concedes the result: whatever field he typed it into, the number he supplied is the one the Commonwealth publishes as his business's contact. He has known it, and he has left it there through fourteen months of this litigation.

As discussed, courts considering whether a number is residential or business look to how the plaintiff held the number out. The "holding out" test is objective—it measures what the public sees, not what internal field label a registrant used. *See Shelton v. Target Advance LLC*, 2019 WL 1641353, at *5 (E.D. Pa. Apr. 16, 2019) (finding holding out based on what "the world" observed on the plaintiff's website).

Here, a member of the public searching the Attorney General's contractor registry—or a lender consulting a business database—encounters a single, undifferentiated number displayed next to Newell Contracting's name. That is the number they are told to call. Whether Newell supplied it in a field labeled "personal" or "cell phone" is invisible to anyone who looks; the public output is identical either way. A registrant who knows his registration publishes a number as his business's contact, and keeps it there, is holding that number out, regardless of what the internal field was labeled. Newell's own authority found holding out on letterhead and business cards. Two government registrations plus a commercial business database is a stronger showing, not a weaker one. *See* Opp. 25 (discussing *Bank v. Indep. Energy Grp. LLC*).

Meanwhile, Newell dismisses as "irrelevant" the fact that everything he points to about the 4132 number—wireless service, an individual consumer plan, his own name on the account, billed to his home address—is equally true of the 1170 number he concedes is a business line. Opp. 19; ECF No. 34-6, Resp. No. 8 (all three of Newell's numbers share those features). It is not irrelevant.

It shows that for a one-man, home-based contractor, those characteristics do not separate a residential line from a business one. Strip them out, and the only thing left distinguishing the 4132

22

number from Newell's admitted business line is his own assertion—an assertion contradicted by his deposition testimony, his public listings, and years of documented business use. A genuine dispute of material fact requires evidence on which a reasonable jury could find for the nonmovant. Newell's declaration is now the third version of his account. He cannot manufacture a fact dispute by providing sham testimony.

The cases Newell cites do not help him. *Thomas* and *Connor* were pleading-stage decisions, as Newell's own parentheticals reflect: facts "as alleged" and allegations "sufficient" on a Rule 12(b) motion. Opp. 24-25. *Mattson* and *Smith* denied summary judgment on usage-percentage disputes where no public business listing was in evidence. Here the listings are undisputed, government-published, and in the Attorney General's case still live. Opp. 28. And Newell's description of *Shelton v. Target Advance*, where the court granted summary judgment for the defendant because the record showed the plaintiff "holding [the number] out to the world as a business number on his website," Opp. 27, describes this case and then some: Newell's number was held out on two government registries, one of which he has maintained through the suit itself.

Newell's timing argument also fails. He says the phone number's character is assessed at the time of the challenged calls. Yet during the relevant period—November 2022 to February 2025—the Dun & Bradstreet record supplied the number to JR Capital (2022), Newell registered Newell Contracting with the Attorney General listing the 4132 number (2023), and he filed his February 13, 2024 MCS-150 keeping it on his federal listing. ECF No. 34-6, Resp. No. 8; ECF No. 33-5, ECF No. 33-6, ECF No. 33-7. In *Pro Source*, the plaintiff had removed his number from public business use five years before the calls began. Here, Newell was adding his to two public registries while the texts were arriving.

In sum, even if Newell is not equitably estopped from arguing the 4132 number is residential, the evidence does not support that claim. Summary judgment should be granted.

## Conclusion

For these reasons and those in JR Capital's opening memorandum, the Court should grant summary judgment in JR Capital's favor on all three counts.

Dated: July 15, 2026                    Respectfully submitted,

    /s/ Scott J. Helfand
Scott J. Helfand (Pro Hac Vice)
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Scott.Helfand@huschblackwell.com
Tel: 312-341-9876
Fax: 312-655-1501

Laura K. Conroy
PA State Bar No. 206797
**HUSCH BLACKWELL LLP**
1801 Pennsylvania Avenue, NW
Suite 1000
Washington, D.C. 20006-3606
Laura.Conroy@huschblackwell.com
Tel: 202-378-5388
Fax: 202-378-2319

*Attorneys for Defendant*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically upon counsel of record by the filing of said document through the Court's electronic filing system on July 15, 2026.

By: */s/ Scott J. Helfand*
Scott J. Helfand