**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOUREY NEWELL**, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **JR CAPITAL, LLC** <br><br> *Defendant*. | Case No. <br><br> 2:25-cv-01419-GAM |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Consistent with the Court's *Policies and Procedures*, which permit sur-reply briefs without leave of Court, Plaintiff Jourey Newell submits this short sur-reply to address three discrete points raised in JR Capital's Reply (ECF No. 35).

**I. The Reply Effectively Concedes That the Caller ID Regulation Applies to Business and Residential Numbers Alike.**

JR Capital's Reply devotes nearly all of its energy to what it characterizes as record evidence of business use of the 4132 number. What the Reply does not do is engage with the textual showing in Newell's Opposition that 47 C.F.R. § 64.1601(e) imposes its caller identification duty on "[a]ny person or entity that engages in telemarketing," on every "telemarketing" call, without regard to the character of the called line. (Opp'n, ECF No. 34, at 8-14.) The regulation says "residential" nowhere, even though the same agency, in the same 2003 rulemaking, wrote "residential telephone subscriber" into the neighboring do not call rules underlying Counts I and III. That drafting pattern was deliberate, and the Reply offers no answer to it. Summary judgment on Count II therefore fails at the threshold, whatever the Court makes of the residential/business dispute.

Left without a textual argument, JR Capital's best remaining argument is judicial

1

estoppel. It does not carry JR Capital over the finish line. Judicial estoppel requires a position "irreconcilably inconsistent" with one previously asserted. *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018). At the pleading stage, Newell argued that § 64.1601(e) is a regulation prescribed under § 227(c) and is therefore enforceable through § 227(c)(5)'s private right of action, and he accurately quoted § 227(c)(1)'s statement of purpose in doing so. He never argued, and never conceded, that the regulation's protections are limited to residential lines, let alone (as JR Capital seems to intimate) that a statement of purpose somehow limits who can bring a claim. Those are different propositions. A regulation may be adopted with a principal class of beneficiaries in mind and still confer its protections more broadly, because "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 653 (2020). Invoking the purpose that motivated a rule is fully consistent with reading the rule to mean what it says. There is no inconsistency, let alone an irreconcilable one asserted in bad faith, and judicial estoppel does not apply.

JR Capital's argument from § 227(c)(5) fares no better. The private right of action extends, by its terms, to "[a] *person* who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The Communications Act, of which the TCPA is a part, defines "person" to include "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Partnerships, trusts, and corporations cannot maintain residential telephone lines at all. If Congress had intended to confine the § 227(c)(5) cause of action to residential telephone subscribers, it would have used that term, which it deployed elsewhere in the very same section. *See* 47 U.S.C. § 227(c)(3) (authorizing a do not call database

2

of "residential subscribers"). The same words in the same statute are presumed to carry the same meaning, and different words are presumed to carry different meanings.

Nor does the omission of the words "or entity" from § 227(c)(5) suggest a residential limitation. Subsection (b) needed those words because subsection (b), unlike subsection (c), *explicitly protects lines that are not held by "persons" at all*. Section 227(b)(1)(A)(i), for example, prohibits certain automated calls to *emergency lines*, including 911 lines and the emergency lines of public safety agencies. Those lines belong to *government entities*, which do not fall within § 153(39)'s definition of "person." The phrase "person or entity" in subsection (b)'s private right of action, § 227(b)(3), thus does real work in ensuring that governmental victims of the conduct subsection (b) prohibits can sue, and it is not surplusage there. Subsection (c) contains no comparable protections for governmental emergency lines, so Congress had no reason to add "entity" to § 227(c)(5). The statutory word that matters in § 227(c)(5) is "person," and that word is explicitly defined in the statute, and that word is defined broadly, encompassing corporate plaintiffs who by definition have no "residence." The drafting history JR Capital invokes confirms Newell's reading, rather than undermining it.

## II. There Is No Inconsistency in Newell's Testimony, and the Reply's Resort to Weighing Evidence Confirms That Summary Judgment Must Be Denied.

The Reply's factual argument rests on claimed inconsistencies that do not exist. Newell's discovery responses, his deposition testimony, and his declaration all establish the same account. Both the FMCSA registration and the Pennsylvania Attorney General contractor application asked separately for a business telephone number and a personal or cell phone contact number, and Newell placed the 4132 number in the personal contact fields while placing his actual business line, the 1170 number he has held since 2018, in the business fields. (Opp'n at 5, 26-28; Ex. 4 at 45:9-12, 49:10-12, 55:22-23 ("I don't put that 4132 number out there as a business

number for people to contact.").) When Newell became aware that an online FMCSA listing was nonetheless displaying the 4132 number publicly, he corrected it. (Ex. 4 at 110:3-6.) He is in the process of doing the same with the Attorney General listing. The sham affidavit doctrine applies only where sworn testimony contradicts the witness's own prior testimony without explanation. Newell's declaration contradicts nothing. It says what his deposition and discovery said.

The additional deposition excerpts attached to the Reply as Exhibit L change nothing. That a handful of personal calls on a personal cell phone over a multi-year period touched on work-adjacent matters, including calls from Newell's mother and aunt on their employer's phones and calls to a local building supplier about a home improvement project, is unremarkable. People occasionally use their personal cell phones in connection with their work, to say nothing about everyday communications with friends and coworkers. The FCC's presumption that a wireless number registered on the Do Not Call Registry is residential expressly accommodates wireless numbers used partially for business purposes. *See* 18 FCC Rcd. 14014, 1403-39 (2003) ("Congress has indicated its intent to provide significant protections under the TCPA to wireless users. . . . Nextel states we should define "residential subscribers" to mean "telephone service used primarily for communications in the subscriber's residence." However, Nextel's application would result in "[a]t most, the Commission [having the] authority to regulate solicitations to wireless subscribers in those circumstances where wireless service actually has displaced a residential land line, and functions as a consumer's primary residential telephone service.").

Measured against the evidence that actually bears on the inquiry, the overall volume of calls on the line, the absence of any holding out, the individual consumer family plan billed to Newell's home, and the presence of a separate dedicated business line, a reasonable jury could readily find that the 4132 number is residential. More fundamentally, the Reply's approach

proves Newell's point. JR Capital asks the Court to weigh a few work-adjacent calls against the rest of the record, discount Newell's sworn explanations, and draw every inference in JR Capital's favor. That is the opposite of the Rule 56 standard. The evidence of the nonmovant "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Credibility determinations and the weighing of evidence are jury functions. *Id.* A movant reduced to arguing about how much weight competing evidence should receive has conceded that a genuine dispute exists.

### III. On Estoppel, the Reply Makes Newell's Argument for Him.

Finally, the Reply's reliance on *Shelton v. Pro Source Lending Grp. LLC*, No. 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) (McHugh, J.), backfires. In *Shelton*, the plaintiff had himself posted his number *on his own business website* (unlike here), and roughly five years had passed since the number returned to residential use. This Court declined to find estoppel, reasoning that the defendant "could have checked whether Plaintiff's number was still listed on business websites or on Google as affiliated with his business before proceeding," and that the defendant could not reasonably rely on how the plaintiff "engaged with the public five years earlier." *Id.* at *5. The onus, the Court explained, is on the caller to ensure the number it dials is not protected.

That reasoning decides this case against JR Capital. Here, unlike in *Shelton*, the 4132 number was *never on any business website* Newell created. And the data JR Capital did use, even assuming *arguendo* it was obtained from some instance of "holding out," was just as stale as the "holding out" this Court found insufficient in *Shelton*. JR Capital obtained the number through a bulk Dun & Bradstreet purchase in 2022, a purchased record that listed Newell's personal name as the "Company Name" and a residential address, and that predated the very existence of Newell Contracting LLC and both government registrations the Reply now features. What's

more, it appears that the 2022 data utilized data points as old as 2017. JR Capital never consulted its internal or national do not call databases, never ran line identification, never verified anything, and kept calling for years off that geriatric record, even after Newell's August 2023 email told JR Capital directly that the number was his personal cell phone. In other words, just like the defendant in *Shelton*, it could have checked whether the number was a business number before calling it, but it didn't. It then continued to call after the Plaintiff set the record straight, in writing.  If a defendant cannot reasonably rely on a plaintiff's own five-year-old *public* holding out without checking as in *Shelton*, it certainly cannot reasonably rely on a third-party data broker's stale record that the plaintiff had no role in creating, that JR Capital never once verified, and which the Plaintiff explicitly disclaimed in writing. Under *Shelton*'s own logic, the estoppel defense fails.

## Conclusion

For the foregoing reasons, JR Capital's motion for summary judgment should be denied.

RESPECTFULLY SUBMITTED AND DATED this July 22, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Pa. Bar #333687
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

6

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this July 22, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.