**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOUREY NEWELL,** ***individually and on behalf of all others similarly situated,*** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-1419** |
| | : | |
| **JR CAPITAL, LLC** | : | |

**McHUGH, J.** **August 17, 2026**

**MEMORANDUM**

This is an action involving caller identification ("caller ID") regulations promulgated under the Telephone Consumer Protection Act ("TCPA"). After receiving unsolicited telemarketing text messages from Defendant JR Capital, LLC, Plaintiff Jourey Newell sued under 47 U.S.C. § 227(c), asserting violations of a regulation establishing caller ID requirements for telemarketers, 47 C.F.R. § 64.1601(e)(1). In denying JR Capital's motion to dismiss the caller ID count of the amended complaint, I concluded that a private cause of action exists, the applicable regulation covers texts, and Newell adequately pled that the texts did not contain the required caller ID information. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 574 (E.D. Pa. 2025) (McHugh, J.). Following a preliminary pretrial conference with counsel, however, I identified a threshold issue: whether the subject phone number was a residential or business number when Newell received the texts.

Discovery on that issue proceeded, and JR Capital now moves for summary judgment. Because the record shows that Newell used the subject number as a business number during the relevant period, and because each of his claims requires the number to be residential to have standing, they all fail as a matter of law. Absent a genuine factual dispute, JR Capital is entitled to summary judgment. But even if Newell could raise such a dispute, equitable estoppel is

warranted here to preclude him from opportunistically recharacterizing the number as residential after years of holding it out to the public as a business line. I will thus grant JR Capital's motion.

## I. Factual Record

### A. Newell's Business

The phone number at which Newell received the disputed texts ends in 4132. In 2016, Newell launched a home-based landscaping business called Newell Landscaping, which he operated as a sole proprietorship. Newell Dep. 16:4–6, 19:14–16, 23:13–16, 37:7–13, ECF 33-3. When he started that business, Newell used the 4132 phone number as the company's sole contact number. *Id.* 19:3–7. Two years later, he acquired an additional phone number ending in 1170. *Id.* 19:8–11. At his deposition on May 13, 2026, Newell testified that after he acquired the 1170 phone number, "there would have been incidental calls on the 4132 number," but that "the primary business number . . . for which [he] would put out to people to ask . . . if they wanted work done" was the 1170 phone number. *Id.* 19:19–20:10; *see id.* 18:4–7 ("I have always maintained a business phone number, which is [the 1170 number]. From time to time, there may be an incidental call [to the 4132 number] that's related to business.").

In October 2023, Newell formed a successor entity, Newell Contracting LLC, which he runs as a home-based company that offers contracting services in addition to landscaping. *Id.* 16:2–3, 34:15–19, 37:7–13. Though he acquired the 1170 number in 2018, Newell still uses the 4132 number in connection with Newell Contracting. *Id.* 52:14–19 ("Q. Now, you testified earlier that you have *made and received calls or texts related to Newell Contracting on the 4132 number*, correct? A. Yes.") (emphasis added). Newell testified that, although his usage of the 4132 number varies, "[i]t could be a few times a week," *id.* 55:6–8, and he agreed it was "fair" for defense counsel to characterize his use as sometimes rising to "many times in a week," *id.* 56:6–8.

Newell insisted, however, that he does not "put that 4132 number out there as a business number for people to contact," *id.* 55:22–23; rather, he contends, people unwittingly contact that number under limited circumstances outside his control. He explained that longtime customers from his Newell Landscaping days contact the 4132 number, *id.* 54:1–7, 17–24, or family members share the 4132 number with prospective clients, who then contact him on that line, *id.* 55:16–23, 56:9–14. Asked whether he would call those individuals back using the 1170 number, Newell responded, "No, what I meant to say is," and then clarified that his example involving longtime customers demonstrated what he meant by "incidental" calls to the 4132 number. *Id.* 54:17–24.

After launching Newell Contracting, Newell registered that business as a home improvement contractor with the Pennsylvania Attorney General's Bureau of Consumer Protection. *Id.* 44:4–11; *see* ECF 33-5 (sample application form). In submitting that online application, he provided a street address and mailing address for the company. Newell Dep. 47:11–17. In referencing a sample application form at Newell's deposition, defense counsel asked Newell whether he put the 4132 number on the form's "business telephone number" line, *id.* 48:20–23, to which Newell responded that he "would have put the 1170 phone number for the business telephone number," *id.* 48:24–49:2. But as recently as May 11, 2026, the internal search engine on the Attorney General's website enabling members of the public to look up Newell Contracting displayed the company's name, state registration number, business mailing address, and the 4132 number. *Id.* 50:6–51:9; ECF 33-6 (screenshot of internal search engine dated May 11, 2026, displaying the 4132 number as the company's phone number). When pressed on this issue, Newell confirmed that "if you use the search engine, that's the number that would appear for you to – yes, for the business," Newell Dep. 51:10–19, 58:18–24, and responded, "I suppose so," to defense

counsel's question that "someone who looked you up on the Attorney General's website would also get [the 4132] number?", *id.* 56:20–57:3.

On February 13, 2024, Newell registered Newell Contracting as a "carrier" with the Federal Motor Carrier Safety Administration ("FMCSA"), a federal agency within the U.S. Department of Transportation that regulates and oversees commercial motor vehicles. *Id.* 96:20–97:17; Feb. 26, 2025 FMCSA Company Snapshot, ECF 33-7. In submitting that online application, he provided the same street address and mailing address for the company as he did for the home improvement registration. Newell Dep. 101:19–102:2–9. A screenshot of the company's online FMCSA profile dated February 26, 2025,[1] provides that "[t]he information below reflects the content of the FMCSA management information systems as of 02/25/2025," lists the registration status as "active," and displays the 4132 number as the company's phone number. Feb. 26, 2025 FMCSA Company Snapshot at 2–3; Newell Dep. 101:16–18 ("Q. Okay. And it lists the phone number as [the 4132 number]; is that correct? A. That's what's listed here, yeah."). The website advises carriers that they can submit form MCS-150 if they "would like to update the following ID/Operations information" displayed online. Feb. 26, 2025 FMCSA Company Snapshot at 2.

A subsequent screenshot dated July 28, 2025, provides identical information except for one notable change: it lists the 1170 number as the company's phone number. July 28, 2025 FMCSA Company Snapshot, ECF 33-11. That screenshot also identifies July 23, 2025, as the "MCS-150 Form Date," meaning Newell, as the carrier, submitted a new form with the 1170 number on that

[1] Newell filed his original complaint in Pennsylvania state court on February 13, 2025, after which JR Capital timely removed the action to this Court. *See generally* Notice of Removal, ECF 1.

date. *Id.* Newell testified that he made this change "when [he] became aware that the wrong phone number was being displayed." Newell Dep. 104:7–15; *see id.* 105:6–9, 110:3–6, 114:12–15.

**B. JR Capital's Business**

Defendant JR Capital, LLC finances businesses nationwide, including those that use its financing to purchase equipment. Robbins Dep. 11:2–17, 17:22–24, 18:1–2, ECF 33-1. On September 29, 2022, JR Capital obtained the 4132 number as part of a one-year subscription to a commercial database it purchased from Dun & Bradsheet, Inc., a company that provides businesses' contact information. *Id.* 14:4–8, 18:16–20, 20:2–5, 29:1–2. This subscription included contact information for 5,000 businesses, including Newell's business. Order Form, ECF 33-2. In addition to providing the 4132 number under the monikers "Direct Phone" and "Phone 2," the database supplied a code classifying Newell's company as a landscaping business, identified the business under the name "Jourey Newell," and listed the business's address. Robbins Dep. 17:7–13, 29:1–5; Def.'s Suppl. Resp. to Pl.'s Interrog. No. 8, ECF 33-8 at 5. JR Capital used this information when it sent the telemarketing text messages to the 4132 number that led to this action.

**C. Events Giving Rise to This Action**

Between November 4, 2022, and February 27, 2025, Newell received five telemarketing text messages sent from JR Capital to the 4132 number, advertising financing for business equipment and vehicles. ECF 33-9; Newell Dep. 107:15–108:22; Newell Decl. ¶ 14, ECF 34-8. Every text included a link to JR Capital's website, jrwcap.com/equipment, and four texts included a phone number to contact. ECF 33-9. None of the messages included JR Capital's name. *Id.* The caller ID transmitted alongside the texts included the message's geographic origin but did not include JR Capital's name nor the hired telemarketer's name. Am. Compl. ¶¶ 24–26, ECF 10; Newell Decl. ¶ 14. After receiving the first two texts, Newell emailed JR Capital's general email

address on August 7, 2023, requesting JR Capital to stop sending texts to his "mobile telephone number,"[2] and to place him on its internal Do Not Call List. Aug. 7, 2023 Email, ECF 33-10; Newell Decl. ¶ 14. However, JR Capital sent Newell three additional texts after that request. ECF 33-9. Each of those texts informed Newell that he could reply "stop" to opt out of receiving further text messages. *Id.* at 4–5. JR Capital's corporate designee explained at his deposition that the company maintains an internal procedure to honor opt-out requests made outside of the text reply channel but that it missed Newell's email due to "human error." Robbins Dep. 32:20–33:8.

## II. Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III. Discussion

Newell asserts three TCPA violations against JR Capital, including violations of (1) a regulation prohibiting contacting certain phone numbers registered on the National Do Not Call Registry, 47 C.F.R. § 64.1200(c)(2) (Count I); (2) a regulation establishing caller ID requirements for telemarketers, 47 C.F.R. § 64.1601(e)(1) (Count II); and (3) the TCPA's prohibition on contacting phone numbers following a reasonable opt-out request, 47 C.F.R. § 64.1200(d)(3) (Count III). To determine whether Newell has standing to bring these claims under 47 U.S.C. § 227(c)(5)'s private cause of action based on the texts sent to the 4132 number, it is necessary to

[2] Newell also referred to the 4132 number as "my mobile phone" and "my cellular telephone number." ECF 33-10.

decide (a) whether his claims require that number to be a residential number and (b) whether discovery revealed that number to be a residential or business number when he received the texts.

**A. Each of Newell's claims requires that the 4132 number is a residential number.**

The parties do not dispute that the regulations on which Newell bases his claims in Counts I and III each require the 4132 number to be a residential number. *See* Pl.'s Opp'n, ECF 34 at 8 ("The do not call rules underlying Counts I and III are expressly and repeatedly confined to residential subscribers[.]"); Def.'s Mot. for Summ. J., ECF 33 at 14 ("There is no dispute that the DNC Claim [Count I] requires a residential number. Nor is there any dispute that the Internal DNC Claim [Count III] requires a residential number."). This makes sense given that the regulations underlying both of those claims expressly reference "residential telephone subscribers" and make no mention of business numbers. *See* 47 C.F.R. 64.1200(c)(2) (prohibiting telephone solicitations to "[a] residential telephone subscriber who has registered his . . . telephone number on the national do-not-call registry"); *id.* § 64.1200(d)(3) (requiring telemarketers to "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.").

But the parties contest whether Newell's claim in Count II, which asserts a violation of 47 C.F.R. § 64.1601(e)(1), must meet that same requirement to have standing under § 227(c). It must. As I previously observed, the Federal Communications Commission ("FCC") promulgated that regulation pursuant to its delegated statutory authority under § 227(c), which Congress enacted "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Newell*, 791 F. Supp. 3d at 576–77 (quoting 47 U.S.C. § 227(c)(1)); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) ("Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."); *see also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) ("§ 227(c) and its implementing regulations

apply only to 'residential' telephone subscribers"). In concluding that a private cause of action exists under § 227(c) for violations of 47 C.F.R. § 64.1601(e), I explained that § 64.1601(e)'s caller ID "requirements were clearly considered by FCC to be a method to protect the privacy rights of residential telephone consumers, positioning it in the heart of § 227(c)." *Newell*, 791 F. Supp. 3d at 581. And I further concluded that "[a]s to § 64.1601(e), the 1992 TCPA Order clearly demonstrates that the caller [ID] requirements are 'network technologies' fitting squarely within § 227(c)'s 'methods or procedures' for protecting residential consumer privacy." *Id.* at 582 (quoting TCPA Rep. & Ord., 7 FCC Rcd. 8752 (FCC No. 92-443) (Oct. 16, 1992) at ¶¶ 16–17)).

Furthermore, because "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), and because "courts must look to the enabling statute to find the source of a right of action to enforce regulations," *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004), it follows that the private cause of action for violating the FCC's caller ID requirements must adhere to and enforce § 227(c)'s directive, which aims to protect residential (*i.e.*, individual or consumer) privacy rights. Other courts agree. *See Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 377 (E.D. Mich. 2025) ("[C]aller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers. That places § 64.1601(e) in the heartland of § 227(c)[.]"); *Novia v. Mobiz, Inc.*, No. 25-1036, 2026 WL 752181, at *5 (D. Mass. Mar. 17, 2026) ("[T]he expansive language of Section 64.1601(e) pairs with Section 227(c)'s broad purpose to protect residential telephone subscribers' privacy rights."); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 25-5671, 2026 WL 177598, at *7 (W.D. Wash. Jan. 22, 2026) (same).

Therefore, because Congress expressly "created a private cause of action 'based on a violation of the regulations prescribed under [§ 227(c)],'" *Newell*, 791 F. Supp. 3d at 582 (quoting 47 U.S.C. § 227(c)(5)), and 47 C.F.R. § 64.1601(e) implements that congressional mandate, a plaintiff seeking to bring a claim under that statutory scheme must prove the subject number was residential. It bears mentioning that businesses have sued under § 227(b)(3) and its implementing regulations—not § 227(c)—to enforce their TCPA-protected privacy rights. *See* 47 U.S.C. § 227(b)(3) ("A person or *entity* may . . . bring . . . an action based on a violation of *this subsection or the regulations prescribed under this subsection* . . .") (emphasis added); *e.g., PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 4 (2019) (health care practice sued companies alleging they violated § 227(b)(1)(C)); *Robert W. Mauthe, M.D., P.C. v. Nat'l Imaging Assocs., Inc.*, No. 17-1916, 2018 WL 1960945 (E.D. Pa. Apr. 25, 2018), *aff'd sub nom.*, *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246 (3d Cir. 2019) (similar); *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, 307 F. Supp. 3d 402 (W.D. Pa. 2018). Thus, each of Newell's claims requires the 4132 number to be residential to have standing under § 227(c).[3]

**B. The 4132 number was a business number at the time Newell received the texts.**

With those legal principles in mind, the dispositive question is whether the 4132 number was a residential or business number when Newell received JR Capital's telemarketing texts.

*1. Equitable Estoppel*

Even though JR Capital contends the factual record establishes that the 4132 number was a business number, entitling it to summary judgment, it separately insists the Court need not

[3] Because I conclude that all of Newell's claims require the 4132 number to be a residential number, I do not reach JR Capital's judicial estoppel defense. *See* Def.'s Mot. for Summ. J. at 14–16; Def.'s Reply Br., ECF 35 at 7–9; *see also Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 155 n.16 (3d Cir. 2004).

address the merits because Newell should be equitably estopped from pursuing claims premised on the number being residential. Def.'s Mot. for Summ. J. at 19–22; Def.'s Reply Br. at 13–15. JR Capital reasons that because Newell included the 4132 number in two government registrations during the period he received the texts, he did not remove that number from those public profiles until many months after filing suit, and he has never stopped using the 4132 number for business purposes, it was necessarily reasonable for JR Capital to rely on those public representations during the period it sent the texts in question.

Equitable estoppel "arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Zitelli v. Dermatology Educ. & Research Found.*, 633 A.2d 134, 139 (Pa. 1993) (quoting *In re Est. of Tallarico*, 228 A.2d 736, 741 (Pa. 1967)). As I have previously explained, "[t]he party asserting equitable estoppel must show '(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment.'" *Shelton v. Pro Source Lending Grp. LLC*, No. 24-4394, 2025 WL 817485, at *5 (E.D. Pa. Mar. 14, 2025) (McHugh, J.) (quoting *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)); *see Fredericks v. Comm'r*, 126 F.3d 433, 438 (3d Cir. 1997).

The parties spend significant time in their papers addressing my opinion in *Pro Source*, so it is worth revisiting how I analyzed the issue of equitable estoppel in that TCPA case. There, I stated that I would have been "strongly inclined to find estoppel" if the plaintiff, who had previously used the subject number for business and personal uses, removed "the number from his business website and then immediately sued" the defendant or another telemarketer. *Pro Source*, 2025 WL 817485, at *5. However, the plaintiff represented that at the time he received the calls,

it had been five years since he used the number at issue for business purposes or the number appeared on any business website. I therefore reasoned that if discovery confirmed the plaintiff's account, his position could not easily be deemed a misrepresentation. *Id.* Moreover, I explained that the defendant, who bore the burden of checking whether the number was listed on the National Do Not Call Registry before it contacted the number, would face an uphill battle contending it could reasonably rely on how the plaintiff engaged with the public five years earlier. *Id.* Based on the chronology of events alleged, and without the benefit of a fully developed record, I held that "[t]he passage of time weigh[ed] against a finding of estoppel." *Id.*

Newell's case differs from *Pro Source* in material ways that warrant finding estoppel. In *Pro Source*, the plaintiff averred that he had not held the number at issue out to the public as a business number nor featured it on his business website for five years. Here, in contrast, Newell included the 4132 number in two government registrations *during the period he received multiple texts*. ECF 33-7; ECF 33-11. Newell counters, without providing evidentiary support, that he entered the number in fields "designated for a personal or cell phone contact," Pl.'s Opp'n at 32, but even if this were true, those two sites displayed the 4132 number as a business number to the public, including for months after Newell sued JR Capital. And as to the Attorney General listing specifically, Newell conceded at his deposition that members of the public would see only the 4132 number as the business's contact number if they used the website's internal search engine. Newell Dep. 51:10–19, 56:20–57:3, 58:18–24. That admission occurred just three months ago, and more than a year into this action. More recently, on July 22, 2026, Newell again acknowledged that the number had not yet been changed on the profile. *See* Pl.'s Sur-Reply, ECF 36 at 4 ("When Newell became aware that an online FMCSA listing was nonetheless displaying the 4132 number

publicly, he corrected it. . . . He is in the process of doing the same with the Attorney General listing.").

As to the FMCSA listing, the "Phone" field displayed the 4132 number on February 26, 2025, ECF 33-7, two weeks after Newell filed his original complaint, *see* ECF 1; Newell Dep. 101:16–18, reflecting the information he inputted into the initial application. Then, on July 28, 2025, four months into this litigation, Newell submitted a new form with the 1170 number, and the website has since displayed that number as the company's contact number. ECF 33-11. Newell claims the FMCSA registration is a "compliance obligation, not a marketing channel," Pl's Opp'n at 27, but regardless of whether he intended to attract customers through that listing, it displayed the 4132 number next to the moniker "Phone," ECF 33-7, which is what any member of the public—including JR Capital—would see and rely on if they then sought to contact Newell Contracting for business purposes. His mid-litigation change indicates that, regardless of Newell's purported intent when he submitted the initial application, he recognized the 4132 number was being held out to the public as his business's contact number on a federal government website for more than seventeen months.

In stark contrast to the plaintiff in *Pro Source*, Newell still uses the 4132 number for business, Newell Dep. 52:14–19 ("Q. Now, you testified earlier that you have *made and received calls or texts related to Newell Contracting on the 4132 number*, correct? A. Yes."), with his usage sometimes rising to "many times in a week," *id.* 56:6–8. Curiously, he claims to not "put that 4132 number out there as a business number for people to contact," *id.* 55:22–23, but his continued business use of the number, in addition to the number's presence on the public listings throughout this case, undermine this stance and support finding the misrepresentation element is met here.

Newell also claims that his August 2023 email described the 4132 number as his "personal cell phone," Pl.'s Opp'n at 5–6, and represented to JR Capital that it was "his residential number," *id.* at 33, but the email says no such thing. He referred to the 4132 number as "my mobile phone," "my mobile telephone number," and "my cellular telephone number." ECF 33-10. None of those descriptions shed light on whether the number is a business or residential line since cell phones can be used for either purpose. *See, e.g., Smith v. Truman Rd. Dev., LLC*, No. 18-670, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020), *aff'd sub nom.*, *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Southwell v. Mortg. Investors Corp. of Ohio, Inc.*, No. 13-1289, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014) (holding that the plaintiff's cell phone was a residential line despite his use of the phone to occasionally sell sheep to his friends).

Newell claims JR Capital could not have relied on the Dun & Bradsheet database it purchased in 2022 because he did not contribute to it and the government registrations did not yet exist. Pl.'s Opp'n at 33. That assumes such registrations are the only public source of information for commercial reporting services like Dun & Bradsheet, something for which Newell provides no support. The record shows that Newell had been consistently using the 4132 number for business purposes since 2016, and the database identified his landscaping company with the same number he included in the government registrations on behalf of his successor entity.

Based on the record produced in discovery, I conclude that Newell's conduct induced JR Capital to reasonably believe the 4132 number was his business's contact number and that JR Capital, whose sole business model is offering financing for companies, "rightfully relie[d] and act[ed] on such belief" during the period it sent the texts advertising business financing. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 165 (3d Cir. 2009) (quoting *Zitelli*, 633 A.2d at

139). Because the elements of inducement and detrimental reliance are present, Newell is equitably estopped from pursuing claims premised on the 4132 number being residential.

2. *The 4132 number was a business number during the relevant period.*[4]

Even if Newell were not equitably estopped from pursuing claims based on the 4132 number being residential, he cannot survive summary judgment on the merits because the record shows that he used the 4132 number as a business number during the period he received the texts.

Although the FCC has not issued clear guidance on when phone numbers with a history of mixed-use (such as those used in connection with home-based businesses) cease being residential lines and become business lines, "[a] majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation." *Pro Source*, 2025 WL 817485, at *3 n.3. While such a number is presumptively residential within the meaning of § 227(c), the Ninth Circuit has held that defendants may rebut that presumption by showing the plaintiff used it "to such an extent and in such a manner as to be properly regarded as" a business rather than a residential line. *Chennette*,

[4] JR Capital invokes the sham affidavit doctrine, asking the Court to disregard paragraphs 6, 7, and 10 through 12 of the declaration Newell submitted with his opposition. Def.'s Reply Br. at 17–20; *see Daubert v. NRA Grp., LLC*, 861 F.3d 382, 392 (3d Cir. 2017) ("The court may . . . disregard an affidavit when the 'affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction.'") (quoting *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988)). Upon close review of the relevant materials, I find those portions of the declaration "entirely unsupported by the record and directly contrary to [other relevant] testimony," *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007), and will disregard them in considering this Motion. It is a matter of profound concern that Mr. Newell, a frequent litigant in this district, would submit a sworn declaration that unjustifiably contradicts his deposition testimony and the record. That same concern necessarily extends to counsel submitting the affidavit, Mr. Perrong, whose dubious representations I found cause to criticize when he was before this Court as a *pro se* litigant. *See Perrong v. Reweb Real Est. LLC*, No. 19-4228, 2020 WL 4924533 (E.D. Pa. Aug. 21, 2020) (McHugh, J.).

50 F.4th at 1225–26. To determine whether the defendant rebutted the presumption, the Ninth Circuit explained that courts consider the following five factors: (1) how the plaintiff holds the phone number out to the public; (2) whether the plaintiff's phone is registered with the telephone company as a residential or business line; (3) how much the plaintiff uses their phone for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line. *Id.* at 1225 (collecting cases). I find this to be a workable approach, and without any direction from the Third Circuit on this issue, will adopt it here.

In this case, though Newell acquired the 1170 number in 2018 and claims he does not "put that 4132 number out there as a business number for people to contact," Newell Dep. 55:22–23, he still uses the 4132 number for business purposes at least "a few times a week," *id.* 52:14–19, 55:6–8, with his usage sometimes rising to "many times in a week," *id.* 56:6–8. When asked whether he uses the 1170 number to return prospective clients' calls placed to the 4132 number, Newell did not say he did; instead, he clarified that his example involving longtime customers exemplified what he meant by him receiving "incidental" calls to the 4132 number. *Id.* 54:17–24. Newell argues that JR Capital's subpoena of his phone records "uncovered, unsurprisingly, residential use, including calls to his parents, grandmother, and friends," Pl.'s Opp'n at 28, but nothing in the record substantiates this conclusory statement. Even if it did, such use would be a relevant but not determinative factor. *See Mattson v. New Penn Fin., LLC*, No. 18-990, 2020 WL 6270907, at *2 (D. Or. Oct. 25, 2020) ("Although Mattson's use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line.").

Particularly relevant to this case-specific analysis is the fact that Newell listed the 4132 number in two government registrations *after* he formed Newell Contracting, which took place

during the period he received multiple texts from JR Capital. At his deposition in May of this year, Newell recognized that, if the public uses the internal search engine on the Attorney General's website, "that's the number that would appear for you to – yes, for the business," Newell Dep. 51:10–19, 58:18–24. Notably, he did not remove the 4132 number from the FMCSA registration until months into this litigation, when he claims to have become "aware that the wrong phone number was being displayed." *Id.* 104:7–15; *see id.* 105:6–9, 110:3–6, 114:12–15. Regardless of when Newell first realized the FMCSA profile displayed the 4132 number, his testimony and resubmission of the form in July 2025 indicate that he understood the public could have been viewing and relying on that information irrespective of the intentions he purports to have held when he first registered his company on the website.

It is worth reminding Newell that the inquiry is an objective one, looking at how a reasonable observer would view the phone line. His deposition testimony cuts against him and in JR Capital's favor. *See id.* 56:20–57:3 (responding, "I suppose so," to defense counsel's question that "someone who looked you up on the Attorney General's website would also get [the 4132] number?"). Newell notes that the 4132 number is wireless, registered on the National Do Not Call Registry, assigned to a consumer cell phone plan, and billed to his home address, *see* Pl.'s Supp. Interrog. Resp. No. 8, ECF 33-4 at 2; Pl.'s Opp'n at 19, but those characteristics also describe the 1170 number he identifies as his actual business number. Newell cannot have it both ways. He is bound by the public representations in the applications he submitted during the period he received the texts that he now challenges. To hold otherwise would undercut an important principle, that "[c]ourts cannot accept a model where an entity has a public-facing identity which it then renounces based on its behind-the-scenes activity." *See Sherman v. Am. Ass'n of Suicidology, Inc.*, 821 F. Supp. 3d 497, 499 (E.D. Pa. 2026) (McHugh, J.).

Accordingly, during the relevant period and even well into this lawsuit, Newell held out the 4132 number as a business number to the public and a reasonable observer, including those prospective clients who contact him at that number, would view it as a business line. *See Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (holding that because the number was accurately categorized as mixed-use and because the plaintiff "held his phone number out to the world as a business phone number," he lacked standing under § 227(c)). For those reasons, I conclude that no reasonable jury could find that the 4132 number was a residential number during the period Newell received the telemarketing texts. Therefore, those texts cannot serve as the basis for any of Newell's claims, so he lacks standing to bring them under § 227(c), with the result that JR Capital is entitled to summary judgment on all three counts.

**IV. Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge